AUGUSTA CIRCUIT                                    Case No.:CL21002251-00
CRUZ, ZACHARY                          vs.          CHAPMAN, DUANE LEE

| TABLE OF CONTENTS | | |
| --- | --- | --- |
| Document Index | Date Filed | Page |
| **Manuscripts:** | | |
| INITIAL FILING - COMPLAINT | 10/14/2021 | 1 - 15 |
| REQUEST - REQUEST FOR SERVICES | 10/14/2021 | 16 - 17 |
| OTHER - RECEIPT | 10/14/2021 | 18 - 18 |
| COVER SHEET | 10/14/2021 | 19 - 19 |
| OTHER - CHAPMANS' SPECIAL APPEARANCE | 10/18/2021 | 20 - 20 |
| MOTION - MOTION FOR SANCTIONS | 11/01/2021 | 21 - 120 |
| MOTION - MOTION CRAVING OYER | 11/01/2021 | 121 - 125 |
| RESPONSE - RESPONSIVE PLEADINGS-EMAIL | 11/04/2021 | 126 - 163 |
| OTHER - UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF VIRGINIA HARRISONBURG DIVISION ORDER TO TRANSFER | 11/08/2021 | 164 - 164 |

I, R. Steven Landes, Clerk of the Augusta Circuit, certify that the contents of the record listed in the table of contents constitute the true and complete record, except for exhibits whose omission are noted in the table of contents.

VIRGINIA:   IN CIRCUIT COURT FOR AUGUSTA COUNTY

| | | |
|---|---|---|
| 1 | **ZACHARY CRUZ,** | ) |
| 2 | **MICHEAL DONOVAN, and** | ) |
| 3 | **RICHARD MOORE** | ) |
| 4 | | ) |
| 5 | *Plaintiffs,* | ) |
| 6 | | ) |
| 7 | **v.** | ) Case No. CL21002251-00 |
| 8 | | ) |
| 9 | **DUANE LEE CHAPMAN,** | ) |
| 10 | **LYSSA CHAPMAN,** | ) |
| 11 | **DAVID BAYRE BRIGGMAN,** | ) |
| 12 | **LINDSAY COMBS,** | ) |
| 13 | **JANE COLLINS, and** | ) |
| 14 | **JOHN DOES 1-8** | ) |
| 15 | | ) |
| 16 | *Defendants.* | ) |
| 17 | | ) |

Amina Matheny-Willard, PLLC
999 Waterside Drive, Suite 2525
Norfolk, Virginia 23510
Amina Matheny-Willard, Esquire
Cell: 757.652.6462
(757) 65-A-M-I-N-A)
Firm Tel: 757.777.3441
Firm Text: 757.299.3961
Firm Fax: 757.282.7608
Email: amina@aminalaw.com

## **COMPLAINT**

20       COME NOW Plaintiffs, MICHEAL DONOVAN, RICHARD MOORE, and

21   ZACHARY CRUZ, by and through undersigned counsel, and in support of their Complaint

22   against Defendants state as follows:

## **INTRODUCTION**

24   1.   In this case, the very systems designed to protect those in need were perverted to cause

25        harm, all in a shared effort to exact revenge or gain vengeance from perceived wrongs

26        by Plaintiffs.

27   2.   To make matters much worse, the individuals permitted to pervert the system in this

28        case are some of the worst examples of white supremacy in our society, a veritable

29        comic book cast of characters to include the former President of the Oath keepers, a

30        domestic terrorist organization, and a disgraced reality TV star who believes he has a

31        pass to use racial epithets as he hunts down minorities for profit.

## VIRGINIA:   IN CIRCUIT COURT FOR AUGUSTA COUNTY

3.  The Defendants collectively used salacious lies, racist and homophobic tropes, and a false investigation to achieve a local court order to search the home of the Plaintiffs and to detain, arrest, and interview Plaintiff Cruz.

4.  While this search and detention were ultimately foiled, the efforts of the Plaintiffs caused real, serious, and permanent harm to the Plaintiffs.

5.  Defendants are an unlikely set of co-conspirators, but their shared hatred for Plaintiffs and desire for notoriety caused these individuals to commit the tort of civil conspiracy and led to a series of criminal violations of Virginia Code Section 18.2-499, committed by all Defendants.

6.  Defendant Chapman was contacted by Defendant Briggman and connected to Defendants Collins and Combs, and Augusta County Sheriff Donald Smith. Defendants desired, for different reasons, to harm the Plaintiffs in their reputation and trade, and together organized to achieve that purpose.

7.  Defendant Chapman lied about meeting Plaintiff Cruz and orchestrated a conspiracy to advance a false report, namely that Plaintiff Cruz was "retarded", that he had been kidnapped, drugged, imprisoned, and exploited.

8.  Defendant Chapman's story was too tantalizing for Defendant Combs to pass up. Unfortunately, even when Defendant Combs learned that the allegations were completely bogus, she continued to engage in the conspiracy.

9.  Defendant Chapman, working first through an intermediary in Defendant Briggman and Collins, promulgated lies and advanced a corrupt inquiry designed to accuse Plaintiffs of heinous acts, chill their speech, and damage them in their business, trade, and/or reputation.

Amund Matheny Willard, PLLC
999 Waterside Drive, Suite 2525
Norfolk, Virginia 23510
Amund Matheny Willard, Esquire
Cell: 757.651.6662
(757-65-A-M-I-N-A)
Firm Tel: 757.777.9441
Firm Text: 757.239.3961
Firm Fax: 757.282.7808
Email: amund.amnmlaw.com

**VIRGINIA: IN CIRCUIT COURT FOR AUGUSTA COUNTY**
*Zachary Cruz, et al. v. Duane Chapman, et al.*

10. Defendants conspired to manipulate the testimony of potential Federal Grand Jury witnesses, asking individuals to "make up" fantastical claims about immigrants being held captive and to specifically make baseless claims against Plaintiffs to advance their perverse investigation.

11. Defendants Combs and Collins conspired to create a fake "joint investigation" with the FBI, which they represented as true to this Court in their petition to arrest and detain Cruz, and to search the Plaintiffs' home.

12. The United States Attorney for the Western District of Virginia confirmed that the "joint investigation" did not exist, and that it would not be proper. Defendant Collins was ultimately removed from her position at the FBI.

13. Plaintiffs are left violated, knowing the sanctity of their home and family had been violated by Defendants, and that the heinous accusations Defendants knew to be untrue were being repeated to hundreds of people, and ultimately the world when the salacious accusations were plead and published in a pleading before this Court.

14. Defendants engaged in a wild "ends justify the means" series of attacks against Plaintiffs, in an attempt to chill their speech and damage their business, reputation and/or trade. The perversions of justice in this case shock the conscience, and the fact that such perversions of justice can be accomplished by a known racist who is a former reality TV star trying to exact revenge for being fired for racist acts shows just how much of a vehicle for white supremacy our Courts and law enforcement systems can be, if we permit this to happen.

Amina Matheny-Willard, PLLC
999 Waterside Drive, Suite 2525
Norfolk, Virginia 23510
Amina Matheny-Willard, Esquire
Cell: 757.652.6462
(757-65-A-M-I-N-A)
Firm Tel: 757-777-3441
Firm Text: 757.239.3961
Firm Fax: 757-282-7806
Email: amina@aminalaw.com

**VIRGINIA:   IN CIRCUIT COURT FOR AUGUSTA COUNTY**
*Zachary Cruz, et al. v. Duane Chapman, et al.*

77        <u>**JURISDICTION AND VENUE**</u>

78    15. The Court's jurisdiction is based on § 17.1-513, *et seq.*, and § 8.01-328.1, *et seq.*, of

79        the Code of Virginia.

80    16. Venue is proper pursuant to § 8.01-262(4) of the Code of Virginia.

81        <u>**PARTIES**</u>

82    17. Plaintiff Micheal Donovan is the CEO of Nexus Services Inc., and Unleashed

83        Entertainment LLC, which operates Unleashed TV.  Donovan is a resident of Virginia

84        with a principal residence in Fishersville, Virginia.

85    18. Plaintiff Richard Moore is the EVP of Nexus Services Inc.  Moore and Donovan are

86        married and raise Zachary Cruz, and Samuel Orlando as their sons.

87    19. Plaintiff Zachary Cruz lives with Donovan and Moore and has been cared for and

88        supported by them since leaving Florida after his brother's arrest and mother's death.

89    20. Defendant Duane Lee Chapman is a resident of Colorado with a principal residence in

90        Castle Rock, Colorado. Defendant Duane Lee Chapman, a/k/a "Dog the Bounty

91        Hunter," represents himself as a professional bounty hunter, though he has no license

92        to do so in any state, and has gained certain notoriety in this regard, first through a

93        series of reality television shows, and lately as a disgraced racist.

94    21. Defendant Lyssa Chapman is a resident of Hawaii with a principal residence in

95        Honolulu, Hawaii.

96    22. Defendant David Bayre Briggman is a resident of Virginia with a principal residence

97        in Keezletown, VA. Defendant Briggman is the former President of Virginia Oath

98        Keepers, the state chapter of Oath Keepers, an extremist organization under

Armon Matheny-Willard, PLLC
999 Watenside Drive, Suite 2525
Norfolk, Virginia 23510
Armon Matheny Willard, Esquire
Cell. 757.652.6662
(757-65-A-M-I-N-A)
Firm Tel: 757.777.3441
Firm Text: 757.239.3961
Firm Fax: 757.282.7808
Email: armon@armonlaw.com

**VIRGINIA:   IN CIRCUIT COURT FOR AUGUSTA COUNTY**
*Zachary Cruz, et al. v. Duane Chapman, et al.*

99
100  investigation for its participation in the deadly insurrectionist attack on the United States Capitol that occurred on January 6, 2021.

101  23. Defendant Lindsay Combs is a manager with Shenandoah Valley Social Services and
102  supervises the provision of "Adult Protective Services" in Augusta County, Virginia.
103  She is a resident of Augusta County, Virginia.

104  24. Defendant Jane Collins is a former Special Agent of the FBI. Upon information and
105  belief, she is a resident of Virginia. Defendant Collins, upon information and belief,
106  had her FBI career cut short after she violated department policies and/or laws in
107  connection with her rogue investigation(s) of Plaintiffs, including the facts alleged in
108  this Complaint.

109  25. Defendants John Does 1-6 are law enforcement officers, agents thereof, or support staff
110  who contributed to the acts in this conspiracy and helped advance the conspiracy.

111  26. Defendants John Does 7-8 are associates of Defendant Duane Lee Chapman.

112  <u>**STATEMENT OF FACTS**</u>

113  27. On or about January 30, 2021, Defendant Chapman made a knowingly false report of
114  abuse to Defendant Combs, an agent of Social Services in Virginia, and to Defendant
115  Collins, a Special Agent with the Federal Bureau of Investigation. The subject of his
116  complaint was Plaintiff Zachary Cruz, someone he had only met in passing.

117  28. Upon information and belief, Defendant Chapman falsely asserted he had met and
118  spoken with Plaintiff Cruz, and likewise falsely asserted that Plaintiff Cruz was
119  mentally disabled, or as Defendant Chapman described him, "retarded".

120  29. Defendants Combs and Collins knew, or quickly learned, that Defendant Chapman's
121  information was false, but chose to advance the investigation anyway.

Amuse Matheny-Willard, PLLC
999 Waterside Drive, Suite 2525
Norfolk, Virginia 23510
Amuse Matheny-Willard, Esquire
Cell: 757.652.6462
(757.65-A MI UN-A)
Firm Tel: 757.777.3441
Firm Text: 757.239.3901
Firm Fax: 757.252.7808
Email: amuse@amuselaw.com

Complaint
Cruz et al. v. Chapman et al.
5

**VIRGINIA:   IN CIRCUIT COURT FOR AUGUSTA COUNTY**
*Zachary Cruz, et al. v. Duane Chapman, et al.*

122
123
124

30. Upon information and belief, Defendant Combs is married to a special agent with the Virginia State Police, who works on a drug task force that has been targeted in the past by Plaintiff Donovan in his provision of access to pro bono legal services.

125
126
127
128

31. Defendant Collins also has worked with that same task force. Plaintiff Donovan has funded litigation and filed complaints asserting that officers in the task force have used excessive force, engaged in forced sex or human trafficking, killed pets, and promulgated the use of meth in the community.

129
130
131
132
133
134
135

32. Defendants Collins and Combs, already united in a hatred of Plaintiffs, or at least against Plaintiff Donovan, took an opportunity to advance Defendant Chapman's false claims and gain access to the family residence to advance their goal of harming Plaintiff Donovan, by (i) causing public reputational harm (by virtue of the investigation itself) or (ii) in the hopes of their unfounded fishing expedition turning up some other information that they could leverage to broaden their baseless investigation or otherwise harm Plaintiffs.

136
137
138

33. Virginia social services workers and a corrupt county sheriff, working on a false tip from Defendant Duane Chapman, conspired to search the home of Zachary Cruz and his family, arrest Cruz, and place him into a conservatorship.

139
140
141
142

34. On or about February 2, 2021, Defendant Combs and a subordinate co-worker appeared at the residence and business addresses of the Plaintiffs. They delivered letters referencing Chapman's abuse accusations (without identifying him) and demanded to meet with the Plaintiffs to investigate the claims.

Amina Matheny-Willard, PLLC
999 Waterside Drive, Suite 2525
Norfolk, Virginia 23510
Amina Matheny-Willard, Esquire
Cell: 757.652.6462
(757-65-A-M-I-N-A)
Firm Tel: 757.777.3441
Firm Tel: 757.239.9901
Firm Fax: 757-282-7808
Email: amina@lawmwlaw.com

Complaint
Cruz et al. v. Chapman et al.
6

**VIRGINIA:   IN CIRCUIT COURT FOR AUGUSTA COUNTY**
*Zachary Cruz, et al. v. Duane Chapman, et al.*

143   35. Defendant Combs, working with Defendant Collins, conspired to gain access to

144   otherwise represented people in hopes of gaining evidence to further an illicit and

145   unfounded inquiry.

146   36. The Augusta County Sheriff, Donald L. Smith, had been protested by Cruz, his brother

147   Sam, and other Black Lives Matter (BLM) supporters because of his departments'

148   shooting of two men in one week in May of this year, and allegations that the Sheriff

149   and some of his deputies were involved in a human trafficking operation. The lawsuit

150   points out specific reports of sexual abuse by law enforcement reported by the Plaintiffs

151   that were ignored by the same rogue FBI agent who was working with Chapman, and

152   the social services worker investigating Cruz.

153   37. The social worker used lies by Chapman (who said he had met Cruz and called him

154   "retarded" even though he never had a conversation with him) and a co-conspirator,

155   the former president of the oath keepers, to secure a court order to search Cruz's home,

156   arrest him, and force a conservatorship upon him.

157   38. Defendants Combs nor Collins ever identified to the Court that their sources were

158   individuals whose employment had been terminated by Plaintiffs, or who otherwise

159   had reason to lie and provide false information.

160   39. Defendants Combs and Collins likewise failed to notify the Court of their personal bias

161   in this case, and that, upon information and belief, they knew Plaintiffs had evidence

162   that they had obstructed justice to protect their friend, the Sheriff of Augusta County,

163   in a corruption and human trafficking investigation.

164   40. Upon information and belief, Social Services was seeking to place Cruz in a

165   conservatorship much like the one Brittany Spears has been forced to endure, where he

Amato Matheny-Willard, PLLC
999 Waterside Drive, Suite 2525
Norfolk, Virginia 23510
Amato Matheny-Willard, Esquire
Cell 757.652.6462
(757-65-A-M-I-N-A)
Firm Tel.: 757-777-3441
Firm Text: 757.239.5961
Firm Fax: 757-282-7808
Email: amina@aminalaw.com

Complaint
*Cruz et al. v. Chapman et al.*

7

**VIRGINIA:   IN CIRCUIT COURT FOR AUGUSTA COUNTY**
*Zachary Cruz, et al. v. Duane Chapman, et al.*

would have no control over his life. They would have the authority to control where he lived and could have forced him into prolonged forced detention.

41. Once placed in a conservatorship, police would have been free to abuse his constitutional rights and he would have had zero to say about what happened to him. He would not even be able to hire his own lawyer. The Defendants advanced this investigation and effort knowing Plaintiff Cruz, and indeed all Plaintiffs, were represented by Counsel. Counsel for Plaintiffs were not notified of the inquiry, including counsel for Plaintiff Cruz.

42. Social Services worked with a rogue FBI Agent to force Cruz into detention in an attempt to have his psychological condition tested by their own team and to achieve their own pre planned result. Cruz was forbidden to have his own attorney present.

43. During this time, Chapman and his daughter Lyssa continued to pump out innuendo designed to damage Donovan and Moore's reputation.

44. Defendants Chapman, Chapman, and Briggman strategically placed tweets or other social media messages to be placed on Plaintiff Donovan and Moore's accounts making outrageous accusations and predicting they would be proven right soon.

45. In fact, Defendants Chapman, Chapman, and Briggman knew their lies had been accepted by Defendants Combs and Collins and were confident they would be proven correct when their scheme came to fruition.

46. Both Chapman defendants engaged the services of private investigators and approached several people asking them to provide false testimony against Donovan and Moore before a federal grand jury investigating his outrageous claims.

Amsine Matheny-Willard, PLLC
999 Waterside Drive, Suite 2525
Norfolk, Virginia 23510
Amsine Matheny-Willard, Esquire
Cell 757.652.6462
(757-65-A-MAN-A)
Firm Tel. 757.777.3441
Firm Text 757.239.3961
Firm Fax 757-282-7809
Email: amsinl@amsinlaw.com

**VIRGINIA:   IN CIRCUIT COURT FOR AUGUSTA COUNTY**
*Zachary Cruz, et al. v. Duane Chapman, et al.*

188  47. Upon learning of the efforts of Defendants, Cruz and his family complained to the
189       United States Attorney and the "search" order was never executed.

190  48. After discovering the rouge FBI agent had taken this report from a disgraced reality tv
191       actor, Cruz agreed to testify in front of a Federal Grand Jury to set the record straight.
192       Cruz was subjected to interrogation about his relationship with his brother, even though
193       the grand jury was in Virginia and would have zero authority to investigate the Parkland
194       shooting.

195  49. On March 30, 2021, Assistant United States Attorney Ronald Huber confirmed that the
196       "joint investigation" by social services did not exist. After that confirmation, the rogue
197       FBI agent left her position with the government.

198  50. Defendant Collins continued her efforts in the conspiracy to harm Plaintiffs, now as a
199       private citizen. For purposes of this complaint, Collins is named ONLY for actions
200       after she left the employment of the Federal Bureau of Investigation.

201  51. Plaintiff Cruz was horrified by the representation that he was "retarded". Plaintiffs
202       believe the word to be pejorative and inappropriate, and inaccurate to describe Plaintiff
203       Cruz.

204  52. Plaintiff Cruz was bullied at an early age and Defendants' actions were worse than
205       anything he had ever experienced, dehumanizing him, and seeking to make him a literal
206       prisoner.

207  53. Chapman became enraged and unhinged when he was fired, and worse when some of
208       his family members chose to continue their projects with Unleashed TV, a network
209       owned by Plaintiff Donovan.

Amina Matheny-Willard, PLLC
999 Waterside Drive, Suite 2525
Norfolk, Virginia 23510
Amina Matheny-Willard, Esquire
Cell: 757.652.6462
(757-65-A-M-I-N-A)
Firm Fax: 757-777-3441
Firm Text: 757.259.3961
Firm Fax: 757-257-7908
Email: amina@aminalaw.com

**VIRGINIA:   IN CIRCUIT COURT FOR AUGUSTA COUNTY**
*Zachary Cruz, et al. v. Duane Chapman, et al.*

210   54. During its investigation into Defendant Chapman's misconduct, Plaintiff Donovan
211       became aware of Defendant Chapman's use of "shell companies" as personal slush
212       funds to avoid the payment of taxes. Upon information and belief Defendant Chapman
213       owes millions in taxes that were evaded using the scam. Plaintiff Donovan instructed
214       Chapman that his company Unleashed Entertainment could no longer do business with
215       him if he insisted on using a scheme to evade taxes.

216   55. Upon information and belief, Defendant Chapman became hyper concerned that his
217       behavior might be reported to authorities after the cancellation of his show "Dog
218       Unleashed".

219   56. For a variety of corrupt and corrupting reasons, Defendants lied, conspired to provide
220       false information, or used their positions to conspire to damage the Plaintiffs reputation
221       in trade.

222   57. The ultimate goal of the failed conspiracy was to destroy the Plaintiffs, their companies,
223       their pro bono legal program, and to exact revenge against Plaintiffs for assorted
224       perceived wrongs, and for their efforts to rid Augusta County law enforcement and
225       social services of corruption.

226            <u>**COUNT I – CIVIL CONSPIRACY AGAINST ALL DEFENDANTS**</u>

227   58. Plaintiffs incorporate by reference all of the preceding allegations.

228   59. Defendants combined, associated, agreed, mutually understood, and concerted together
229       for the purpose of willfully and maliciously injuring Plaintiffs in their reputation, trade,
230       business, and/or profession.

231   60. Plaintiffs were damaged by Defendants' actions.

Armata Matthesy-Willard, PLLC
999 Waterside Drive, Suite 2525
Norfolk, Virginia 23510
Armata Matthesy-Willard, Esquire
Cell 757.652.6662
(757-65-A-M-1-N-A)
Form Tel: 757-777-3441
Firm Text 757.259.3901
Firm Fax 757-282-7808
Email: armata@armatalaw.com

**VIRGINIA:   IN CIRCUIT COURT FOR AUGUSTA COUNTY**
*Zachary Cruz, et al. v. Duane Chapman, et al.*

232   61. Plaintiffs are entitled to recover treble damages, costs, and attorney's fees pursuant to
233   Va. Code §18.2-499 and 500.

234   **COUNT II – DEFAMATION AGAINST DEFENDANTS LYSSA CHAPMAN,**
235   **BRIGGMAN, COMBS, COLLINS, DOES 1-8**

236   62. Plaintiffs incorporate by reference all of the preceding allegations.

237   63. Defendants made various defamatory statements about plaintiffs, including:

238   64. Defendant Chapman claimed that he had a conversation with Plaintiff Cruz and that
239   Plaintiff Cruz "was retarded".

240   65. Upon information and belief, Defendant Collins advanced the complaint to Defendant
241   Combs knowing that the FBI would never permit her to get what she desperately
242   wanted, access to Cruz and the Donovan home. Defendant Collins feared yet another
243   failed investigation and was determined to support her friends and co-conspirators in
244   local law enforcement, who have tired of the numerous lawsuits funded by Plaintiffs
245   against them. In doing so, she repeated the statement, knowing it to be untrue.

246   66. Defendant Combs included Defendant Chapman's accusation, that Cruz was
247   "retarded", in a Court filing in this Court to seek entry to the Plaintiffs home and to
248   arrest Plaintiff Cruz.

249   67. Upon information and belief, Defendant Combs repeated the ridiculous assertion that
250   Cruz was "retarded" to her supervisors with the Commonwealth of Virginia.

251   68. Even if her statements repeating Chapman's false assertions were protected in a
252   pleading, they would not be protected in her preparation for the hearing, in her
253   communications with her supervisors, and communications with third parties in law
254   enforcement.

Arenia Metheny Willard, PLLC
999 Waterside Drive, Suite 2525
Norfolk, Virginia 23510
Arenia Metheny Willard, Esquire
Cell: 757.652.6462
(757-65-4-345(N-A))
Firm Tel: 757.777.3441
Firm Text: 757.270.3961
Firm Fax: 757.282.7808
Email: arenia@arenialaw.com

**VIRGINIA:   IN CIRCUIT COURT FOR AUGUSTA COUNTY**
*Zachary Cruz, et al. v. Duane Chapman, et al.*

255   69. The Statements are factually untrue.

256   70. The Statements do not deal with matters of public concern relating to a matter of

257        political, social, or other concern to the community, nor is it the subject of legitimate

258        news interest.

259   71. The Statements are defamatory because it has a defamatory meaning on its face.

260   72. The Statements are defamatory because it has a defamatory meaning by its implication.

261   73. The plain and natural meaning of the Statements are not a mere expression of opinion

262        as reasonably understood by the average person because it can be, and is, provably

263        false.

264   74. On its face, the plain and natural meaning of the Statements are not rhetorical hyperbole

265        as would be reasonably understood by the average person.

266   75. A reasonable person would understand the Statements to convey a (false)

267        representation of fact.

268   76. Defendants published the Statements in a manner that created a substantial danger to

269        Plaintiffs' reputation.

270   77. Defendants published the Statements with actual malice, personal spite, and ill-will,

271        independent of the occasion on which the communication was made, and with the

272        specific intent to harm Plaintiffs and their reputation.

273   78. Defendants knew the Statements were false at the time they published it, or he had a

274        high degree of awareness of the Statements' probable falsity at the time they published

275        it.

276   79. Defendants published the Statements with a reckless disregard for its truth.

277   80. Plaintiffs are not public figures.

Amana Matheny-Willard, PLLC
999 Waterside Drive, Suite 2525
Norfolk, Virginia 23510
Amana Matheny-Willard, Esquire
Cell: 757-652-6462
(757-65-A-MA5-A)
Firm Tel.: 757-777-3441
Firm Fax: 757-299-3961
Firm Fax: 757-282-7808
Email: amanale amanalaw.com

**VIRGINIA:   IN CIRCUIT COURT FOR AUGUSTA COUNTY**
*Zachary Cruz, et al. v. Duane Chapman, et al.*

278  81. Plaintiff Donovan may be a limited purpose public figure because he has assumed roles

279  of public prominence related to matters involving civil rights or immigration; however,

280  none of those limited purpose areas apply to the facts in this Complaint.

281  82. Defendant's publication of the Statement was unreasonable.

282  83. Defendants acted negligently in failing to ascertain accurate facts upon which the

283  Statements could be based. Defendants did not take reasonable care in ensuring the

284  truth of the Statements before publishing them.

285  <u>**COUNT III – INSULTING WORDS BY DEFENDANTS COLLINS, COMBS,**</u>

286  <u>**AND CHAPMAN**</u>

287
288  84. Plaintiffs incorporate by reference all of the preceding allegations.

289  85. The words of Defendants set out in the preceding count from their usual construction

290  and common acceptance are construed as insults and tend to incite violence and

291  breach of the peace.

292  86. Defendants Collins, Combs, Chapman, and Chapman's actions are actionable

293  pursuant to Va. Code §8.01-45.

294  87. Plaintiffs were damaged as a result of Defendants' actions.

295  88. Plaintiffs are entitled to recover compensatory and punitive damages, costs, and

296  attorney's fees.

297  <u>**COUNT IV – RACIAL AND ETHNIC HARASSMENT BY ALL**</u>

298  <u>**DEFENDANTS**</u>

299  89. Plaintiffs incorporate by reference all of the preceding allegations.

300  90. Plaintiffs have been subjected to acts of intimidation and harassment by Defendants.

Amora Matheny-Willard, PLLC
999 Waterside Drive, Suite 2525
Norfolk, Virginia 23510
Amora Matheny-Willard, Esquire
Cell: 757.652.6462
(757-65-A-3A1-3-A)
Firm Tel.: 757.777.3441
Firm Tel: 757.239.5961
Firm Fax: 757.282.7808
Email: amora@amoralaw.com

**VIRGINIA:   IN CIRCUIT COURT FOR AUGUSTA COUNTY**
*Zachary Cruz, et al. v. Duane Chapman, et al.*

91. Such acts were motivated by racial, religious, or ethnic animosity.

92. Plaintiffs have been damaged as a result of Defendants' actions.

93. Pursuant to Va. Code 8.01-42.1, Plaintiffs are entitled to compensatory and punitive damages, costs, and attorney's fees.

**WHEREFORE,** Plaintiff seek the following:

1.  Actual and punitive damages against Defendants Briggman, Combs, and Collins in an amount to be proved at trial but not less than:

    a.  Count I: $1,000,000;

    b.  Count II: $500,000;

    c.  Count III: $250,000;

    d.  Count IV: $250,000;

    For a Total of Not Less Than: $2,000,000.00

    Because Plaintiffs are entitled to recover three-fold damages, costs, and attorney's fees pursuant to Va. Code §18.2-499 and 500 in Count I, Plaintiffs seek total judgment in an amount not less than $4,000,000.

2.  Actual and punitive damages against Defendants Chapman and Chapman in an amount to be proved at trial but not less than:

    a.  Count I: $15,000;

    b.  Count II: $15,000;

    c.  Count III: $5,000;

    d.  Count IV: $5,000

    For a Total of Not Less Than: $40,000

Amun Matheny-Willard, PLLC
999 Waterside Drive, Suite 2525
Norfolk, Virginia 23510
Amun Matheny-Willard, Esquire
Cell 757.652.6662
(757-65-A-M-I-Y-A)
Firm Tel: 757-777-3441
Firm Text 757.239.7961
Firm Fax 757-282-7808
Email: amun@emunalaw.com

**VIRGINIA:   IN CIRCUIT COURT FOR AUGUSTA COUNTY**
*Zachary Cruz, et al. v. Duane Chapman, et al.*

323    Because Plaintiffs are entitled to recover three-fold damages, costs and

324    attorney's fees pursuant to Va. Code §18.2-499 and 500 in Count I,

325    Plaintiffs seek total judgment in an amount not less than $70,000.

326    3.   Attorney fees and court costs; and

327    4.   Such other and further relief as this court deems just and proper.

328    Dated this 14th Day of October, 2021

329    **JURY TRIAL DEMANDED**

330

331    *Respectfully Submitted,*

332

333    By: _____

335    Amina Matheny-Willard, VSB# 43566
336    Amina Matheny-Willard, PLLC
337    999 Waterside Drive, Suite 2525
338    Norfolk, Virginia 23510
339    Cell: 757-652-6462 (757-65-A-M-I-N-A)
340    Firm Tel.: 757-777-3441
341    Firm Text: 757-239-3961
342    Firm Fax: 757-282-7808
343    Email: amina@aminalaw.com
344    *Counsel for Plaintiffs*

345
346

```
VALIDATE CASE PAPERS
RCPT : 2100000B581
DATE : 10/14/2021 TIME: 10:59
CASE : 015CL21002251-00
ACCT : CRUZ, ZACHARY
AMT. : $94.64
```

Deputy   Clerk

Complaint
Cruz et al. v. Chapman et al.

15

Clerk of the Augusta County Circuit Court
1E Johnson St, Staunton, VA  24401


In Re Case ___/5CL 2100 225100)_____


The Plaintiff will be affecting service via private process server on the following Defendants

Duane Lee Chapman
1440 Colt Cir
Castle Rock, CO 80109-9601


Lyssa Chapman
1095 Kalapaki St
Honolulu, HI  96825

David Barye Briggman
7556 Mountain Valley Rd
Keezletown, VA  22832


Lindsay Combs
332 Seawright Springs Rd
Mount Sidney, VA  24467


Jane Collins
105 Wilson Ct
Charlottesville, VA 22901


Respectfully,

10/14/21

301-200-1961

Filed in the Clerk's Office of the
Circuit Court of Augusta County
Time: 10:57 AM Date: 10/14/21
TESTE:
_____ Dep. Clk.
Date: Oct 14, 2021

16

Clerk of the Augusta County Circuit Court
1E Johnson St, Staunton, VA  24401

In Re Case   *15CL 2100 2251 00)*

The Plaintiff will be affecting service via private process server on the following Defendants

Duane Lee Chapman
1440 Colt Cir
Castle Rock, CO 80109-9601

Lyssa Chapman
1095 Kalapaki St
Honolulu, HI  96825

David Barye Briggman
7556 Mountain Valley Rd
Keezletown, VA  22832

Lindsay Combs
332 Seawright Springs Rd
Mount Sidney, VA  24467

Jane Collins
105 Wilson Ct
Charlottesville, VA  22901

Respectfully,

*10/14/21*

*301-200-1961*

Filed in the Clerk's Office of the
Circuit Court of Augusta County
Time *10:59 AM* Date: *10/14/21*
TESTE:
_____ Dep. Clk.
Date: *Oct 14, 2021*

*10/14/21 —   Erik   Schneider   picked   up   services.*

17

Receipt : 21000008581

Page 1 of 1

**COURT ADDRESS:**
P.O. BOX 689
STAUNTON, VA 24402-0689
PHONE # :540-245-5320



**OFFICIAL RECEIPT**
**AUGUSTA COUNTY CIRCUIT COURT**
**CIVIL**

| | | | |
|---|---|---|---|
| **DATE :** 10/14/2021 | **TIME :** 10:59:20 | | **CASE # :** 015CL2100225100 |
| **RECEIPT # :** 21000008581 | **TRANSACTION # :** 21101400012 | | |
| **CASHIER :** JWD | **REGISTER # :** E401 | | **FILING TYPE :** INJ | **PAYMENT :** FULL PAYMENT |
| **CASE COMMENTS :** CRUZ, ZACHARY v. CHAPMAN, DUANE LEE | | | |
| **SUIT AMOUNT :** $2,000,000.00 | | | |
| **ACCOUNT OF :** CRUZ, ZACHARY | | | |
| **PAID BY :** SCHNEIDER, ERIK | | | |
| **CREDIT/DEBIT CARD :** $94.64 | | | |
| **DESCRIPTION 1 :** INJ:INJUNCTION | | | |
| **2 :** PLAINTIFF: CRUZ, ZACHARY | | | |
| **3 :** NO HEARING SCHEDULED | | | |

| ACCOUNT CODE | DESCRIPTION | PAID |
|---|---|---|
| 049 | WRIT TAX (CIVIL) | $5.00 |
| 106 | TECHNOLOGY TRST FND | $5.00 |
| 123 | LEGAL AID SERVICES | $9.00 |
| 147 | INDIGENT ASSISTANCE (INA) | $1.00 |
| 170 | COURT TECHNOLOGY FUND | $10.00 |
| 219 | LAW LIBRARY | $4.00 |

| ACCOUNT CODE | DESCRIPTION | PAID |
|---|---|---|
| 229 | COURTHOUSE MAINTENANCE FEE (CHMF) | $2.00 |
| 304 | CIVIL FILING FEE (LAW & EQUITY) | $50.00 |
| 426 | PAPER SUBMISSION/COPY FEE | $5.00 |
| 407 | CONVENIENCE FEE | $3.64 |

**TENDERED : $**    94.64

**AMOUNT PAID : $**    94.64

*CLERK OF COURT : R. STEVEN LANDES*

18

# COVER SHEET FOR FILING CIVIL ACTIONS

COMMONWEALTH OF VIRGINIA

Case No. **CL21002251-00**

(CLERK'S OFFICE USE ONLY)

Augusta County .................................................... Circuit Court

Zachary Cruz ........................... v./In re: Duane Lee Chapman

PLAINTIFF(S)                                                                    DEFENDANT(S)

I, the undersigned [ ] plaintiff [ ] defendant [✓] attorney for [✓] plaintiff [ ] defendant hereby notify the Clerk of Court that I am filing the following civil action. (Please indicate by checking box that most closely identifies the claim being asserted or relief sought.)

## GENERAL CIVIL

**Subsequent Actions**
- [X] Claim Impleading Third Party Defendant
  - [X] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Counterclaim
  - [ ] Monetary Damages
  - [ ] No Monetary Damages
- [ ] Cross Claim
- [ ] Interpleader
- [ ] Reinstatement (other than divorce or driving privileges)
- [ ] Removal of Case to Federal Court

**Business & Contract**
- [ ] Attachment
- [ ] Confessed Judgment
- [ ] Contract Action
- [ ] Contract Specific Performance
- [ ] Detinue
- [ ] Garnishment

**Property**
- [ ] Annexation
- [ ] Condemnation
- [ ] Ejectment
- [ ] Encumber/Sell Real Estate
- [ ] Enforce Vendor's Lien
- [ ] Escheatment
- [ ] Establish Boundaries
- [ ] Landlord/Tenant
  - [ ] Unlawful Detainer
- [ ] Mechanics Lien
- [ ] Partition
- [ ] Quiet Title
- [ ] Termination of Mineral Rights

**Tort**
- [ ] Asbestos Litigation
- [ ] Compromise Settlement
- [ ] Intentional Tort
- [ ] Medical Malpractice
- [ ] Motor Vehicle Tort
- [ ] Product Liability
- [ ] Wrongful Death
- [ ] Other General Tort Liability

## ADMINISTRATIVE LAW

- [ ] Appeal/Judicial Review of Decision of (select one)
  - [ ] ABC Board
  - [ ] Board of Zoning
  - [ ] Compensation Board
  - [ ] DMV License Suspension
  - [ ] Employee Grievance Decision
  - [ ] Employment Commission
  - [ ] Local Government
  - [ ] Marine Resources Commission
  - [ ] School Board
  - [ ] Voter Registration
  - [ ] Other Administrative Appeal

## DOMESTIC/FAMILY

- [ ] Adoption
  - [ ] Adoption – Foreign
- [ ] Adult Protection
- [ ] Annulment
  - [ ] Annulment – Counterclaim/Responsive Pleading
- [ ] Child Abuse and Neglect – Unfounded Complaint
- [ ] Civil Contempt
- [ ] Divorce (select one)
  - [ ] Complaint – Contested*
  - [ ] Complaint – Uncontested*
  - [ ] Counterclaim/Responsive Pleading
  - [ ] Reinstatement – Custody/Visitation/Support/Equitable Distribution
- [ ] Separate Maintenance
  - [ ] Separate Maintenance Counterclaim

## WRITS

- [ ] Certiorari
- [ ] Habeas Corpus
- [ ] Mandamus
- [ ] Prohibition
- [ ] Quo Warranto

## PROBATE/WILLS AND TRUSTS

- [ ] Accounting
- [ ] Aid and Guidance
- [ ] Appointment (select one)
  - [ ] Guardian/Conservator
  - [ ] Standby Guardian/Conservator
  - [ ] Custodian/Successor Custodian (UTMA)
- [ ] Trust (select one)
  - [ ] Impress/Declare/Create
  - [ ] Reformation
- [ ] Will (select one)
  - [ ] Construe
  - [ ] Contested

## MISCELLANEOUS

- [ ] Amend Death Certificate
- [ ] Appointment (select one)
  - [ ] Church Trustee
  - [ ] Conservator of Peace
  - [ ] Marriage Celebrant
- [ ] Approval of Transfer of Structured Settlement
- [ ] Bond Forfeiture Appeal
- [ ] Declaratory Judgment
- [ ] Declare Death
- [ ] Driving Privileges (select one)
  - [ ] Reinstatement pursuant to § 46.2-427
  - [ ] Restoration – Habitual Offender or 3rd Offense
- [ ] Expungement
- [ ] Firearms Rights – Restoration
- [ ] Forfeiture of Property or Money
- [ ] Freedom of Information
- [X] Injunction
- [ ] Interdiction
- [ ] Interrogatory
- [ ] Judgment Lien-Bill to Enforce
- [ ] Law Enforcement/Public Official Petition
- [ ] Name Change
- [ ] Referendum Elections
- [ ] Sever Order
- [ ] Taxes (select one)
  - [ ] Correct Erroneous State/Local
  - [ ] Delinquent
- [ ] Vehicle Confiscation
- [ ] Voting Rights – Restoration
- [ ] Other (please specify)

[X] Damages in the amount of $ 2,000,000.00 are claimed.

10/14/2021
DATE

Amina Matheny-Willard VSB#43566
PRINT NAME

999 Waterside Dr, #2525  Norfolk, VA  23510
ADDRESS/TELEPHONE NUMBER OF SIGNATOR

757-652-6462

amina@aminalaw.com
EMAIL ADDRESS OF SIGNATOR (OPTIONAL)

[ ] PLAINTIFF   [ ] DEFENDANT   [X] ATTORNEY FOR   [X] PLAINTIFF
                                                                          [ ] DEFENDANT

*"Contested" divorce means any of the following matters are in dispute: grounds of divorce, spousal support and maintenance, child custody and/or visitation, child support, property distribution or debt allocation. An "Uncontested" divorce is filed on no fault grounds and none of the above issues are in dispute.

FORM CC-1416 (MASTER) PAGE ONE 07/16

19

VIRGINIA: IN THE CIRCUIT COURT FOR THE COUNTY OF AUGUSTA

CRUZ, ZACHARY, et al.,

        Plaintiffs,

v.                            Case Number: CL21002251-00

CHAPMAN, DUANE LEE, et al.,

        Defendants.

## CHAPMANS' VOLUNTARY SPECIAL APPEARANCE

        COME NOW Duane Lee Chapman and Lyssa Chapman, by counsel, pursuant to Virginia

Supreme Court Rule 3:5(b), who make their special appearances voluntarily, waive process, and

will timely file pleadings in response in accordance with Virginia Supreme Court Rule 3:8(a).

(This Court has no personal jurisdiction over the Chapmans.) Accordingly, any attempt to serve

any process upon Duane Lee Chapman or Lyssa Chapman is unnecessary and burdensome.

                                   Respectfully submitted,

                                   DUANE LEE CHAPMAN
                                   LYSSA CHAPMAN
                                   By counsel

*Bradley G. Pollack*

Bradley G. Pollack
Attorney at Law
Virginia State Bar No. 25290
753 South Main Street
Woodstock, VA 22664
540-459-8600/540-459-8670 (fax)
bgpollack@gmail.com

### Certificate

        I hereby certify that on the 16th day of October 2021, I transmitted the foregoing by
email to Amina Matheny-Willard, Esquire, at amina@aminalaw.com.

Filed in the Clerk's Office of the
Circuit Court of Augusta County
Time: **8:35** AM Date: **10 | 18 | 21**
TESTE:

*Bradley G. Pollack*
Bradley G. Pollack

        Dep. Clk
Date: **Oct 18, 2021**

20

VIRGINIA: IN THE CIRCUIT COURT FOR AUGUSTA COUNTY

ZACHARY CRUZ, ET. AL.,                           :
                                                 :
      Plaintiffs                                 :
                                                 :
v.                                               :          Case No. CL21002251-00
                                                 :
DUANE LEE CHAPMAN, ET. AL.,                      :
                                                 :
      Defendants.                                :

## MOTION FOR SANCTIONS

Comes now the Defendant, David B. Briggman, *Pro Se,* and pursuant to § 8.01-271.1 of the Code of Virginia, as amended, other applicable law, and for his against the Plaintiffs and their counsel offer the following:

### BACKGROUND

1.      This latest frivolous lawsuit against this Defendant continues a sustained pattern of legally baseless criminal charges and wholly-frivolous lawsuits brought against both this Defendant and his wife (as well as others who have discovered that Plaintiffs Donovan and Moore have defrauded them) in Courts around the central Shenandoah Valley to as far away as the Circuit Court of Orange County, Florida. Briggman became a "whistleblower" upon his resignation from the employment of Nexus Services Inc., owned by Plaintiffs Donovan and Moore, upon discovering that the company had engaged in widespread wiretapping of their company owned or leased offices throughout the United States; in underreporting employee incomes to the Commonwealth of Virginia, Department of Taxation; in embezzlement from the company 401(k) and health insurance plans. These lawsuits have been consistently brought by

attorneys who have routinely failed to comply with § 8.01-271.1 of the Code of Virginia by their inherent, consistent failure to perform even the most rudimentary investigation of the claims they reduce to ink and then file with the courts. The consistent trait amongst these attorneys is that they are either financially needy, or as is often the case, they are thrown so much money that they don't care to investigate. This lawsuit was clearly brought without even a basis investigation by counsel for the Plaintiffs and was obviously brought with the specific and clear intention to harass not only Defendant Briggman, but the balance of his named and unnamed co-defendants. It is well past that a court steps in to shield defendants from the clear abuse of the legal system brought about by two career felons, who can do so only because they can pay enough money to attorneys who lack any concern about comply with either § 8.01-271.1 or the Code of Professional Responsibility. Mrs. Matheny-Williard is just such an attorney, however, Defendant Briggman believes that the lawsuit was likely authored by Plaintiff Donovan, based on the commonality of words used throughout their many lawsuits in attacking their targets.

      2.      The Plaintiffs, Donovan and Moore, both are career felons who together have in excess of 20 convictions for felonies consisting all of crimes of moral turpitude.[1],[2] Moore stands indicted in this Court[3] on a charge of perjury for falsely swearing on a Criminal Complaint

---

[1] Upon information and belief, Donovan's criminal history is detailed in this document, released via a Freedom of Information Act request to the Department of Homeland Security, attached hereto as Exhibit "A".

[2] (1) Felony Bad Checks 2+ in 90 days > $200, Circuit Court for Louisa County (8/20/2012); (2) Multiple Bad Checks, Circuit Court for Prince William County, (7/14/2000); (3) Felony Bad Check, Circuit Court for Virginia Beach, (8/8/2000); (4) Defrauding an Innkeeper, Circuit Court for Williamsburg/James City County, (5/23/2011); (5) Felony Bad Checks 2+ in 90 days > $200, Circuit Court for Louisa County (8/20/2012); (6) Check Fraud, Circuit Court for Louisa County, (8/20/2012); (7) Felony Probation Violation, Circuit Court for Virginia Beach, (7/2/2002); (8) Felony Bad Check, Circuit Court for Hanover County, (2/4/2011); (9) Felony Bad Check, Circuit Court for the City of Norfolk, (6/29/2000).

[3] See, this Court, case number CR20000230-00.

designed to cause the arrest and disarming of this Defendant via the bogus protective order Moore obtained arising out of the same set of circumstances.

3.      This Defendant and two other former employees sued Nexus Services in federal court alleging that they had illegally wiretapped employees and also violated the Stored Communications Act by entering the personal email and social media accounts of the plaintiffs in that action. Nexus, Donovan, Moore, and another employee, Erik Schneider settled these claims with the Bankruptcy Trustee when Briggman was forced to file for bankruptcy protection because of the legal fees and costs in fighting these frivolous suits and charges brought against him.[4]

3.      Also, and literally within hours of his resignation from Nexus Services, officers of the company began drawing arrest warrants for Defendant Briggman, which efforts continue to present day, with the first SEVEN of the 10 charges terminating in a manor "not unfavorable" to Defendant Briggman.[5] Briggman has three pending charges against him in the Augusta County General District Court.[6] One of the pending charges that Donovan has brought against Defendant Briggman is for an alleged violation of § 18.2-499 of the Code of Virginia. The offense appears to be that Defendant Briggman published a lawsuit that has been filed in this Court, and that some kid in Scotland found that lawsuit and republished it on his social media account.

---

[4] Nexus Services, Donovan, Moore, and an employee, Erik Schneider settled with the Bankruptcy Trustee in the amount of $20,000 to dispose of all claims Defendant Briggman had pending against them prior to the filing of his Bankruptcy, a copy of that settlement agreement is attached hereto as Exhibit "B".

[5] (1) Petit Larceny, Rockingham General District Court; (2) Violation of a Protective Order, Rockingham General District Court; (3) Computer Harassment, Augusta County General District Court; (4) Computer Harassment, Augusta County General District Court; (5) Computer Trespass, Augusta County General District Court; (6) Violation of a Protective Order, Augusta County General District Court; (7) Assault and Battery (Staunton General District Court.

[6] Briggman currently has pending charges in the Augusta County General District Court of (1) Computer Harassment; (2) Conspiracy to Injure Donovan's Reputation, Business, Trade, or Profession; and (3) Violation of a Protective Order.

Somehow, Donovan convinced an Augusta County Magistrate that such an act constitutes a criminal offense.[7] It should also be noted that the Magistrates Office has now recused local magistrates from further matters where Nexus continues to fish for legally baseless criminal charges against Defendant Briggman. They didn't do that after Moore perjured himself to obtain a warrant against Briggman, but after reviewing the criminal complaints Donovan has filed, they have recused all 25th District magistrates from having anything to do with Nexus or any of their cronies from hearing criminal complaints with Defendant Briggman is the subject.

4.      Not content for weaponizing the criminal justice system to harass Defendant Briggman, Plaintiffs Donovan, Moore, and their company have filed repeated bogus civil actions

_____

[7] See Donovan's Criminal Complaint filed to obtain the criminal charge under § 18.2-499 of the Code of Virginia, against Defendant Briggman, attached hereto as Exhibit "C".

telling similar fables against Defendant Briggman and his wife in the Circuit Court for Rockingham County and extending to the Circuit Court of Orange County, Florida.[8],[9],[10],[11]

5.      In the instant matter, this poorly-drafted Complaint is once again long on matter, which in federal court can be stricken from complaints because the contain material considered to be "redundant, immaterial, impertinent, or scandalous." But as far as factual allegations against this Defendant, there are quite few and none which can be demonstrated as actionable.

6.      In paragraph three (3) of the Complaint it states that Defendants (presumably including Briggman) "used salacious lies, racist and homophobic tropes..." but names none of these alleged lies, racist and homophobic tropes.

7.      In paragraph five (5) of the Complaint, counsel for Plaintiffs comes to a legal conclusion that the Defendants committed "civil conspiracy" without telling the Court or, as importantly, the Defendants how exactly she gets there. This is a tactic in Nexus lawsuits, to

---

[8] See, CL17003044-00, Circuit Court for Rockingham County, where Briggman's wife was eventually amended out of that Complaint, but was alleged to have engaged in the similar rantings as in the instant Complaint against Briggman — "defamation" and "civil conspiracy", however, it should be noted for the Court that the allegations contained within that Complaint were created with absolutely no investigation by the counsel for the plaintiffs in that Complaint, based solely on a "troll post" where your Defendant wrote on his Facebook page: "No wonder why Nexus does this, we're bonding our first five on Monday." Nexus, as in the instant matter, had no evidence to support their wild claim that former employees had started a competing entity — except the Facebook post of Defendant Briggman. A copy of this sensational Complaint is attached hereto as Exhibit "D".

[9] See, CL18001808-00, Circuit Court for Rockingham County, where Nexus went after only Briggman's wife. Briggman's wife was alleged and did leave a voicemail message on Harrisonburg Parks and Recreation Department requesting that because of the trouble our family was experiencing with Nexus, that they place any Nexus Christmas float away from the Spotswood High School Marching Band to minimize the chance of Nexus employees harassing Defendant Briggman's son, who participated in the band. Nexus sued Briggman's wife after filing a FOIA request seeking information as to why their float didn't win an award in the Harrisonburg Christmas Parade. Because of Nexus, Harrisonburg no longer gives awards for floats entered in the Christmas Parade. The Complaint, which is attached hereto as Exhibit "E" was non-suited after counsel for Mrs. Briggman threated a Motion for Sanctions against Nexus and their counsel.

[10] See, CL20002044, Circuit Court for Rockingham County, where Plaintiff Donovan is presently suing Defendant Briggman's wife (a 30-year School Counselor at Spotswood High School), for once again "civil conspiracy", so vague that it lacks any specific references to dates and fails to name any co-conspirator, attached hereto as Exhibit "F".

[11] See, 2017-CA-009843-O, Circuit Court for Orange County, Florida, which Complaint is attached hereto as Exhibit "G".

require their targets to have to obtain counsel to file responsive pleadings where Nexus will ask, or be allowed, to continually amend their pleadings until just a thread-bare recital of facts *may* surface.

8.      Paragraph six (6) alleges that Defendant Chapman (which Defendant Chapman, as they've named two Defendants Chapman in this Complaint) was contacted by Defendant Briggman, who allegedly "connected" a Defendant Chapman to Defendants Collins, Combs, and names (but doesn't sue?) Augusta County Sheriff, Donald Smith. Plaintiffs once again make a legal conclusion that the Defendants formed an "organization" without, once again, telling the Court or Defendants how they got there.

9.      In paragraph nine (9) of the Complaint, Plaintiff conclude (but once again don't tell the Court or the Defendants how they get there) Briggman (not a law enforcement officer) and Collins (a mandatory age-retired FBI agent) have partnered up to advanced some sort of inquiry which is still unknown to Defendant Briggman.

10.     Plaintiffs in paragraph ten (10) come to yet another conclusion that Defendants has somehow conspired to manipulate the testimony of potential "Federal Grand Jury" witnesses without stating exactly who and how this allegedly occurred.

11.     Plaintiffs in paragraph fourteen (14) allege a "series of attacks" against Plaintiffs, that supposedly amount to "perversions of justice" that would "shock the conscience" but they go well out of their way not to make specific allegations as to who made these attacks and what these attacks consisted of. Again, this is a well-used tactic across all of these lawsuits filed by Nexus, Donovan, and Moore designed to harass their targets and drain them of their assets when having to defend against this legal garbage.

12.     Plaintiffs in paragraphs two (2) and twenty-two (22) reference Defendant Briggman's stint as President of the Virginia Oath Keepers and consistently attempt to tie that organization (which Briggman had to resign from because of the harassment the organization sustained at the hands of Donovan and Moore) to the national organization where the two organizations have no legal relationship and, in fact, a membership in the Virginia organization is not recognized by the national organization — a vice versa. Further, they also seem to forget to mention in their pleadings that one of Richard Moore's two "fathers" is also a Founding Member of the Organization.

13.     Plaintiffs, commencing in paragraph twenty-seven (27) and continuing throughout their "Statement of Facts" seems to assert only one very non-specific allegation against Defendant Briggman, and that is that he, along with Defendants Chapman "strategically placed tweets or other social media messages to be placed on Plaintiff Donovan and Moore's accounts making outrageous accusations…"

14.     In summary, Plaintiffs' only accusations against Defendant Briggman, at best are that he connected Defendant Chapman with Special Agent Collins and with Lindsay Combs (where Briggman would have had Chapman call Combs at District 39 Probation and Parole, because that's where Briggman assumed she was still working since the last time he had contact with her, approximately five years ago while he was working for Nexus Services).

15.     Plaintiffs fail to realize that when you alienate of lot of people over as they have as employers and business partners, they make enemies. Clearly, Plaintiffs Donovan and Moore by wiretapping Defendant Briggman; by underreporting his income taxes to the Virginia Department of Taxation and to the Internal Revenue Service; by stealing from Briggman's

401(k) and health insurance plans[12]; then bringing countless bogus criminal charges and civil actions against Briggman and his wife, not to mention to video attacks a former Nexus employee made on his wife and very minor children disguised as "news", they've made someone who is determined to take whatever legal measures to ensure Donovan and Moore go to jail for much of their rest of their natural lives.

## ARGUMENT

16.     In Count I of the Complaint, Plaintiffs make only a legal conclusion that Defendants have somehow joined in a "civil" and "criminal" against them, however without specific on exactly how and when Briggman somehow agreed to enter this conspiracy, the count fails.

17.     In Count II of the Complaint, paragraph sixty-three (63) only alleges that Defendants "made various defamatory statements about plaintiffs," but makes no specific allegation that Defendant Briggman made any such statement. As such, the count fails.

18.     In Count III of the Complaint, nothing is alleged to have been attributed to Defendant Briggman.

19.     In Count IV of the Complaint, all Defendants are alleged to have engaged in Racial and Ethnic Harassment", however, Defendant Briggman is unable to find any reference to any act alleged within the four corners of this poorly-written Complaint which attributes any act to Defendant Briggman which relates to race, ethnicity, or religion. As such, this count against Briggman would necessarily fail.

---

[12] See documents obtained from the United States Department of Labor, Employee Benefit Security Administration who acting on a complaint from Defendant Briggman recovered some $308,000 for the employees of Nexus Services where Donovan and Moore began stealing from the 401(k) plan the second week it was in operation. The document will also include a more-recent letter in response to a follow-up FOIA request on documents relating to the EBSA investigation of the theft of over $500,000 from the employee health insurance plan, also reported by Briggman, attached as Exhibits "H".

## **CONCLUSION**

WHEREFORE, based on the foregoing and subject to possible amendment after disclosures made pursuant to Defendant's Briggman's Motion Craving Oyer, if granted, Defendant Briggman asks the Court to sanction all Plaintiffs, jointly and severally, and counsel for Plaintiffs, Amina Matheny-Willard on grounds that this Complaint is in violation of § 8.01-271.1 of the Code of Virginia, in that Matheny-Williard failed to conduct even a minimal investigation prior to affixing her name on the Complaint before the Court, and that the Plaintiffs and Matheny-Willard filed this Complaint for in improper purpose, to-wit: to harass the defendants and to deplete their assets. The Court should also be advised that Defendant Briggman attempted to advise Matheny-Willard of the impending filing of this motion by email which was sent to her five (5) days ago, which Matheny-Willard acknowledged as having received three (3) days ago. Defendant Briggman has received no further communication in what will have been 96 hours before the filing of this motion. Defendant Briggman respectfully requests that the Court impose a monetary sanction against the Plaintiffs and Matheny-Willard, and that the Court consider suspending Matheny-Willard from the practice of law and referring her to the Ethics Counsel of the Virginia State Bar.

Respectfully submitted,

DAVID B. BRIGGMAN, *Defendant,* Pro Se
7556 Mountain Valley Road
Keezletown, Virginia 22832
(540) 246-5252
briggman@gmail.com

## CERTIFICATE OF SERVICE

I, David B. Briggman, do hereby certify that I transmitted to counsel for the Plaintiffs, a true copy of his Motion for Sanctions by electronic mail on this 1st day of November, 2021.

_____
DAVID B. BRIGGMAN, *Defendant*, Pro Se

Filed in the Clerk's Office of the
Circuit Court of Augusta County
Time: 3:34pm Date: 11-1-21
TESTE:
_____ Dep. Clk.
Date: November 1, 2021

# Exhibit A

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE<br><br>R E P O R T   O F   I N V E S T I G A T I O N<br>C O N T I N U A T I O N | PAGE    2 |
|---|---|
| | CASE NUMBER    (b)(7)(E) |
| | REPORT NUMBER: 003 |

DETAILS OF INVESTIGATION:

[(b)(6) (b)(7)(C)]_____, a United States Citizen born on June 28, 1977, is the executive director of Nexus Programs, an organization that claims to serve the community with programs and services designed to reduce jail and prison overcrowding.  Open source information reveals that Nexus Programs is a religious organization.  [(b)(6) (b)(7)(C)] is an outreach pastor at The River Church located in Harrisonburg, VA.

The following is a detailed list of [(b)(6) (b)(7)(C)] criminal history:

[(b)(6) (b)(7)(C)]
DOB: [(b)(6) (b)(7)(C)]
POB: Pennsylvania or Harrisonburg, VA
Height: 6'04"
Weight: 250
White Male
SSN: [(b)(6) (b)(7)(C)] and [(b)(6) (b)(7)(C)]
[(b)(7)(E)]
State Criminal ID # [(b)(6) (b)(7)(C)]
No active Wants/Warrants

#1
Winchester, VA Police Department  3/27/1999
*  Charged with Felony  Obtaining Money by False Pretenses (12/24/1998)
        Disposition: DISMISSED - Winchester Gen District Court  (5/24/2000)

#2
Arlington County, VA Sheriff's Office 12/11/1999
*  Charged with Misdemeanor  Bad Check
        Disposition: GUILTY  Page County Gen District Court  (3/30/2000)
        Contact Arresting Agency for Arrest Data
*  Charged with Misdemeanor  Bad Check
        Disposition: GUILTY  Page County Gen District Court  (12/12/1999)
*  Charged with Felony  Unauthorized Use of Vehicle
        Disposition: GUILTY (MSDMNR)  Newport News GD Crim  (2/11/2000)
*  Charged with Felony  Issuing Bad Checks <$200
        Disposition: GUILTY (MSDMNR)  Prince WM Gen District (3/6/2000)

#3
Arlington, VA Police Department  12/11/1999
*  Charged with Felony  Forging Coin and Bank Notes (12/10/1999)
        Disposition: NOLLE PROSSED  Arlington CO GENDIS  (1/12/2000)
*  Charged with Felony  Forging, Uttering

O F F I C I A L   U S E   O N L Y

THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

OFFICIAL USE ONLY

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE    3 |
|---|---|
| REPORT OF INVESTIGATION CONTINUATION | CASE NUMBER   (b)(7)(E) |
| | REPORT NUMBER: 003 |

Disposition: GUILTY - Arlington County Circuit Court (7/28/2000) 4
years imposed, 3 years and 4 months suspended penitentiary, Judge court
appointed supervised probation
* Charged with Felony  Grand Larceny
    Disposition: GUILTY  Arlington County Circuit Court (7/28/2000) 4 years
    imposed, 3 years and 4 months suspended penitentiary, Judge court
    appointed supervised probation

#4
Winchester, VA Police Department  3/10/2000
* Charged with Felony  Issuing Bad Checks >=$200 (12/5/1997)
    Disposition: DISMISSED  Winchester Gen Dist  (5/24/2000)

#5
Arlington, VA Police Department  5/25/2000
* Charged with Felony  Grand Larceny (4/1/1999)
    Disposition: GUILTY - Arlington County Circuit Court
* Charged with Felony  Grand Larceny (4/1/1999)
    Disposition: GUILTY - Arlington County Circuit Court (7/28/2000)
* Charged with Felony  Grand Larceny (12/3/1999)
    Disposition: GUILTY - Arlington County Circuit Court (7/28/2000)
* Charged with Felony  Forging, Uttering (4/1/1999)
    Disposition: GUILTY - Arlington County Circuit Court (7/28/2000)
* Charged with Felony  Forging, Uttering 9/18/1999)
    Disposition: GUILTY - Arlington County Circuit Court (7/28/2000)
* Charged with Felony  Forging, Uttering (12/3/1999)
    Dispostion: GUILTY - Arlington County Circuit Court (7/28/2000)

#6
Fairfax City, VA Police Department  7/27/2000
* Charged with Felony  Bad Check (8/12/1999)
    Disposition: NOLLE PROSSED  (8/2/2000)
* Charged with Felony  Bad Check (8/12/1999)
    Disposition: NOLLE PROSSED  (9/11/2000)
* Charged with Felony  Obtaining Money By False Pretenses (8/12/1999)
    Disposition: UNKNOWN
* Charged with Felony  Forgery (7/26/1999)
    Disposition: UNKNOWN
* Charged with Felony  Uttering (7/26/1999)
    Disposition: UNKNOWN
* Charged with Felony  Uttering (7/26/1999)
    Disposition: UNKNOWN
* Charged with Felony  Bad Check (8/2/1999)
    Disposition: NOLLE PROSSED  (9/12/2000)
* Charged with Felony  Forgery (7/26/1999)

OFFICIAL USE ONLY
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

33

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY ICE | PAGE    4 |
|---|---|
| | CASE NUMBER    (b)(7)(E) |
| R E P O R T   O F   I N V E S T I G A T I O N C O N T I N U A T I O N | REPORT NUMBER: 003 |

Disposition: UNKNOWN

#7
Harrisonburg, VA Police Department  9/19/2000
*  Charged with Felony  Issue 2 or More Bad Checks in 90 Days (1/17/1998)
        Disposition: GUILTY (MSDMNR)  Rockingham Gen Dist (12/5/2000)

#8
Page County, VA Sheriff's Office  11/30/2000
*  Charged with Felony Obtaining Money by False Pretenses (12/24/1998)
        Disposition: GUILTY  Winchester Circuit Court (3/20/2001) 1 yrs 6 mos
        imposed, 1 yrs 6 mos suspended penitentiary  supervised probation

#9
 Page County, VA Sheriff's Office  2/20/2001
*  Charged with Felony  Forging, Uttering (9/30/2000)
        Disposition: DISMISSED  Danville Gen Dist Court (7/11/2001)
*  Charged with Felony  Forging, Uttering (9/30/2000)
        Disposition: DISMISSED  Danville Gen Dist Court (7/11/2001)
*  Charged with Felony  Grand Larceny (9/30/2000)
        Disposition: DISMISSED  Danville Gen Dist Court (7/11/2001)

#10
Danville, VA Police Department  2/27/2001
*  Charged with Felony  Grand Larceny (10/29/2000)
        Disposition: DISMISSED  Danville Gen Dist Court (7/11/2001)
*  Charged with FELONY  Forging, Uttering (10/29/2000)
        Disposition: DISMISSED  Danville Gen Dist Court (7/11/2001)
*  Charged with Felony  Forging, Uttering (10/29/2000)
        Disposition: DISMISSED  Danville Gen Dist Court (7/11/2001)

#11
Richmond City, VA Police Department  9/14/2005
*  Charged with Felony  Grand Larceny (9/11/2005)
        Disposition: NOLLE PROSSED  Richmond CR Court Div2 (1/22/2007)
*  Charged with Felony  Grand Larceny (8/24/2005)
        Disposition: GUILTY (MSDMNR)  Henrico Gen Dist Court (2/7/2006) Failure
        of Bailee to Return Property <$200, 12 months imposed, 12 months
        suspended
*  Charged with Felony  Forging, Uttering (11/17/2001)
        Disposition: DISMISSED  Newport News GD Crim (12/2/2005)

#12
James City County, VA Police Department  6/3/2009
*  Charged with Felony  Motel/Rest/Park/ETC:Fraud>=$200  (6/3/2009)

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE.  ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

34

O F F I C I A L   U S E   O N L Y

| DEPARTMENT OF HOMELAND SECURITY<br>ICE<br><br>R E P O R T   O F   I N V E S T I G A T I O N<br>C O N T I N U A T I O N | PAGE   5 |
|---|---|
| | CASE NUMBER     (b)(7)(E) |
| | REPORT NUMBER: 003 |

Disposition: NOLLE PROSSED  Williamsburg Gen Ct (3/4/2010)
* Charged with Felony  Obtain Money:False Pretense/Larceny>=$200 (6/3/2009)
    Disposition: GUILTY  Wmsbrg-James City Cir Ct (5/23/2011) 5 yrs
    imposed, 4 yrs suspended penitentiary, INDEFINITE PROBATION
* Charged with Felony  Conspiracy to Commit Felony (6/3/2009)
    Disposition: NOLLE PROSSED - Williamsburg Gen Ct (3/4/2010)

#13
Chesterfield County, VA Police Department  7/14/2009
* Charged with Felony - Motel/Rest/Park/ETC:Fraud>=$200 (3/28/2008)
    Disposition: NOLLE PROSSED  Chesterfield Co Gen Dist (2/23/2010)
* Charged with Felony  Bad Checks:2 or more in 90 days >=$200 (3/10/2008)
    Disposition: NOLLE PROSSED  Chesterfield Co Gen Dist (2/23/2010)
* Charged with Felony  Bad Checks:2 or more in 90 days >=$200 (3/27/2008)
    Disposition: NOLLE PROSSED  Chesterfield Co Gen Dist (2/23/2010)

#14
Chesterfield County, VA Sheriff's Office  12/9/2009
* Charged with Felony  Bad Check:Larceny >=$200 (9/11/2009)
    Disposition: GUILTY  Hanover Circuit Ct (2/14/2011) 5 yrs imposed, 4
    yrs 10 mos suspended penitentiary, INDEFINITE PROBATION
* Charged with Felony  Conspiracy Bad Check: Larceny >=$200 (9/23/2009)
    Disposition: NOLLE PROSSED - Hanover Circuit Ct (7/21/2010)

#15
Henrico County, VA Police Department  1/7/2010
* Charged with Felony  Identity Theft:Fraud Use of ID, Loss>=$200 (8/19/2009)
    Disposition: NOLLE PROSSED  Henrico Gen Dist Ct (2/17/2010)
* Charged with Felony  Identity Theft:Fraud Use of ID, Loss>=$200 (8/24/2009)
    Disposition: NOLLE PROSSED  Henrico Gen Dist Ct (2/17/2010)
* Charged with Felony  Bad Check:Larceny >=$200 (8/24/2009)
    Disposition: NOLLE PROSSED  Henrico Gen Dist Ct (4/28/2010)
* Charged with Felony  Bad Check:Larceny >=$200 (12/20/2009)
    Disposition: NOLLE PROSSED  Henrico Gen Dist Ct (4/28/2010)

#16
Harrisonburg, VA Police Department  6/18/2012
* Charged with Felony  Obtain Money:False Pretense/Larceny<=$200 (5/14/2011)
    Disposition: GUILTY (MSDMNR)  Shenandoah Gen Dist (12/28/2012) 12 mos
    imposed, 12 mos suspended, UNSUPERVISED PROBATION

Investigation Continues

O F F I C I A L   U S E   O N L Y
THIS DOCUMENT IS LOANED TO YOU FOR OFFICIAL USE ONLY AND REMAINS THE PROPERTY
OF THE DEPARTMENT OF HOMELAND SECURITY, ICE. ANY FURTHER REQUEST FOR
DISCLOSURE OF THIS DOCUMENT OR INFORMATION CONTAINED HEREIN SHOULD BE REFERRED
TO ICE HEADQUARTERS TOGETHER WITH A COPY OF THE DOCUMENT.

35

# Exhibit B

EXHIBIT 6

## RELEASE AND SETTLEMENT AGREEMENT

This Release and Settlement Agreement (the "Agreement"), made this ⎯⎯ 19 day of June, 2019 (the "Effective Date"), is knowingly, willingly, and voluntarily entered into between ROBERT STEVENS, AS TRUSTEE FOR THE BANKRUPTCY ESTATE AND ACTING ON BEHALF OF DAVID B. BRIGGMAN ("Briggman" and the "Trustee"), NEXUS SERVICES, INC., and all of Nexus's subsidiaries, related companies, and their current or former officers, directors, agents, assigns, employees, representatives, successors, and any other persons or entities acting on behalf of Nexus Services, Inc. (collectively, "Nexus"), MICHAEL PAUL DONOVAN ("Donovan"), RICHARD EDWARD MOORE ("Moore"), and ERIK G. SCHNEIDER ("Schneider") (collectively, the "Nexus Parties" and together with Briggman, the "Parties") in light of the following circumstances.

## RECITALS

WHEREAS, on February 15, 2018, Briggman filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Western District of Virginia, Case No.: 18-50121-RBC-7 (the "Bankruptcy Case" and "Bankruptcy Court");

WHEREAS, Trustee has been appointed Trustee for Briggman in his Bankruptcy Case and as such he is administering Briggman's bankruptcy estate;

WHEREAS, on March 2, 2018, Briggman, along with Tania Cortes ("Cortes") and Richard W. Nagel ("Nagel") filed a Complaint in the United States District Court for the Western District of Virginia (the "Court") against Nexus, Donovan, and Schneider styled David B. Briggman, Tania Cortes, and Richard W. Nagel v. Nexus Services, Inc., Michael Paul Donovan, and Erik G. Schneider, Case No. 5:18cv47 (the "Complaint"), alleging Nexus, Donovan, and Schneider unlawfully intercepted their oral and electronic communications and unlawfully intercepted, disclosed, or used their oral and electronic communications;

WHEREAS, on July 5, 2018, Nexus, Donovan, and Schneider filed an Answer to the Complaint;

WHEREAS, on August 13 and September 26, 2018, Briggman, Cortes, and Nagel filed Motions to Amend the Complaint to add Moore as a defendant and to allege additional claims of unlawful access of stored communications, wrongful discharge, and malicious prosecution;

WHEREAS, on August 27 and October 1, 2018, the Nexus Parties filed Oppositions to the Motions to Amend;

WHEREAS, on December 11, 2018, the Court entered an Order dismissing Briggman's wrongful discharge and malicious prosecution claims (together with the previously described pleadings, the "Litigation");

WHEREAS, the Nexus Parties deny the allegations made by Briggman, Cortes, and Nagel in the Litigation, and the Nexus Parties deny they are liable to Briggman, Cortes, or Nagel under any theory or for any damages whatsoever;

WHEREAS, Briggman listed his claims against Nexus and Schneider as assets in his Bankruptcy Case having a value of $3,631,500.00;

WHEREAS, the Trustee has monitored legal proceedings in which Briggman has been involved, and has agreed, along with the Nexus Parties and on Briggman's behalf, to resolve Briggman's claims in the Litigation for the benefit of Briggman's creditors in the Bankruptcy Case;

WHEREAS, the Parties and the Trustee, in order to avoid the additional costs and expenses of the Litigation, have agreed to resolve the Litigation and have agreed to the provisions of this Agreement as set forth herein;

NOW, THEREFORE, for and in consideration of the foregoing, the mutual covenants and agreements contained in this Agreement, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Parties and the Trustee agree as follows:

## 1. Settlement Payment.

The Trustee agrees to accept the total sum of Twenty Thousand Dollars and 00/100 ($20,000.00) (the "Settlement Amount"). The Settlement Amount will be payable by check. The check shall be made payable to "Robert Stevens, Chapter 7 Trustee" in the amount of $20,000.00 (the "Settlement Payment"). The Settlement Payment shall be delivered to the Trustee on or before June __, 2019. The Trustee shall hold the Settlement Payment in trust until approval of this settlement by the Bankruptcy Court and the dismissal of the Litigation with prejudice as required by this Agreement.

## 2. Dismissal of the Litigation.

Following approval of the settlement and this Agreement by the Bankruptcy Court, the Nexus Parties shall move for dismissal of the Litigation, with prejudice. The Trustee, on behalf of Briggman, shall join in the dismissal request. The dismissal shall reflect that each party is to bear its own costs and attorneys' fees, that the United States District Court for the Western District of Virginia retains jurisdiction over the Litigation as to Briggman solely to enforce the terms of this Agreement, and that the Litigation as to Cortes and Nagel shall continue unaffected. Briggman's endorsement shall not be required for the Dismissal.

2

3.    **No Admission by the Nexus Parties.**

This Agreement shall not in any way be construed as an admission by the Nexus Parties that they are liable in any fashion to Briggman. This Agreement and performances hereunder are made solely to avoid the cost, expense and uncertainty of the Litigation and are not and shall not be construed to be an admission of liability, an admission of the truth of any fact, or a declaration against any interest on the part of the Nexus Parties.

4.    **Releases.**

In consideration of the promises referenced in Paragraph 1 above, and contingent on the approval of this settlement and Agreement by the Bankruptcy Court, Briggman knowingly, willingly, and voluntarily releases, discharges, and waives all rights, claims, lawsuits, liabilities, actions, disputes, causes of action, damages (including, but not limited to, liquidated damages, compensatory damages, or punitive damages, attorney's fees and litigation costs), demands, obligations to date, known or unknown (hereinafter "rights and claims") against the Nexus Parties, and all persons acting by, through, or under the Nexus Parties (including all Nexus's subsidiaries, related companies, and their current or former officers, directors, agents, assigns, employees, representatives, successors, and any other persons or entities acting on behalf of Nexus), which were or could have been asserted, as of the date of execution of this Agreement, in the Litigation or against the Nexus Parties. This Release shall also apply to any claims held by the Trustee in the Bankruptcy Case against the Nexus Parties.

In consideration of the promises referenced in Paragraph 1 above, and contingent on the approval of this settlement and Agreement by the Bankruptcy Court, the Nexus Parties, knowingly, willingly, and voluntarily release, discharge, and waive all rights, claims, lawsuits, liabilities, actions, disputes, causes of action, damages (including, but not limited to, liquidated damages, compensatory damages, or punitive damages, attorney's fees and litigation costs), demands, obligations to date, known or unknown (hereinafter "rights and claims") against Briggman, and all persons acting by, through, or under Briggman, which were or could have been asserted in the Litigation.

The Parties agree this is a general release and is to be broadly construed as a release of all claims; provided that notwithstanding the foregoing, this Agreement expressly does not include a release of any claims that cannot be released hereunder by law or under applicable public policy.

5.    **No Future Lawsuits.**

This Release precludes any future lawsuit or demand for arbitration asserting any claims Briggman asserted or could have asserted in the Litigation. In the event Briggman attempts to file such lawsuit or makes such a demand, Briggman shall pay to the Nexus Parties all their expenses incurred as a result of such breach, including but not limited to, reasonable attorney's fees and expenses.

3

### 6.   Non-Disparagement As To Briggman.

Briggman shall not, verbally or in writing, make derogatory statements with regard to the performance, character, or reputation of the Nexus Parties, or assert that the Nexus Parties have acted improperly or unlawfully with respect to Briggman. Briggman will not solicit or encourage or assist any other person or entity to pursue or bring a claim against the Nexus Parties. Notwithstanding the foregoing, the Parties agree that nothing in this Agreement shall prohibit any other Party from responding to legal process or be construed to prohibit the exercise of any rights by any Party that such Party may not waive as a matter of law. If compelled to do so by law, the Parties will tell the truth.

### 7.   Enforcement of this Agreement.

Nothing in this Agreement releases or waives, nor shall anything contained herein be construed to release or waive, any claim for breach of any covenant or provision of this Agreement. If any action is brought to enforce or interpret the terms of this Agreement, the prevailing party in such action shall be entitled to reasonable attorneys' fees, costs, and necessary disbursements, in addition to any other relief to which a court of competent jurisdiction may order.

### 8.   Entire Agreement.

This Agreement contains the entire understanding of the Parties concerning the subjects it covers and it supersedes all prior understandings and representations. Neither Party has made promises to the other Party other than those set forth herein. This Agreement is an integrated agreement. The terms of this Agreement are contractual and not mere recitals.

### 9.   Severability.

Should any provision of this Agreement subsequently be held to be unlawful, invalid, or unenforceable under any present or future laws or judicial decisions, such provision shall be fully severable from the remainder of the Agreement. The remainder of the provisions of this Agreement shall not be affected thereby and shall continue to be enforceable to the full extent permitted by law.

### 10.   Governing Law.

This Agreement has been executed and accepted within the Commonwealth of Virginia. The validity, effect, construction, interpretation, and administration of this Agreement, as well as the validity, effect, construction, interpretation, and administration of any modification, alteration, or amendment or attempted modification, alteration, or amendment hereto, shall be governed by the substantive law of the Commonwealth of Virginia, without regard to the Commonwealth's conflicts of law principles.

4

## 11.   Authority of the Parties and Trustee.

As an inducement to each Party and the Trustee to enter into this Agreement, each Party and the Trustee represents and warrants that there exists no impediment or restraint, contractual or otherwise, on its powers, rights, or abilities, and that each has the requisite authority to enter into this Agreement and to perform its duties and obligations herein. Each Party and the Trustee further warrants that it is the sole owner of the claims, demands, and causes of action covered by this Agreement and that it has not heretofore sold, assigned, transferred, conveyed, or otherwise disposed of any interest or share in the claims, actions, and causes of action covered by this Agreement. Each person signing this Agreement warrants that he or she has actual authority to do so on behalf of the Party that he or she represents, or as Trustee. Each signatory to this Agreement warrants that it has authority to enter into the terms and conditions of and to execute this Agreement.

## 12.   Execution

This Agreement may be executed in multiple counterparts, each of which shall be deemed an original and all of which, together, shall constitute one and the same instrument

5

IN WITNESS WHEREOF, each of the Parties and the Trustee has caused this Release and

Settlement Agreement to be executed either individually or in its entity name by its duly

authorized representatives.

**ROBERT STEVENS, CHAPTER 7 TRUSTEE FOR DAVID BRIGGMAN**

Date: 6/19/19

**NEXUS SERVICES, INC.**

By:

Date: June 21, 2019

Name:

Its:

**MICHAEL PAUL DONOVAN**

Date: June 21, 2019

**RICHARD EDWARD MOORE**

Date:

6

IN WITNESS WHEREOF, each of the Parties and the Trustee has caused this Release and
Settlement Agreement to be executed either individually or in its entity name by its duly
authorized representatives.

ROBERT STEVENS, CHAPTER 7 TRUSTEE FOR DAVID BRIGGMAN

Date:   6/19/19

NEXUS SERVICES, INC.

By:_____

Date:_____

Name:_____

Its:_____

MICHAEL PAUL DONOVAN

_____

Date:_____

RICHARD EDWARD MOORE

Date:   6/19/19

6

43

ERIK G. SCHNEIDER

Date: 6/21/19

38867678_6

7

# Exhibit

# C

~~COMPLAINT~~
or Virginia

RULES 3A:3 AND 7C:3

*Augusta*
CITY OR COUNTY

[✓] General District Court
[ ] Juvenile and Domestic Relations District Court

Under penalty of perjury, I, the undersigned Complainant swear or affirm that I have reason to believe that the Accused committed a criminal offense, on or about

........................................................ in the [ ] City [✓] County [ ] Town

DATE OFFENSE OCCURRED

of ........................................................ *Augusta*

I base my belief on the following facts: (Print ALL information clearly.)

On 05/05/21 Mr. Briggman posted to social media a copy of a court filing I'd made seeking disclosure of the identity of a false and "unfounded" report to CPS. Mr. Briggman posted the single page of the filing containing a quote of the false allegations. He shared the content with a Mr. Durrand, a scottish citizen, who reposted Mr. Briggmans facebook post with the allegations on May 11. On May 12 the harassment continued from Mr. Durrand where he publicly accused me of "letting kids drown" and "watch porn". Mr. Briggman has commented on posts from Mr. Durrand further increasing the damage to my reputation. Mr. Briggman and Mr. Durrand have conspired and acted to damage by reputation or trade, in violation of the law.

The statements above are true and accurate to the best of my knowledge and belief.

In making this complaint, I have read and fully understand the following:

- By swearing to these facts, I agree to appear in court and testify if a warrant or summons is issued.
- The charge in this warrant cannot be dismissed except by the court, even if I request.

*Donovan, Michael Paul*
NAME OF COMPLAINANT (LAST, FIRST, MIDDLE)
(PRINT CLEARLY)

SIGNATURE OF COMPLAINANT

Subscribed and sworn to before me this day.

5/24/21          5:42 PM
DATE AND TIME

[ ] CLERK [✓] MAGISTRATE [ ] JUDGE

FORM DC-311 REVISED 07/11    (A200832 8/19)

---

## CRIMINAL COMPLAINT

ACCUSED: Name, Description, Address/Location

*Briggman, David B.*
LAST NAME, FIRST NAME, MIDDLE NAME

*7556 Mountain Valley Rd*

*Keezletown, VA 22832*

| | | COMPLETE DATA BELOW IF KNOWN | | | | | |
|---|---|---|---|---|---|---|---|
| RACE | SEX | BORN | | | HT. | | WGT. | EYES | HAIR |
| | | MO. | DAY | YR. | FT. | IN. | | | |
| W | M | 8 | 19 | 67 | 6 | 0 | 260 | blu | bn |
| SSN | | | | | | | | |

[ ] Complainant is not a law-enforcement officer or animal control officer. Authorization prior to issuance of felony arrest warrant given by
[ ] Commonwealth's attorney
[ ] Law-enforcement agency having jurisdiction over alleged offense

NAME OF PERSON AUTHORIZING ISSUANCE OF WARRANT

DATE AND TIME AUTHORIZATION GIVEN

46

# Exhibit D

**VIRGINIA:  IN THE CIRCUIT COURT FOR ROCKINGHAM COUNTY**

| | |
|---|---|
| NEXUS SERVICES, INC.,<br>and<br>ERIK G. SCHNEIDER,<br><div align="center">Plaintiffs,</div><br>v.<br><br>DAVID B. BRIGGMAN<br>7556 Mountain Valley Road<br>Keezletown, VA  22832<br>and<br>LYNN C. HOOPER BRIGGMAN<br>7556 Mountain Valley Road<br>Keezletown, VA  22832<br>and<br>RICHARD W. NAGEL<br>95 Blue Stone Hills Drive<br>Harrisonburg, VA  22801<br>and<br>DANG-NAGEL & ASSOCIATES, LLC<br>Serve:      RICHARD W. NAGEL<br>95 Blue Stone Hills Drive<br>Harrisonburg, VA  22801<br>and<br>MICHAEL A. KISER<br>1617 Packard Street<br>Staunton, VA  24401<br>and<br>TABATHA SHIPLETT<br>1617 Packard Street<br>Staunton, VA  24401<br>and<br>DAVID QUINTANA<br>19788 Hwy. 105 W., #222<br>Montgomery, TX  77356<br>and<br>TANIA CORTES<br>877 N. Main Street<br>Harrisonburg, VA  22801<br>and<br>ANDREW JONES<br>4252 Shady Oak Drive<br>Broadway, VA  22815,<br>and | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Case No. _CL17-3044_

JURY DEMANDED

FILED IN THE CLERK'S OFFICE
ROCKINGHAM COUNTY, VA

SEP 2 9 2017

_Neather Reason_ DEPUTY CLERK

48

ANDREA RAMIREZ ARROYO      )
33530 Great Falls Road       )
Wildomar, CA 92563        )
       Defendants.     )
                )

## COMPLAINT

Plaintiff, Nexus Services, Inc. ("Nexus"), for its Complaint against Defendants DAVID B. BRIGGMAN, LYNN C. HOOPER BRIGGMAN, RICHARD W. NAGEL, DANG-NAGEL & ASSOCIATES, LLC,  MICHAEL A. KISER, TABATHA SHIPLETT, DAVID QUINTANA, TANIA CORTES, ANDREW JONES and ANDREA RAMIREZ ARROYO alleges as follows:

### JURISDICTION AND VENUE

1. The Court's jurisdiction is based on § 17.1-513, *et seq.*, and § 8.01-328.1, *et seq.*,of the Code of Virginia.

2. The Court has concurrent jurisdiction to consider the Plaintiffs' Civil RICO claims pursuant to *Tafflin v. Levitt*, 493 U.S. 455 (1990).

3. Venue is proper pursuant to § 8.01-262(4) of the Code of Virginia.

### PARTIES

4. Plaintiff Nexus Services, Inc. ("Nexus"), is a Virginia corporation with its principal place of business located in Augusta County, Virginia. Nexus owns and operates Libre By Nexus, Inc., which is a provider of immigration bond securitization.

5. Plaintiff Erik G. Schneider is a Virginia resident and Vice-President of Risk Management at Nexus.

6. Defendant David B. Briggman is a Virginia resident and a former employee of Nexus.

2

49

7.   Defendant Lynn C. Hooper Briggman is a Virginia resident and spouse of Defendant David B. Briggman.

8.   Defendant Richard W. Nagel is a Virginia resident and a former employee of Nexus.

9.   Defendant Dang-Nagel Associates, LLC  ("Dang-Nagel") is a limited liability company formed under the laws of Virginia and maintains its principal office in Harrisonburg, Virginia. Dang-Nagel is owned and operated by Defendant Richard W. Nagel.

10.   Defendant Michael A. Kiser is a Virginia resident and a former employee of Nexus.

11.   Defendant Tabatha Shiplett is a Virginia resident and partner of Defendant Michael A. Kiser.

12.   Defendant David Quintana is a Texas resident and a former employee of Nexus.

13.   Defendant Tania Cortes is a Virginia resident and a former employee of Nexus.

14.   Defendant Andrew Jones is a Virginia resident and a former employee of Nexus.

15.   Defendant Andrea Ramirez Arroyo is a California resident and a former employee of Nexus.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

16.   This case presents a vicious campaign of disparagement and defamation aimed at Plaintiff Nexus and its senior Vice President, Erik Schneider.  The defendants are all former employees of Nexus, with the exception of Lynn C. Hooper Briggman (who is related by marriage to Defendant David Briggman) and Tabatha Shiplett (who is the partner of Defendant Michael Kiser).  Over the past 12 months, the Defendants formerly employed by Nexus, resigned under questionable circumstances or were dismissed for cause. Unfortunately, the defendants are not merely disgruntled former employees seeking to exact some measure of revenge on social media. Nor is the smear campaign solely motivated by bigotry and intolerance (though bigotry

3

and intolerance feature prominently). In reality, a profit motive underlies Defendants' unrelenting attack on Nexus and Schneider.

17.   While still in Nexus' employ, the defendants conspired to organize themselves as a direct business competitor of Nexus. Subterfuge was used to hide their enterprise because the defendants knew full well that the express terms of their employment at Nexus required them to devote full-time and effort to the company.  Defendants knew contractual covenants prohibited them from competing with Nexus, or from soliciting other Nexus employees to leave their positions, both during and after their periods of employment.

18.   Nexus is a relatively young company that has witnessed rapid growth. Success is due to Nexus' innovative solution to a problem in our nation's immigrant detention system. Every year tens of thousands of undocumented aliens are detained by ICE and placed in federal detention pending a resolution of each case by the Department of Homeland Security's administrative court system.  The administrative proceedings may take three or even four years to reach a final disposition.  Meanwhile, unless an undocumented alien raises collateral or puts down 100 percent cash on a release bond, he or she will remain in detention for three to four years at the taxpayers' expense.  Nexus developed a unique business model whereby a release bond is issued by a bonding company, guaranteed by Nexus, and secured through a monitoring program. This requires a sophisticated underwriting program, which is proprietary to Nexus. It also requires that Nexus maintain the trust and confidence of the very few bonding companies are willing and authorized to issue bonds in the immigration market.  Prior to Nexus entering the market, more than 70 percent of undocumented aliens released on bond failed to appear at their immigration hearings. The appearance rate for Nexus' clients is greater than 98 percent.  Of course, releasing more detainees on bond, rather than holding them in detention for years, saves

4

U.S. taxpayers hundreds of millions of dollars. Nexus has grown to over 200 employees and now maintains regional offices across the country.

19. While still employed at Nexus, Defendants David Briggman, Richard Nagel, Tania Cortes, Andrew Jones and Michael Kiser were discovered plotting to steal Nexus' confidential and proprietary information, such as underwriting processes and vendor contacts, in order to establish a competing enterprise.

20. Defendant Nagel, while purportedly at Nexus in a senior role as Director of Government Affairs, formed and operated Dang-Nagel using Nexus' time, equipment and resources. Upon information and belief, Dang-Nagel was used as a business front by Defendants to conduct their unlawful operations.

21. Concurrently, an extensive smear campaign was launched against Nexus and its senior executives, including Plaintiff Erik Schneider, by Defendant David Briggman. Briggman planned and organized, in concert with the co-defendants, an avalanche of false and defamatory statements about Nexus and its senior executives over social media, the local press and this Court. The publication of falsehoods is intended to injure Nexus in its trade and business, particularly the company's vital relationship to bondsmen and bonding issuing companies. These relationships have taken a great deal of time and effort to develop. Disparaging remarks about Nexus' trustworthiness and financial condition, though untrue, have the potential to unravel these relationships to the great detriment of Nexus and to the benefit of Defendants. As shown, *infra.*, Defendants' attacks on Nexus and Erik Schneider are defamatory both *per se* and *per quod*. The personal attacks on Schneider were made simply because he attempted to staunch the flow of vitriol from Defendants.

5

22. Following numerous social media posts in which Briggman falsely asserted that Nexus was involved in various criminal activities, he and his wife, Defendant Lynn C. Hooper Briggman, acted on the mistaken theory that a false statement contained in a judicial filing, no matter how immaterial it may be to the subject of the filing, cannot constitute defamation under the law. Briggman filed a complaint in this Court against Nexus and Schneider for malicious prosecution and repeated the defamatory statements regarding Nexus' operations in its introductory paragraphs. Lynn C. Hooper Briggman then advised local media outlets that they could not be held liable for defamation if they simply report on the statements of Briggman's complaint. And, local media did, in fact, re-publish Briggman's false and spurious accusations, even though they are immaterial to his claims for malicious prosecution. But Briggman did not actually file the complaint before publication in the local media, and as of this date has elected not to the serve the complaint on Nexus and Schneider.

23. Briggman has a long and sordid history of using frivolous litigation and defamatory statements to harass and intimidate others in his community to whom he owes money or is otherwise in disagreement.

24. Having found what they believe is a "judicial" loophole in the law of defamation, Briggman and his co-Defendants have continued to defame and libel Nexus and its senior executives in court filings. Most recently, Defendant Tania Cortes filed three, specious Petitions for protective orders against Erik Schneider and two other officers of Nexus, Mike Donovan and Richard Moore. Although the Petitions were properly and summarily dismissed, they contain false and highly-offensive comments about Nexus and attribute criminal histories to Nexus executives that are untrue yet extremely damaging to Nexus' business relationships.

6

53

25. The same tactic is used in the highly offensive and defamatory statements contained in court filings made by Defendant Tania Cortes in which she appealed her repeated denials of unemployment benefits. Cortes used the filing to make false and defamatory allegations against Nexus that were designed to damage Nexus in its business relationships. The defamatory allegations were rejected by the Virginia Employment Commission as invalid and not relevant.

26. Defendants have engaged, and conspired to engage, in a pattern of behavior and a course of conduct that is both violative of their employment agreements and, in many cases, illegal. Further, Defendants Shiplett and Kiser engaged in a check forgery scheme by illegally creating checks drawn on a Nexus bank account (through the use of an internet-based, check-design program) and then attempting to negotiate the forged checks, totaling more than $1,000, to the financial detriment of Nexus. Shiplett and Kiser colluded and conspired with the other defendants in a scheme to conceal their culpability for ongoing illegal and unlawful activities. Such activities (mail, wire and bank fraud) constitute a pattern of racketeering on the part of the defendants. Clearly, the Defendants will stop at nothing to damage Nexus in its business and reputation in order to further their own financial gain.

27. The concerted disparagement and defamation of Nexus and its senior staff is intended to damage Nexus' relationship with bonding companies, bondsmen, vendors and current employees of the company. The Defendants now admit to being in open competition with Nexus. On August 12, 2017, David Briggman posted the following on social media: "No wonder why Nexus does this, we're bonding our first five on Monday." (#ebonds, #nogpsneeded, #venturecapitalworking).

<u>COUNT I</u>
**(Theft of Trade Secrets - Va. Code § 59.1-336 - Nagel, Briggman, Jones and Kiser)**

28. The allegations of paragraphs 1 through 27 are incorporated herein by reference.

7

29.  As trusted employees of Nexus, Defendants Nagel, David Briggman, Tania Cortes, Andrew Jones and Michael Kiser were routinely provided access to confidential information about the business operations and affairs of the company.  Such confidential information included, but was not limited to, customer lists, pricing information, bonding requirements, vendor lists, and other compilations of confidential information, methods and processes that derive independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

30.  The confidential information constitutes a "trade secret," as that term is defined in Va. Code § 59.1-336, as it was subject to efforts by Nexus were reasonable under the circumstances to maintain its secrecy.

31.  Defendant Nagel was a senior employee of Nexus and had a fiduciary obligation to the company to act in good faith. Contrary to that obligation, while still employed full-time at Nexus, and in clear violation of both his contract and the company's written corporate policy, Nagel formed and operated Dang-Nagel at Nexus' offices, on Nexus' time, and using Nexus' computers and equipment.

32.  Defendants Nagel, Briggman, Cortes, Jones and Kiser misappropriated Nexus' trade secrets and used such information to eventually compete with Nexus without the express or implied consent of Nexus.

33.  Defendants Nagel, Briggman, Cortes, Jones and Kiser acquired Nexus' trade secrets through the following improper means: (i) theft, (ii) misrepresentation, (iii) use of a computer and computer network without authority, and (iv) breach of a duty to maintain secrecy.

8

WHEREFORE, Plaintiff Nexus demands judgment against Defendants, as follows:

(i)   Compensatory damages in an amount not less than $700,000;

(ii)   Punitive damages in an amount to be determined at trial;

(iii) Attorney's fees as permitted under Va. Code § 59.1-336, *et seq.*;

(iv) An accounting to determine Defendants' unlawful profits, and disgorgement of all such profits;

(v)   Preliminary and permanent injunctive relief barring Defendants' use of Plaintiff's Trade Secrets; and,

(vi) Such other relief as the Court deems appropriate.

### COUNT II
**(Theft of Trade Secrets - Va. Code § 59.1-336 - Dang-Nagel Associates, LLC)**

34.   The allegations of paragraphs 1 through 33 are incorporated herein by reference.

35.   Defendant Dang-Nagel acquired trade secrets belonging to Nexus through improper means.  A principal of Dang-Nagel, Defendant Richard Nagel, misappropriated confidential information included, but was not limited to, customer lists, pricing information, bonding requirements, vendor lists, and other compilations of confidential information, methods and processes that derive independent economic value, actual or potential, from not being generally known, and not being readily ascertainable by proper means, to other persons who can obtain economic value from its disclosure or use.

36.   The confidential information constitutes a "trade secret," as that term is defined in Va. Code § 59.1-336, as it was subject to efforts by Nexus were reasonable under the circumstances to maintain its secrecy.

37. Dang-Nagel knew or had reason to know that the trade secrets were acquired by improper means: (i) theft, (ii) misrepresentation, (iii) use of a computer and computer network without authority, and (iv) breach of a duty to maintain secrecy.

WHEREFORE, Plaintiff Nexus demands judgment against Defendants, as follows:

(i)  Compensatory damages in an amount not less than $700,000;

(ii)  Punitive damages in an amount to be determined at trial;

(iii) Attorney's fees as permitted under Va. Code § 59.1-336, *et seq.*;

(iv) An accounting to determine Defendants' unlawful profits, and disgorgement of all such profits;

(v)  Preliminary and permanent injunctive relief barring Defendants' use of Plaintiff's Trade Secrets; and,

(vi) Such other relief as the Court deems appropriate.

### COUNT III
### (Breach of Contract - David Briggman)

38. The allegations of paragraphs 1 through 37 are incorporated herein by reference.

39. On or about September 18, 2017, Defendant David Briggman entered into an employment agreement with Nexus (the "Agreement"). By its express terms the Agreement provides, in pertinent parts:

8. **Confidentiality of Proprietary Information.** During and after the term of this employment, Employee shall not reveal confidential information, or trade secrets or Proprietary Information (as defined herein), to any person, firm, corporation or entity. Should Employee reveal or threaten to reveal this information, or in the event NEXUS has reasonable basis to believe that Employee has revealed or may reveal Proprietary Information, then NEXUS shall be entitled to an injunction restraining the Employee from disclosing same, or from rendering any services to any entity to whom said information has been or is threatened to be disclosed. The right to secure an injunction is not exclusive, and NEXUS may pursue any other remedies against the Employee for a breach or threatened breach of this condition, including but not limited to the recovery of damages from the Employee.

10

25.  The same tactic is used in the highly offensive and defamatory statements contained in court filings made by Defendant Tania Cortes in which she appealed her repeated denials of unemployment benefits. Cortes used the filing to make false and defamatory allegations against Nexus that were designed to damage Nexus in its business relationships. The defamatory allegations were rejected by the Virginia Employment Commission as invalid and not relevant.

26.  Defendants have engaged, and conspired to engage, in a pattern of behavior and a course of conduct that is both violative of their employment agreements and, in many cases, illegal.  Further, Defendants Shiplett and Kiser engaged in a check forgery scheme by illegally creating checks drawn on a Nexus bank account (through the use of an internet-based, check-design program) and then attempting to negotiate the forged checks, totaling more than $1,000, to the financial detriment of Nexus. Shiplett and Kiser colluded and conspired with the other defendants in a scheme to conceal their culpability for ongoing illegal and unlawful activities. Such activities (mail, wire and bank fraud) constitute a pattern of racketeering on the part of the defendants.  Clearly, the Defendants will stop at nothing to damage Nexus in its business and reputation in order to further their own financial gain.

27.  The concerted disparagement and defamation of Nexus and its senior staff is intended to damage Nexus' relationship with bonding companies, bondsmen, vendors and current employees of the company.  The Defendants now admit to being in open competition with Nexus. On August 12, 2017, David Briggman posted the following on social media: "No wonder why Nexus does this, we're bonding our first five on Monday." (#ebonds, #nogpsneeded, #venturecapitalworking).

### COUNT I
**(Theft of Trade Secrets - Va. Code § 59.1-336 - Nagel, Briggman, Jones and Kiser)**

28.  The allegations of paragraphs 1 through 27 are incorporated herein by reference.

7

employment relationships with Nexus in breach of his express contractual obligations to Nexus.

42.  Defendant Briggman, following the term of his employment at Nexus, and within the prohibited period of five years, Briggman engaged in competition with Nexus by services or selling products similar to those services performed by Nexus.

WHEREFORE, Plaintiff Nexus demands judgment against Defendant Briggman, as follows:

(i)   Compensatory damages in an amount not less than $700,000;

(ii)  Punitive damages in an amount to be determined at trial;

(iii) Attorney's fees;

(iv) An accounting to determine unlawful profits, and disgorgement of all such profits;

(v)  Preliminary and permanent injunctive relief barring Defendant's use of Plaintiff's confidential information, solicitation of Plaintiff's employees and competition with Plaintiff's business activities; and,

(vi) Such other relief as the Court deems appropriate.

## COUNT IV
### (Breach of Contract - Richard Nagel)

43.  The allegations of paragraphs 1 through 42 are incorporated herein by reference.

44.  On or about April 6, 2017, Defendant Nagel entered into an employment agreement with Nexus (the "Agreement"). By its express terms the Agreement provides, in pertinent parts:

**8. Confidentiality of Proprietary Information.** During and after the term of this employment, Employee shall not reveal confidential information, or trade secrets or Proprietary Information (as defined herein), to any person, firm, corporation or entity. Should Employee reveal or threaten to reveal this information, or in the event NEXUS has reasonable basis to believe that Employee has revealed or may reveal Proprietary Information, then NEXUS shall be entitled to an injunction restraining the Employee from disclosing same, or from rendering any services to any entity to whom

12

59

said information has been or is threatened to be disclosed. The right to secure an injunction is not exclusive, and NEXUS may pursue any other remedies against the Employee for a breach or threatened breach of this condition, including but not limited to the recovery of damages from the Employee.

11. **Non-Solicitation of Employees.** Employee acknowledges and agrees that NEXUS employees are of great value to NEXUS and that NEXUS invests substantial time and expense in locating, recruiting, training and retaining its employees. During Employee's employment with NEXUS, and for a period of five years following termination of employment with NEXUS for whatever reason, Employee shall not, directly or indirectly, have any contact or communication with any employee of NEXUS, regardless of whether the contact or communication is initiated by the other employee, for the purpose of (i) soliciting the services of any employee of NEXUS for the benefit of anyone other than NEXUS, or (ii) inducing or encouraging any employee of NEXUS to terminate his or her employment with NEXUS. If, during Employee's employment with NEXUS, Employee is approached or contacted by any employee, former employee, or independent contractor of NEXUS soliciting the services of Employee or inducing or encouraging Employee to terminate employment with NEXUS, Employee shall notify NEXUS immediately in writing.

12. **Non-Competition.** In the course of Employee's employment with NEXUS, Employee will develop in-depth knowledge of the assets, business, employees, finances, operations, services and products of NEXUS (collectively, "Proprietary Information"). During Employee's employment with NEXUS, and for a period of five years following the termination of employment with NEXUS for whatever reason, Employee shall not, directly or indirectly, engage or participate in any way, whether as an employee, partner, owner, agent, consultant, independent contractor, stockholder, officer, director or other representative, in any business anywhere within the United States that performs any services or sells any products similar to those services performed by or products sold by NEXUS. Employee acknowledges that Employee has represented to NEXUS that Employee's education and experience enable Employee to obtain employment in many different areas of endeavor and to work for different types of employers, and, as a result, it will not be necessary for Employee to violate the provisions of this section to remain economically viable.

45. During the period of his employment, and thereafter, Defendant Nagel

willfully breached each of the aforementioned provisions. Defendant Nagel

misappropriated and disclosed confidential information and/or trade secrets of Nexus in

breach of his express contractual obligations to Nexus.

13

46. Defendant Nagel, following the term of his employment at Nexus, communicated with Nexus employees and solicited Nexus employees to terminate their employment relationships with Nexus in breach of his express contractual obligations to Nexus.

47. Defendant Nagel, following the term of his employment at Nexus, and within the prohibited period of five years, Nagel engaged in competition with Nexus by services or selling products similar to those services performed by Nexus.

WHEREFORE, Plaintiff Nexus demands judgment against Defendant Nagel, as follows:

(i)   Compensatory damages in an amount not less than $700,000;

(ii)  Punitive damages in an amount to be determined at trial;

(iii) Attorney's fees;

(iv) An accounting to determine unlawful profits, and disgorgement of all such profits;

(v)  Preliminary and permanent injunctive relief barring Defendant's use of Plaintiff's confidential information, solicitation of Plaintiff's employees and competition with Plaintiff's business activities; and,

(vi) Such other relief as the Court deems appropriate.

## COUNT V
### (Breach of Contract - Michael Kiser)

48. The allegations of paragraphs 1 through 47 are incorporated herein by reference.

49. On or about September 12, 2016, Defendant Nagel entered into an employment agreement with Nexus (the "Agreement"). By its express terms the Agreement provides, in pertinent parts:

8. **Confidentiality of Proprietary Information.** During and after the term of this employment, Employee shall not reveal confidential information, or trade secrets or Proprietary Information (as defined herein), to any person, firm, corporation or

14

61

entity. Should Employee reveal or threaten to reveal this information, or in the event NEXUS has reasonable basis to believe that Employee has revealed or may reveal Proprietary Information, then NEXUS shall be entitled to an injunction restraining the Employee from disclosing same, or from rendering any services to any entity to whom said information has been or is threatened to be disclosed. The right to secure an injunction is not exclusive, and NEXUS may pursue any other remedies against the Employee for a breach or threatened breach of this condition, including but not limited to the recovery of damages from the Employee.

11. **Non-Solicitation of Employees.** Employee acknowledges and agrees that NEXUS employees are of great value to NEXUS and that NEXUS invests substantial time and expense in locating, recruiting, training and retaining its employees. During Employee's employment with NEXUS, and for a period of five years following termination of employment with NEXUS for whatever reason, Employee shall not, directly or indirectly, have any contact or communication with any employee of NEXUS, regardless of whether the contact or communication is initiated by the other employee, for the purpose of (i) soliciting the services of any employee of NEXUS for the benefit of anyone other than NEXUS, or (ii) inducing or encouraging any employee of NEXUS to terminate his or her employment with NEXUS. If, during Employee's employment with NEXUS, Employee is approached or contacted by any employee, former employee, or independent contractor of NEXUS soliciting the services of Employee or inducing or encouraging Employee to terminate employment with NEXUS, Employee shall notify NEXUS immediately in writing.

12. **Non-Competition.** In the course of Employee's employment with NEXUS, Employee will develop in-depth knowledge of the assets, business, employees, finances, operations, services and products of NEXUS (collectively, "Proprietary Information"). During Employee's employment with NEXUS, and for a period of five years following the termination of employment with NEXUS for whatever reason, Employee shall not, directly or indirectly, engage or participate in any way, whether as an employee, partner, owner, agent, consultant, independent contractor, stockholder, officer, director or other representative, in any business anywhere within the United States that performs any services or sells any products similar to those services performed by or products sold by NEXUS. Employee acknowledges that Employee has represented to NEXUS that Employee's education and experience enable Employee to obtain employment in many different areas of endeavor and to work for different types of employers, and, as a result, it will not be necessary for Employee to violate the provisions of this section to remain economically viable.

50. During the period of his employment, and thereafter, Defendant Kiser willfully

breached each of the aforementioned provisions. Defendant Kiser misappropriated and

15

disclosed confidential information and/or trade secrets of Nexus in breach of his express contractual obligations to Nexus.

51.  Defendant Kiser, following the term of his employment at Nexus, communicated with Nexus employees and solicited Nexus employees to terminate their employment relationships with Nexus in breach of his express contractual obligations to Nexus.

52.  Defendant Kiser, following the term of his employment at Nexus, and within the prohibited period of five years, Kiser engaged in competition with Nexus by services or selling products similar to those services performed by Nexus.

WHEREFORE, Plaintiff Nexus demands judgment against Defendant Kiser, as follows:

(i)   Compensatory damages in an amount not less than $700,000;

(ii)  Punitive damages in an amount to be determined at trial;

(iii) Attorney's fees;

(iv) An accounting to determine unlawful profits, and disgorgement of all such profits;

(v)  Preliminary and permanent injunctive relief barring Defendant's use of Plaintiff's confidential information, solicitation of Plaintiff's employees and competition with Plaintiff's business activities; and,

(vi) Such other relief as the Court deems appropriate.

## COUNT VI
### (Breach of Contract - David Quintana)

53.  The allegations of paragraphs 1 through 52 are incorporated herein by reference.

54.  On or about June 15, 2016, Defendant Quintana entered into an employment agreement with Nexus (the "Agreement"). By its express terms the Agreement provides, in pertinent parts:

16

8. **Confidentiality of Proprietary Information.** During and after the term of this employment, Employee shall not reveal confidential information, or trade secrets or Proprietary Information (as defined herein), to any person, firm, corporation or entity. Should Employee reveal or threaten to reveal this information, or in the event NEXUS has reasonable basis to believe that Employee has revealed or may reveal Proprietary Information, then NEXUS shall be entitled to an injunction restraining the Employee from disclosing same, or from rendering any services to any entity to whom said information has been or is threatened to be disclosed. The right to secure an injunction is not exclusive, and NEXUS may pursue any other remedies against the Employee for a breach or threatened breach of this condition, including but not limited to the recovery of damages from the Employee.

11. **Non-Solicitation of Employees.** Employee acknowledges and agrees that NEXUS employees are of great value to NEXUS and that NEXUS invests substantial time and expense in locating, recruiting, training and retaining its employees. During Employee's employment with NEXUS, and for a period of five years following termination of employment with NEXUS for whatever reason, Employee shall not, directly or indirectly, have any contact or communication with any employee of NEXUS, regardless of whether the contact or communication is initiated by the other employee, for the purpose of (i) soliciting the services of any employee of NEXUS for the benefit of anyone other than NEXUS, or (ii) inducing or encouraging any employee of NEXUS to terminate his or her employment with NEXUS. If, during Employee's employment with NEXUS, Employee is approached or contacted by any employee, former employee, or independent contractor of NEXUS soliciting the services of Employee or inducing or encouraging Employee to terminate employment with NEXUS, Employee shall notify NEXUS immediately in writing.

12. **Non-Competition.** In the course of Employee's employment with NEXUS, Employee will develop in-depth knowledge of the assets, business, employees, finances, operations, services and products of NEXUS (collectively, "Proprietary Information"). During Employee's employment with NEXUS, and for a period of five years following the termination of employment with NEXUS for whatever reason, Employee shall not, directly or indirectly, engage or participate in any way, whether as an employee, partner, owner, agent, consultant, independent contractor, stockholder, officer, director or other representative, in any business anywhere within the United States that performs any services or sells any products similar to those services performed by or products sold by NEXUS. Employee acknowledges that Employee has represented to NEXUS that Employee's education and experience enable Employee to obtain employment in many different areas of endeavor and to work for different types of employers, and, as a result, it will not be necessary for Employee to violate the provisions of this section to remain economically viable.

55. During the period of his employment, and thereafter, Defendant Quintana

willfully breached each of the aforementioned provisions. Defendant Quintana

misappropriated and disclosed confidential information and/or trade secrets of Nexus in breach of his express contractual obligations to Nexus.

56. Defendant Quintana, following the term of his employment at Nexus, communicated with Nexus employees and solicited Nexus employees to terminate their employment relationships with Nexus in breach of his express contractual obligations to Nexus.

57. Defendant Quintana, following the term of his employment at Nexus, and within the prohibited period of five years, Quintana engaged in competition with Nexus by services or selling products similar to those services performed by Nexus.

WHEREFORE, Plaintiff Nexus demands judgment against Defendant Quintana, as follows:

(i)   Compensatory damages in an amount not less than $700,000;

(ii)  Punitive damages in an amount to be determined at trial;

(iii) Attorney's fees;

(iv) An accounting to determine unlawful profits, and disgorgement of all such profits;

(v)  Preliminary and permanent injunctive relief barring Defendant's use of Plaintiff's confidential information, solicitation of Plaintiff's employees and competition with Plaintiff's business activities; and,

(vi) Such other relief as the Court deems appropriate.

## COUNT VII
### (Breach of Contract - Tania Cortes)

58. The allegations of paragraphs 1 through 57 are incorporated herein by reference.

18

59. On or about February 23, 2016, Defendant Cortes entered into an employment agreement with Nexus (the "Agreement"). By its express terms the Agreement provides, in pertinent parts:

8. **Confidentiality of Proprietary Information.** During and after the term of this employment, Employee shall not reveal confidential information, or trade secrets or Proprietary Information (as defined herein), to any person, firm, corporation or entity. Should Employee reveal or threaten to reveal this information, or in the event NEXUS has reasonable basis to believe that Employee has revealed or may reveal Proprietary Information, then NEXUS shall be entitled to an injunction restraining the Employee from disclosing same, or from rendering any services to any entity to whom said information has been or is threatened to be disclosed. The right to secure an injunction is not exclusive, and NEXUS may pursue any other remedies against the Employee for a breach or threatened breach of this condition, including but not limited to the recovery of damages from the Employee.

11. **Non-Solicitation of Employees.** Employee acknowledges and agrees that NEXUS employees are of great value to NEXUS and that NEXUS invests substantial time and expense in locating, recruiting, training and retaining its employees. During Employee's employment with NEXUS, and for a period of five years following termination of employment with NEXUS for whatever reason, Employee shall not, directly or indirectly, have any contact or communication with any employee of NEXUS, regardless of whether the contact or communication is initiated by the other employee, for the purpose of (i) soliciting the services of any employee of NEXUS for the benefit of anyone other than NEXUS, or (ii) inducing or encouraging any employee of NEXUS to terminate his or her employment with NEXUS. If, during Employee's employment with NEXUS, Employee is approached or contacted by any employee, former employee, or independent contractor of NEXUS soliciting the services of Employee or inducing or encouraging Employee to terminate employment with NEXUS, Employee shall notify NEXUS immediately in writing.

12. **Non-Competition.** In the course of Employee's employment with NEXUS, Employee will develop in-depth knowledge of the assets, business, employees, finances, operations, services and products of NEXUS (collectively, "Proprietary Information"). During Employee's employment with NEXUS, and for a period of five years following the termination of employment with NEXUS for whatever reason, Employee shall not, directly or indirectly, engage or participate in any way, whether as an employee, partner, owner, agent, consultant, independent contractor, stockholder, officer, director or other representative, in any business anywhere within the United States that performs any services or sells any products similar to those services performed by or products sold by NEXUS. Employee acknowledges that Employee has represented to NEXUS that Employee's education and experience enable Employee to obtain employment in many different areas of endeavor and to work for different types of employers, and, as a result, it will not be

necessary for Employee to violate the provisions of this section to remain economically viable.

60. During the period of her employment, and thereafter, Defendant Cortes willfully breached each of the aforementioned provisions. Defendant Cortes misappropriated and disclosed confidential information and/or trade secrets of Nexus in breach of her express contractual obligations to Nexus.

61. Defendant Cortes, following the term of her employment at Nexus, communicated with Nexus employees and solicited Nexus employees to terminate their employment relationships with Nexus in breach of her express contractual obligations to Nexus.

62. Defendant Cortes, following the term of her employment at Nexus, and within the prohibited period of five years, Cortes engaged in competition with Nexus by services or selling products similar to those services performed by Nexus.

WHEREFORE, Plaintiff Nexus demands judgment against Defendant Cortes, as follows:

(i)   Compensatory damages in an amount not less than $700,000;

(ii)  Punitive damages in an amount to be determined at trial;

(iii) Attorney's fees;

(iv) An accounting to determine unlawful profits, and disgorgement of all such profits;

(v)  Preliminary and permanent injunctive relief barring Defendant's use of Plaintiff's confidential information, solicitation of Plaintiff's employees and competition with Plaintiff's business activities; and,

(vi) Such other relief as the Court deems appropriate.

## COUNT VIII
### (Breach of Contract - Andrew Jones)

63.  The allegations of paragraphs 1 through 62 are incorporated herein by reference.

64.  On or about March 13, 2015, Defendant Jones entered into an employment agreement with Nexus (the "Agreement"). By its express terms the Agreement provides, in pertinent parts:

8. **Confidentiality of Proprietary Information.** During and after the term of this employment, Employee shall not reveal confidential information, or trade secrets or Proprietary Information (as defined herein), to any person, firm, corporation or entity. Should Employee reveal or threaten to reveal this information, or in the event NEXUS has reasonable basis to believe that Employee has revealed or may reveal Proprietary Information, then NEXUS shall be entitled to an injunction restraining the Employee from disclosing same, or from rendering any services to any entity to whom said information has been or is threatened to be disclosed.  The right to secure an injunction is not exclusive, and NEXUS may pursue any other remedies against the Employee for a breach or threatened breach of this condition, including but not limited to the recovery of damages from the Employee.

11. **Non-Solicitation of Employees.**  Employee acknowledges and agrees that NEXUS employees are of great value to NEXUS and that NEXUS invests substantial time and expense in locating, recruiting, training and retaining its employees. During Employee's employment with NEXUS, and for a period of five years following termination of employment with NEXUS for whatever reason, Employee shall not, directly or indirectly, have any contact or communication with any employee of NEXUS, regardless of whether the contact or communication is initiated by the other employee, for the purpose of (i) soliciting the services of any employee of NEXUS for the benefit of anyone other than NEXUS, or (ii) inducing or encouraging any employee of NEXUS to terminate his or her employment with NEXUS.  If, during Employee's employment with NEXUS, Employee is approached or contacted by any employee, former employee, or independent contractor of NEXUS soliciting the services of Employee or inducing or encouraging Employee to terminate employment with NEXUS, Employee shall notify NEXUS immediately in writing.

12. **Non-Competition.**  In the course of Employee's employment with NEXUS, Employee will develop in-depth knowledge of the assets, business, employees, finances, operations, services and products of NEXUS (collectively, "Proprietary Information"). During Employee's employment with NEXUS, and for a period of five years following the termination of employment with NEXUS for whatever reason, Employee shall not, directly or indirectly, engage or participate in any way, whether as an employee, partner, owner, agent, consultant, independent contractor, stockholder, officer, director or other representative, in any business

21

anywhere within the United States that performs any services or sells any products similar to those services performed by or products sold by NEXUS. Employee acknowledges that Employee has represented to NEXUS that Employee's education and experience enable Employee to obtain employment in many different areas of endeavor and to work for different types of employers, and, as a result, it will not be necessary for Employee to violate the provisions of this section to remain economically viable.

65.  During the period of his employment, and thereafter, Defendant Jones willfully breached each of the aforementioned provisions.  Defendant Jones misappropriated and disclosed confidential information and/or trade secrets of Nexus in breach of his express contractual obligations to Nexus.

66.  Defendant Jones, following the term of his employment at Nexus, communicated with Nexus employees and solicited Nexus employees to terminate their employment relationships with Nexus in breach of his express contractual obligations to Nexus.

67.  Defendant Jones, following the term of his employment at Nexus, and within the prohibited period of five years, Jones engaged in competition with Nexus by services or selling products similar to those services performed by Nexus.

WHEREFORE, Plaintiff Nexus demands judgment against Defendant Jones, as follows:

(i)   Compensatory damages in an amount not less than $700,000;

(ii)  Punitive damages in an amount to be determined at trial;

(iii) Attorney's fees;

(iv) An accounting to determine unlawful profits, and disgorgement of all such profits;

(v)  Preliminary and permanent injunctive relief barring Defendant's use of Plaintiff's confidential information, solicitation of Plaintiff's employees and competition with Plaintiff's business activities; and,

(vi) Such other relief as the Court deems appropriate.

## COUNT IX
### (Breach of Contract - Andrea Ramirez Arroyo)

68. The allegations of paragraphs 1 through 67 are incorporated herein by reference.

69. Defendant Arroyo entered into an employment agreement with Nexus (the "Agreement"). By its express terms the Agreement provides, in pertinent parts:

8. **Confidentiality of Proprietary Information.** During and after the term of this employment, Employee shall not reveal confidential information, or trade secrets or Proprietary Information (as defined herein), to any person, firm, corporation or entity. Should Employee reveal or threaten to reveal this information, or in the event NEXUS has reasonable basis to believe that Employee has revealed or may reveal Proprietary Information, then NEXUS shall be entitled to an injunction restraining the Employee from disclosing same, or from rendering any services to any entity to whom said information has been or is threatened to be disclosed. The right to secure an injunction is not exclusive, and NEXUS may pursue any other remedies against the Employee for a breach or threatened breach of this condition, including but not limited to the recovery of damages from the Employee.

11. **Non-Solicitation of Employees.** Employee acknowledges and agrees that NEXUS employees are of great value to NEXUS and that NEXUS invests substantial time and expense in locating, recruiting, training and retaining its employees. During Employee's employment with NEXUS, and for a period of five years following termination of employment with NEXUS for whatever reason, Employee shall not, directly or indirectly, have any contact or communication with any employee of NEXUS, regardless of whether the contact or communication is initiated by the other employee, for the purpose of (i) soliciting the services of any employee of NEXUS for the benefit of anyone other than NEXUS, or (ii) inducing or encouraging any employee of NEXUS to terminate his or her employment with NEXUS. If, during Employee's employment with NEXUS, Employee is approached or contacted by any employee, former employee, or independent contractor of NEXUS soliciting the services of Employee or inducing or encouraging Employee to terminate employment with NEXUS, Employee shall notify NEXUS immediately in writing.

12. **Non-Competition.** In the course of Employee's employment with NEXUS, Employee will develop in-depth knowledge of the assets, business, employees, finances, operations, services and products of NEXUS (collectively, "Proprietary Information"). During Employee's employment with NEXUS, and for a period of five years following the termination of employment with NEXUS for whatever reason, Employee shall not, directly or indirectly, engage or participate in any way, whether as an employee, partner, owner, agent, consultant, independent contractor, stockholder, officer, director or other representative, in any business

23

anywhere within the United States that performs any services or sells any products similar to those services performed by or products sold by NEXUS. Employee acknowledges that Employee has represented to NEXUS that Employee's education and experience enable Employee to obtain employment in many different areas of endeavor and to work for different types of employers, and, as a result, it will not be necessary for Employee to violate the provisions of this section to remain economically viable.

70.  During the period of his employment, and thereafter, Defendant Arroyo willfully breached each of the aforementioned provisions. Defendant Arroyo misappropriated and disclosed confidential information and/or trade secrets of Nexus in breach of his express contractual obligations to Nexus.

71.  Defendant Arroyo, following the term of his employment at Nexus, communicated with Nexus employees and solicited Nexus employees to terminate their employment relationships with Nexus in breach of his express contractual obligations to Nexus.

72.  Defendant Arroyo, following the term of his employment at Nexus, and within the prohibited period of five years, Arroyo engaged in competition with Nexus by services or selling products similar to those services performed by Nexus.

WHEREFORE, Plaintiff Nexus demands judgment against Defendant Arroyo, as follows:

(i)   Compensatory damages in an amount not less than $700,000;

(ii)  Punitive damages in an amount to be determined at trial;

(iii) Attorney's fees;

(iv) An accounting to determine unlawful profits, and disgorgement of all such profits;

24

71

(v)  Preliminary and permanent injunctive relief barring Defendant's use of Plaintiff's confidential information, solicitation of Plaintiff's employees and competition with Plaintiff's business activities; and,

(vi)  Such other relief as the Court deems appropriate.

## COUNT X
### (Commercial Disparagement/Defamation)

73.  The allegations of paragraphs 1 through 72 are incorporated herein by reference.

74.  Defendants David Briggman and Lynn C. Hooper have repeatedly published false and defamatory statements about Nexus for the purpose of causing Nexus financial damage.

75.  On or about August 17, 2017, Defendants David Briggman filed a complaint in this court in which he repeats false and malicious statements, previously published on social media, about Nexus and its senior executives.

76.  Briggman stated in the complaint that he resigned from Nexus once "discovering his employer was committing numerous felonies against him and/or his coworkers including . . . wiretapping, blackmail, underreporting of income and income taxes to the federal and various state governments, allowing two felons who are disqualified under federal law from being Trustees of the company's 401k plan, widespread embezzlement from that 401k plan, and embezzlement of medical insurance premiums."

77.  The complaint containing these false and defamatory statements was provided to local media by defendants David Briggman and Lynn C. Hooper Briggman prior to its filing in this court.  The Briggman's encouraged local media outlets to publish the false and defamatory statements asserting no liability could ensue for the republication of statements contained in a judicial document.  The false and malicious statements were published in local media before the filing of the complaint and, to date, the complaint has not been served.

78. On or about August 18, 2017, Briggman published a public comment that contains a false statement that Nexus "underreported their employee's income, embezzled from their 401k plan, and their medical insurance premiums."

79. The same false statements were published previously. On July 17, 2017, Briggman published a statement on social media to the effect that "law enforcement" was preparing to "make their move" against Nexus.

80. On June 11, 2017, Briggman published a statement on social media that Nexus is "committing multiple felonies."

81. Briggman published a statement on social media accusing Plaintiff Schneider of "lying to the Deputy hearing officer of the Virginia Employment Commission." The statement continues by falsely accusing Schneider of committing a crime by planting wiretaps throughout its offices.

82. On June 10, 2017, Briggman published on social media comments in which he refers to Nexus as a "continuing criminal enterprise."

83  On May 9, 2017, Briggman published a statement that Nexus steals from "both companies and government."

84. Defendant David Briggman has published false statements to the effect that Nexus cheats its clients and otherwise acts in an unethical manner in its business operations.  Briggman published a cartoon on social media of a client of Nexus in financial distress - in a hospital bed on life support. The senior executives of Nexus stand by discussing how they could further exploit the client financially.

85. Briggman published a caricature of Nexus' senior executives (Mike Donovan and Richard Moore) ordering a female employee to jump off a roof over the caption: "Truth Hurts."

86.  The false statements of fact have harmed Nexus in its business and reputation and caused Nexus to suffer direct financial loss.

87.  The above-described publications were not privileged as they were motivated by malice, hatred and ill will towards the plaintiffs and to desire to injure them in their business and reputation.

WHEREFORE, Plaintiff Nexus demands judgment against Defendants, as follows:

(i)   Compensatory damages in an amount not less than $700,000;

(ii)  Punitive damages in an amount to be determined at trial;

(iii) Attorney's fees;

(iv) Preliminary and permanent injunctive relief barring Defendant's disparagement and defamation of Plaintiff Nexus; and,

(vi) Such other relief as the Court deems appropriate.

## COUNT XI
### (Defamation *per se*)

88.  The allegations of paragraphs 1 through 87 are incorporated herein by reference.

89.  Defendants David Briggman and Lynn C. Hooper Briggman have repeatedly published defamatory statements regarding the commission of crimes involving moral turpitude by Plaintiff Nexus and, individually, by Plaintiff Schneider.

90.  On or about August 17, 2017, Defendant David Briggman filed a complaint in this court in which he repeats false and malicious statements, previously published on social media, about Nexus and its senior executives, including Schneider.

91.  The complaint containing these false and defamatory statements was provided to local media by defendants David Briggman and Lynn C. Hooper Briggman prior to its filing in this court. The Briggman's encouraged local media outlets to publish the false and defamatory

statements asserting no liability could ensue for the republication of statements contained in a judicial document. The false and malicious statements were published in local media before the filing of the complaint and, to date, the complaint has not been served.

92. Briggman published a statement on social media accusing Plaintiff Schneider of "lying to the Deputy hearing officer of the Virginia Employment Commission." The statement continues by falsely accusing Schneider of committing a crime by planting wiretaps throughout its offices.

93. The false statements of fact have harmed Schneider's reputation in the community and deterred other people from associating with Schneider.

94. The false statements constitute defamation *per se* as they relate to the commission of various crimes involving moral turpitude. The publications clearly expose Schneider to hatred, contempt, ridicule and obloquy.

95. As a proximate result of the above-described publications, Schneider has suffered loss of reputation.

96. The above-described publications were not privileged as they were motivated by malice, hatred and ill will towards the plaintiffs and to desire to injure them in their business and reputation.

WHEREFORE, Plaintiffs demand judgment against Defendants, as follows:

(i)   Compensatory damages in an amount not less than $700,000;

(ii)  Punitive damages in an amount to be determined at trial;

(iii) Attorney's fees;

(iv) Preliminary and permanent injunctive relief barring Defendant's disparagement and defamation of Plaintiffs; and,

(vi) Such other relief as the Court deems appropriate.

<u>**COUNT XII**</u>
**(Defamation)**

97.  The allegations of paragraphs 1 through 96 are incorporated herein by reference.

98.  Briggman published a cartoon on social media entitled "Only Erik" clearly inferring that plaintiff Erik Schneider was undergoing an audit and concluding: "I wanna show everyone my 'Man-Gina' today!

99.  Briggman published a photograph of Erik Schneider in which his face is not shown, but where it is obvious to anyone familiar with him that it is, in fact, Erik Schneider, under the caption: "This piece of crap is 400 points of perjury."

100.  The false statements of fact have harmed Schneider's reputation in the community and deters other people from associating Schneider.

101.  As a proximate result of the above-described publications, Schneider has suffered loss of reputation.

102.  The above-described publications were not privileged as they were motivated by malice, hatred and ill will towards the plaintiffs and to desire to injure them in their business and reputation.

WHEREFORE, Plaintiffs demand judgment against Defendants, as follows:

(i)   Compensatory damages in an amount not less than $700,000;

(ii)  Punitive damages in an amount to be determined at trial;

(iii) Attorney's fees;

(iv) Preliminary and permanent injunctive relief barring Defendant's disparagement and defamation of Plaintiffs; and,

(vi) Such other relief as the Court deems appropriate.

29

## COUNT XIII
### (Civil Conspiracy - Va. Code § 18.2-499, *et seq.*)

103. The allegations of paragraphs 1 through 102 are incorporated herein by reference.

104. Defendants in combination and through concerted action unlawfully and fraudulently misappropriated Nexus' Trade Secrets (as defined in Va. Code § 59.1-336), unlawfully competed with Nexus, unlawfully solicited Nexus employees, and engaged in a pattern of malicious and unlawful commercial disparagement against Nexus.

105. The purpose of Defendant's concerted activity was to willfully and maliciously injure Nexus in its trade and business in violation of the law.

106. As a direct and proximate result of the concerted activity, Nexus suffered direct losses of at least $ 700,000.

107. Defendants acted with a malicious intent to injure Nexus and/or acted with such reckless disregard to Nexus' rights and property as to constitute malice.

WHEREFORE, Plaintiffs demand judgment against Defendants, as follows:

(i)   Compensatory damages in an amount not less than $700,000;

(ii)   Punitive damages in an amount to be determined at trial;

(iii) A trebling of the damages awarded pursuant to Va. Code § 18.2-499, *et seq.*;

(iii) Attorney's fees; and,

(vi) Such other relief as the Court deems appropriate.

## COUNT XIV
### (Civil RICO § 1962(c))

108. The allegations of paragraphs 1 through 107 are incorporated herein by reference.

109. This Count is against Defendants David Briggman, Richard Nagel, Dang-Nagel, Tania Cortes, Andrew Jones, Michael Kiser, David Quintana and Tabatha Shiplett.

77

110. Dang-Nagel is an enterprise engaged in and whose activities affect interstate commerce. Defendants Briggman, Nagel, Cortes, Jones, Kiser, Quintana and Shiplett are employed by or associated with the enterprise.

111. Defendants Briggman, Nagel, Cortes, Jones, Kiser, Quintana and Shiplett agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiff. Specifically, Defendants Briggman, Nagel, Cortes, Jones, Kiser and Quintana organized and operated Dang-Nagel by engaging in honest services fraud (18 U.S.C. § 1346).

112. Pursuant to and in furtherance of their fraudulent scheme, Defendants committed multiple related acts of honest services fraud: (i) during the period of their employment, and on at least three discrete occasions, devoting substantial time and effort to the affairs of Dang-Nagel; (ii) during the period of their employment, and on at least three discrete occasions, using Nexus' equipment and resources to promote the affairs of Dang-Nagel; (iii) during the period of their employment, and on at least three discrete occasions, engaging in wire and mail fraud in order to further a campaign of commercial disparagement to the detriment of Nexus and for the benefit of Dang-Nagel.

113. The acts set forth above constitute a pattern of racketeering activity pursuant to 18 U.S.C. § 1961(5).

114. Defendants Briggman, Nagel, Cortes, Jones, Quintana and Kiser have directly and indirectly conducted and participated in the conduct of the enterprise's affairs through the pattern of racketeering and activity described above, in violation of 18 U.S.C. § 1962(c). In addition, Defendants Kiser and Shiplett committed at least two occasions in the past six (6) months,

31

related acts of check fraud and forgery. In forging and negotiating false checks, Defendants

engaged in multiple acts of mail and wire fraud in violation of 18 U.S.C. § 1344 and 1346.

115. As a direct and proximate result of the Count 1 Defendant(s)' racketeering activities

and violations of 18 U.S.C. § 1962(c), Plaintiff has been injured in its business and property in

an amount not less than $700,000.

WHEREFORE, Plaintiffs demand judgment against Defendants, as follows:

(i)   Compensatory damages in an amount not less than $700,000;

(ii)  Punitive damages in an amount to be determined at trial;

(iii) A trebling of the damages awarded;

(iii) Attorney's fees; and,

(vi)  Such other relief as the Court deems appropriate.

<div align="center">

**COUNT XV**
**(Civil RICO § 1962(b))**

</div>

116. The allegations of paragraphs 1 through 115 are incorporated herein by reference.

117. This Count is against all defendants.

118. Dang-Nagel is an enterprise engaged in and whose activities affect interstate

commerce.

119. Defendants acquired and maintained interests in and control of the enterprise

through a pattern of racketeering activity. Specifically, Defendants organized and acquired

Dang-Nagel by engaging in honest services fraud (18 U.S.C. § 1346).

120. The racketeering activity constitutes a pattern of racketeering activity pursuant to 18

U.S.C. § 1961(5).

121. Defendants have directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above, in violation of 18 U.S.C. § 1962(b).

122. As direct and proximate result of Defendants' racketeering activities and violations of 18 U.S.C. § 1962(b), Nexus has been injured in its business and property.

WHEREFORE, Plaintiffs demand judgment against Defendants, as follows:

(i)   Compensatory damages in an amount not less than $700,000;

(ii)  Punitive damages in an amount to be determined at trial;

(iii) A trebling of the damages awarded;

(iii) Attorney's fees; and,

(vi)  Such other relief as the Court deems appropriate.

## COUNT XVI
### (Civil RICO § 1962(d))

123. The allegations of paragraphs 1 through 122 are incorporated herein by reference.

124. This Count is against all Defendants.

125. As set forth above, Defendants agreed and conspired to violate 18 U.S.C. § 1962(b) and (c). Specifically to organize and operate Dang-Nagel by engaging in honest services fraud (18 U.S.C. § 1346) and in multiple acts of mail and wire fraud in violation of 18 U.S.C. § 1344 and 1346 (fraud on financial institution).

126. Defendants have intentionally conspired and agreed to directly and indirectly acquire or maintain interests in the enterprise through a pattern of racketeering activity, and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed to the commission of those acts to further the schemes described

<center>33</center>

above. That conduct constitutes a conspiracy to violate 18 U.S.C. § 1962(b) and (c), in violation of 18 U.S.C. § 1962(d).

127. As direct and proximate result of Defendants' conspiracy, the overt acts taken in furtherance of that conspiracy, and violations of 18 U.S.C. § 1962(d), Nexus has been injured in its business and property.

WHEREFORE, Plaintiffs demand judgment against Defendants, as follows:

(i)   Compensatory damages in an amount not less than $700,000;

(ii)  Punitive damages in an amount to be determined at trial;

(iii) A trebling of the damages awarded;

(iii) Attorney's fees; and,

(vi)  Such other relief as the Court deems appropriate.

### JURY DEMAND

A trial by jury of all legal issues is requested.

Respectfully submitted on this 29th day of September, 2017,

Mario B. Williams, VSB# 91955

NEXUS CARIDADES ATTORNEYS INC.
113 Mill Place Parkway, Suite 105A
Verona, VA 24482
Phone: 540-255-4365
Fax: 703-935-2453
Email: mwilliams@nexuscaridades.com
Counsel for Plaintiff

34

81

# Exhibit E

**VIRGINIA: IN THE CIRCUIT COURT OF ROCKINGHAM COUNTY**

|  |  |
|---|---|
| **NEXUS SERVICES, INC.,** | ) |
| | ) |
| Plaintiff, | ) Civil Case No. |
| | ) |
| | ) _CL18-1808_ |
| v. | ) |
| | ) |
| **LYNN BRIGGMAN** | ) |
| 7556 Mountain Valley Road | ) JURY DEMANDED |
| Keezletown, VA 22832 | ) |
| | ) |
| Defendant. | ) |

FILED IN THE CLERK'S OFFICE
ROCKINGHAM COUNTY, VA

MAY 1 7 2018

*Heather Reardon* DEPUTY CLERK

## COMPLAINT

Now Comes Plaintiff, Nexus Services, Inc. ("Nexus"), through

undersigned counsel, pursuant to all applicable rules and laws, and files this

Complaint alleging that the named Defendant is engaged in the defamation of

the Plaintiff causing severe reputational injury to its business interests. Plaintiff

alleges as follows:

## INTRODUCTION

Defendant is the wife of a disgruntled former Nexus employee who has

been embroiled in civil and administrative litigation with Nexus Services, Inc.

(Ex. 1). Because the baseless lawsuits, complaints, and allegations have been

found to lack merit, Defendant utilizes alternative means to injure the reputation

of Nexus. Most disturbingly, this includes the use of Rockingham County

resources to slander and defame Nexus with the intention to exclude the

corporation from participation in public events such as the City of Harrisonburg Annual Holiday Parade ("annual parade").

Knowing no boundaries, around November 28, 2017, the Defendant, a Rockingham County employee went out of her way to utilize county resources to defame and slander Nexus Services in a voicemail to a City of Harrisonburg official. (Ex. 2). Ironically so, the Defendant *knowingly* made false statements that Nexus is involved in a substantial amount of recent "illegal and unethical behavior in the community." Suspiciously, however, following Defendant's remarks Nexus was not initially announced as winner in annual parade. It was not until Nexus inquired through a freedom of information act request that it was announced as the top prize winner. Plaintiff now seeks damages and all relevant relief in connection with Defendant's consistent malicious defamation.

## JURISDICTION AND VENUE

1.

The Court's jurisdiction is based on § 17.1-513, *et seq.*, and § 8.01-328.1, *et seq.*, of the Code of Virginia.

2.

Venue is proper pursuant to § 8.01-262(4) of the Code of Virginia.

## PARTIES

### 3.

Plaintiff Nexus Services, Inc. ("Nexus"), is a Virginia corporation with its principal place of business located in Augusta County, Virginia. Nexus owns and operates Libre By Nexus, Inc., which is a provider of immigration bond securitization.

### 4.

Defendant Lynn Briggman ("Briggman") is a Virginia resident and Rockingham County employee.

## STATEMENT OF FACTS

### 5.

Defendant Lynn Briggman is a Rockingham County employee and married to a former Nexus employee.

### 6.

The City of Harrisonburg holds an annual Holiday Parade.

### 7.

At or around November 28, 2017, using a phone line belonging to Rockingham County, leaving a return phone number to Spotswood High School, Briggman placed a phone call to a City of Harrisonburg official and left a voicemail. (Ex. 2)

8.

Using County resources, in the voicemail Briggman identifies herself as a Rockingham County employee working at Spotswood High School. (Ex. 2).

9.

Using County resources, in the voicemail Briggman states that the purpose of the phone call is to express a concern about Nexus's participation in the City of Harrisonburg Annual Holiday Parade. (Ex. 2).

10.

Using County resources, in the voicemail Briggman maliciously accused Plaintiff of recent criminal conduct and has "concerns about a company Nexus Services…...that has been involved in a lot of illegal unethical behavior in the community lately." (Ex. 2).

11.

Nexus has never been found guilty of any corporate/white collar criminal behavior.

12.

Nexus has never been held liable for unethical behavior in the operation of its business.

13.

The City of Harrisonburg Annual Holiday Parade is a public event to which community attendance is optional. There is no indication in Briggman's voicemail that Briggman or her son were in any immediate danger nor required to attend the annual parade.

## COUNT I
## DEFAMATION PER SE/COMMERCIAL DISPARAGEMENT

14.

Plaintiff hereby reiterates and incorporates by reference the allegations contained in paragraphs 1 through 14, as if set forth fully herein.

15.

The Fourth Circuit Court of Appeals recognized that a corporation can be defamed per se and thus recover damages: "A corporation may be defamed per se by statements that "cast aspersion on its honesty, credit, efficiency or its prestige or standing in its field of business." Levine v. McLeskey, 881 F. Supp. 1030, 1048 (E.D. Va. 1995), aff'd in part, vacated in part, 164 F.3d 210 (4th Cir. 1998). Our sister Supreme Court of Texas agrees and had this to say about a corporation seeking defamation per se damages:

> In such cases, "our law presumes that statements that are defamatory per se injure the victim's reputation and entitle him to recover general damages, including damages for loss of reputation and mental anguish."[36] If false and disparaging statements injure a corporation's reputation, it can sue for

defamation per se just like flesh-and-blood individuals.

<u>Waste Mgmt. of Texas, Inc. v. Texas Disposal Sys. Landfill, Inc.</u>, 434 S.W.3d
142, 151 (Tex. 2014)

See also Restatement (Second) of Torts § 561 (1977); 53 C.J.S. Libel and Slander;

Injurious Falsehood § 60.

<div align="center">16.</div>

Using County resources, the Defendant left a voicemail to a City of

Harrisonburg official which specifically refers to Nexus Services.

<div align="center">17.</div>

Acting solely with malicious intent, the Defendant knowingly

communicated a false statement of fact that Nexus has been "involved in a lot of

illegal unethical behavior in the community lately." (Ex. 2).

<div align="center">18.</div>

This communication was made with *malice* to a government official as it

was not proffered to report a crime or misconduct but to malign Nexus Services

in order to orchestrate the exclusion of Nexus Services from the City of

Harrisonburg Annual Holiday Parade  and thereby injure Nexus business

interests and standing in the community.

<div align="center">19.</div>

The communication which falsely implicates a crime is *inherently*

defamatory.

## PRAYER FOR RELIEF

**WHEREFORE**, Nexus Services respectfully prays for the following relief:

1.  That this Court exercise jurisdiction over this case and grant a jury trial;

2.  That this Court decide, as a matter of law, all issues not required to be determined by a jury;

3.  That this Court award all permissible damages recoverable from the Defendant, including general, special, compensatory, punitive, and any other damages deemed appropriate, in an amount to be determined at trial;

4.  That this Court permit recovery of reasonable attorney's fees and costs in an amount to be determined by this honorable Court under applicable law; and,

5.  That this Court grant any additional relief that this Honorable Court deems appropriate under the circumstances.

Respectfully submitted on this ___ day of _____, 2018,

Mario B. Williams, VSB# 91955

NEXUS DERECHOS HUMANOS, INC.
44 Broad Street, NW, Suite 200
Atlanta, GA 30303
404-654-0288/703-935-2453 FAX
mwilliams@ndhlawyers.com
*Counsel for Plaintiff*

# Exhibit

# F

FILED IN THE CLERK'S OFFICE
ROCKINGHAM COUNTY, VA

JUN 2 9 2020

_____ DEPUTY CLERK

# VIRGINIA:  IN THE CIRCUIT COURT FOR ROCKINGHAM COUNTY

MICHEAL DONOVAN,                          )
                                          )
                          Plaintiff,      )
                                          )   Case No. CL20-2044
v.                                        )
                                          )
LYNN C. HOOPER BRIGGMAN                   )   JURY DEMANDED
7556 Mountain Valley Road                 )
Keezletown, VA  22832                     )
(Rockingham County)                       )
                          Defendant.      )
                                          )
_____)

## COMPLAINT

Plaintiff, MICHEAL DONOVAN ("Donovan"), for his Complaint against

defendant LYNN C. HOOPER BRIGGMAN ("Briggman"), alleges as follows:

## JURISDICTION AND VENUE

1.      The Court's jurisdiction is based on § 17.1-513, *et seq.*, and § 8.01-

328.1, *et seq.*, of the Code of Virginia.

2.      Venue is proper pursuant to § 8.01-262 of the Code of Virginia.

## PARTIES

3.      Plaintiff Micheal Donovan is a Virginia resident. Mr. Donovan is also

the President and CEO of Nexus Services, Inc., headquartered in Verona, Virginia.

4.      Defendant Lynn C. Hooper Briggman is a Virginia resident.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

5.      For many years, Defendant Lynn Briggman has conspired with her

husband, David Briggman, and others in a vicious campaign to harass, defame and stalk

Mr. Donovan.

6.      For example, Defendant Lynn Briggman and her co-conspirators believed that so long as a statement was contained in a judicial filing, then as a matter of law anyone who re-published that statement could not be liable for defamation regardless of whether the statement was a lie and regardless of whether the statement was entirely immaterial to the subject matter of the lawsuit.

7.      Acting on this belief, Defendant Lynn Briggman has conspired to have lawsuits filed against Plaintiff and/or his employer or business associates that contained defamatory statements, and then proceeded to reprint those statements on social media and/or to contact media outlets and share their sensational statements along with the legal opinion that they could not be sued for defamation if they reprinted the defamatory statements.

8.      Defendant Lynn Briggman and her co-conspirators persuaded media outlets to reprint their defamatory lies. Tellingly, the lawsuit that Defendant Lynn Briggman and her co-conspirators shared with these media outlets was never filed with the court until *after* the media already had run the stories, and was dismissed voluntarily *before it was ever served* on the defendants.

9.      Not content to merely defame Plaintiff, Defendant Lynn Briggman and her co-conspirators have engaged in a campaign to harass Plaintiff that has included stalking him and his family.

10.     Defendant Lynn Briggman's conduct has resulted in the issuance of temporary protective orders against one of her co-conspirators in favor of Plaintiff. The conduct, viewed in a vacuum, has never risen to the level of harm needed to progress to a permanent order, but viewed as a totality of conduct, it is clearly threatening, obscene, and dangerous conduct.

2

11.      Defendant Lynn Briggman and her co-conspirators have flouted the court protective orders in various ways. For example,

a.      They have taken photographs of Plaintiff's property from a street that runs precisely parallel to the street adjudged to be off-limits by a protective order;

b.      They have contacted parties in litigation with Plaintiff and/or his employer and have offered to act as process server and to personally serve Plaintiff with court documents free of charge, in order to avail themselves of the argument that by acting as a process server it was "legal" to violate the stay-away terms of a protective order;

c.      They have published personal attacks that allege criminal and morally reprehensible behavior which are untrue and very damaging to the public opinion of Plaintiff.  These posts include information meant to incite malice towards Plaintiff and place him in constant threat of imminent harm.  These postings are in proximity to other postings which publish Plaintiff's home address and the suggestion to the public that they should visit Plaintiff's home, placing Plaintiff in reasonable expectation of violence, injury and property damage.

d.      Defendant Lynn Briggman and her co-conspirators would participate in "GoToMeeting" meetings to facilitate the conspiracy against Plaintiff; the password to one such meeting was "beatNexus".

e.      Defendant Lynn Briggman personally sent an email to non-conspirators who also worked for the Rockingham County Schools that her husband left the employ of Plaintiff's company because it was engaged in numerous illegal activities as a result of which it was "under investigation by federal, state, and local law enforcement agencies."

f.      Defendant Lynn Briggman personally left a voicemail for non-conspirators that expressly accused Plaintiff and his company of "illegal and unethical" conduct.

3

g.      Defendant Lynn Briggman had her co-conspirators also have suggested that Plaintiff purchased his minor child from the boy's mother for illicit reasons.

12.     Acting on what she and her co-conspirators believe to be a "judicial loophole" in the law of defamation, Defendant Lynn Briggman and her co-conspirators have continued to defame and libel Plaintiff and his company in court filings. For example, one of her co-conspirators filed three court Petitions purportedly for the purpose of obtaining protective orders against Plaintiff, his partner, Richard Moore, and one of his close friends and business associates, Erik Schneider. In actuality, the Petitions merely served as what Defendant Lynn Briggman and her co-conspirators believed to be "legal cover" for the false and highly-offensive comments contained in the Petitions, including attributing criminal activities to Nexus executives that were untrue and which were intended to defame and harass Plaintiff and to injure his company's business relationships.

13.     The Petitions were summarily dismissed as they were entirely false and without basis in fact or merit in law, but they accomplished the conspirators' intended goal of harassment and defamation, and many of the attacks Defendant Lynn Briggman and her co-conspirators leveled against Plaintiff are defamatory *per se*.

14.     Defendant Lynn Briggman and her co-conspirators engaged in the same tactic in other court filings. For example, one of Defendant Lynn Briggman's co-conspirators repeatedly sought unemployment benefits from Plaintiff's company and her applications were repeatedly denied. Her appeal briefs from the denial of those benefits were rife with highly offensive and defamatory statements; the court filings were, again, used as "legal cover" for making false and defamatory accusations about Plaintiff and his company for the purpose of

4

defaming him, harassing him and injuring the company that he had devoted so much time, effort and financial resources to found and grow.

## The Law of Conspiracy

15.     Under Virginia law, a conspiracy is an agreement between two or more persons by some concerted action to commit an offense. *Falden v. Com.*, 167 Va. 542, 544 (1937). The agreement is the essence of the offense and proof of an overt act in furtherance of the conspiracy is not necessary; Virginia law does not require proof of an overt act in furtherance of the conspiracy and proof of the agreement may be circumstantial evidence. *Wright v. Com.*, 224 Va. 502, 505 (1982); *Smith v. Com.*, 19 Va. App. 594, 453 S.E.2d 572 (1995); *Charity v. Com.*, 49 Va. App. 581, 643 S.E.2d 503 (2007).

16.     "It is axiomatic that since coconspirators are jointly and severally liable for all damages caused by a conspiracy, a private plaintiff need 'not sue all the conspirators, but may choose to proceed against any one or more of them.' *Wilson P. Abraham Const. Corp. v. Texas Indus. Inc.*, 604 F.2d 897, 904 n.15 (5th Cir. 1979), *aff'd sub nom. Texas Indus. Inc. v. Radcliff Materials, Inc.*, 451 U.S. 630, 101 S.Ct. 2061, 68 L.Ed.2d 500 (1981). *As a consequence, a defendant may be held liable for having participated in a conspiracy, even though his coconspirators are not defendants to the action.*" *U.S. Industries, Inc. v. Touche Ross & Co.* (10th Cir. 1988) 854 F.2d 1223, 1251.

17.     When the evidence shows that the defendant and another pursued the same object, one performing one part and the other performing another, the fact finder will be justified in concluding they were engaged in a conspiracy to that effect. *Carr v. Commonwealth*, 69 Va. App. 106, 816 S.E.2d 591 (2018). All that is required is a showing that one of the

conspirators intended to perform the act (e.g., defame, harass, stalk) and that the defendant agreed to help.

19. 18.     Additionally, the credibility of the witnesses and the weight accorded the evidence are matters solely for the jurors, who will have the opportunity to see and hear the evidence as it is presented. *Sandoval v. Commonwealth*, 20 Va.App. 133, 138 (1995).  "In its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the [defendant] and to conclude that the [defendant] is lying to conceal [her] guilt." *Marable v. Commonwealth*, 27 Va.App. 505, 509-10 (1998). *See also Combs v. Cmmw.*, 30 Va. App. 802, 809-10 (1999).

### <u>COUNT I</u> (Conspiracy to Harass)

19.     Plaintiff incorporates paragraphs 1 through 18 as though fully set forth herein.

20.     Virginia recognizes a cause of action for civil conspiracy, and the Virginia Supreme Court has observed that "in Virginia, a common law claim of civil conspiracy generally requires proof that the underlying tort was committed." *Almy v. Grisham*. 273 Va. 68, 80, 639 S.E.2d 182, 188 (2007).

21.     Under Virginia law, "Any person who uses obscene, vulgar, profane … language, or … threatens any illegal or immoral act with the intent to coerce, intimidate, or harass any person, over any telephone … is guilty of a Class 1 misdemeanor. [¶] 'Over any telephone' includes, for purposes of this section, any electronically transmitted communication producing a visual or electronic message that is received or transmitted by cellular telephone or other wireless telecommunications device." Va. Code Ann. § 18.2-427 (West).

22.     Separately, Virginia criminalizes the use of a computer to harass another: "If any person, with the intent to coerce, intimidate, or harass any person, shall use a computer or computer network to communicate obscene, vulgar, profane ... language, ... or threaten any illegal or immoral act, he shall be guilty of a Class 1 misdemeanor." Va. Code Ann. § 18.2-152.7:1 (West).

23.     Defendant Lynn Briggman's and her co-conspirators' conduct described above plainly constitutes harassment in person and on social media. The behavior of Defendant Lynn Briggman and her co-conspirators against Plaintiff cannot be explained away as anything other than a torrent of harassing behavior and implied threats of harm.

24.     Defendant Lynn Briggman's and her co-conspirators' conduct caused Plaintiff to suffer injury.

25.     Defendant Lynn Briggman acted with malice toward Plaintiff or her conduct was so willful or wanton as to show a conscious disregard for the rights of others, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendant Lynn Briggman, as follows:

(i)     Compensatory damages in an amount to be determined at trial, but at least $700,000.00;

(ii)    Punitive damages in the amount of $350,000.00;

(iii)   Such other relief as the Court deems appropriate.

## COUNT II (Conspiracy to Stalk)

26.     Plaintiff incorporates paragraphs 1 through 25 as though fully set forth herein.

7

97

27.     Virginia recognizes a cause of action for civil conspiracy, and the

Virginia Supreme Court has observed that "in Virginia, a common law claim of civil conspiracy

generally requires proof that the underlying tort was committed." *Almy v. Grisham*. 273 Va. 68,

80, 639 S.E.2d 182, 188 (2007). And since 1992, Virginia has recognized the crime of stalking.

*See* Acts of Assembly, c. 888.

28.     Under Code of Virginia § 18.2-60.3.A.:

> Any person ... who on more than one occasion engages in conduct
> directed at another person with the intent to place, or when he
> knows or reasonably should know that the conduct places that
> other person in reasonable fear of death, criminal sexual assault, or
> bodily injury to that other person or to that other person's family or
> household member is guilty of a Class 1 misdemeanor. *If the
> person contacts or follows or attempts to contact or follow the
> person at whom the conduct is directed after being given actual
> notice that the person does not want to be contacted or followed,
> such actions shall be prima facie evidence that the person
> intended to place that other person, or reasonably should have
> known that the other person was placed, in reasonable fear of
> death, criminal sexual assault, or bodily injury to himself or a
> family or household member.* (Italics added.)

29.     Here, Defendant Lynn Briggman and her co-conspirators knew that

Plaintiff did not want to be contacted or followed as he repeatedly sought protective orders to

prohibit that precise conduct. Defendant Lynn Briggman's conduct is prima facie evidence of

stalking.

30.     Defendant Lynn Briggman and her co-conspirators have been stalking

Plaintiff for at least four years. These acts have included persistently calling Plaintiff at all hours

of the night, violating protective orders or flouting the intent of protective orders by driving to

Plaintiff's home and photographing Plaintiff, his family and his home, requiring that Plaintiff

hire personal bodyguards to protect him from Defendant Lynn Briggman and her co-

conspirators; and posting on social media photographs and offensive and insulting commentary about Plaintiff and his family, including photographs of his minor children.

31.     The fact that Defendant Lynn Briggman and her co-conspirators have been after Plaintiff for years, topped with the fact that at least one of the co-conspirators has continually posted pictures of himself with his firearms, is sufficient conduct to cause Plaintiff to experience a reasonable fear of death or bodily injury to himself or his family.

32.     Defendant Lynn Briggman's conduct caused Plaintiff to suffer injury.

33.     Defendant Lynn Briggman acted with malice toward Plaintiff or her conduct was so willful or wanton as to show a conscious disregard for the rights of others, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendant Lynn Briggman as follows:

(i)     Compensatory damages in an amount to be determined at trial, but at least $700,000.00;

(ii)    Punitive damages in the amount of $350,000.00;

(iii)   Such other relief as the Court deems appropriate.

### COUNT III (Conspiracy to Defame)

34.     The allegations of paragraphs 1 through 33 are incorporated herein by reference.

35.     Virginia recognizes a cause of action for civil conspiracy, and the Virginia Supreme Court has observed that "in Virginia, a common law claim of civil conspiracy generally requires proof that the underlying tort was committed." *Almy v. Grisham.* 273 Va. 68, 80, 639 S.E.2d 182, 188 (2007).

9

36.     In Virginia, a plaintiff claiming defamation must allege the "(1) publication (2) of an actionable statement with (3) the requisite intent." *Jordan v. Kollman*, 269 Va. 569, 612 S.E.2d 203, 206 (2005) (citation omitted). To prevail on a claim for defamation, plaintiff must prove by a preponderance of the evidence that the statements are "both false and defamatory," *Id.* (citations omitted). "Whether a plaintiff has sufficiently proven the falsity of the alleged defamatory statements is a jury question." *Id.*, at 207.

37.     A statement is defamatory *per se* if, among other circumstances not pertinent here, it "imputes an unfitness to perform the duties of a job or a lack of integrity in the performance of the duties" or "prejudices the party in [his or] her profession or trade." *Yeagle v. Collegiate Times*, 255 Va. 293 (1998) (citation omitted).

38.     A defendant can be held liable for defamation "'when a negative characterization of a person is coupled with a clear but false implication that the [speaker] is privy to facts about the person that are unknown to the general [listener].'" *Baylor v. Comprehensive Pain Mgmt. Ctrs., Inc.*, 2011 WL 1327396, *at 11 (W.D. Va. 2011) (quoting Sack on Defamation: Libel, Slander, and Related Problems, § 4:3.2 (4th ed. 2010)). "The test for determining whether facts that may be actionable defamation have been implied is 'whether a reasonable listener would take [the speaker] to be basing his 'opinion' on knowledge of facts of the sort than can be evaluated in a defamation suit.'" *Id.* (citing Sack, at § 4:3.2); *see also Steele*, 382 F.Supp.3d at 419-20.

39.     Under Virginia law, a private figure must show the defendant published the statement knowing it was "false, or believing it to be true, lacked reasonable grounds for such belief, or acted negligently in failing to ascertain the facts on which the publication was based." *Gazette Inc. v. Harris*, 229 Va. 1, 325 S.E.2d 713, 724-25 (Va. 1985).

40.     Defendant Lynn Briggman and her co-conspirators repeatedly have made defamatory statements against Plaintiff on Facebook and other social media that have accused Plaintiff of the commission of crimes involving moral turpitude, including:

> accusing Plaintiff of embezzling funds from employee retirement accounts;

> accusing Plaintiff of embezzling funds from employee health care accounts;

> accusing Plaintiff of running a "criminal organization";

> accusing Plaintiff and his company of defrauding his clients; and

> accusing Plaintiff of "renting" his son.

41.     The false statements published by Defendant Lynn Briggman and her co-conspirators have harmed Plaintiff's reputation in the community, injured Plaintiff in his profession and deterred other people from associating with Plaintiff, which was the goal that Defendant Lynn Briggman and her co-conspirators sought to achieve when they published the false statements.

42.     Defendant Lynn Briggman's conduct caused Plaintiff to suffer injury.

43.     Defendant Lynn Briggman and her co-conspirators acted with malice toward Plaintiff or her conduct was so willful or wanton as to show a conscious disregard for the rights of others, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendant Lynn Briggman as follows:

(i)     Compensatory damages in an amount to be determined at trial, but at least $700,000.00;

(ii)     Punitive damages in the amount of $350,000.00;

(iii)    Such other relief as the Court deems appropriate.

### COUNT IV (Conspiracy to Slander)

44.     The allegations of paragraphs 1 through 43 are incorporated herein by reference.

45.     Under Virginia law,

[D]efamatory words which will sustain an action [fall] into five classes: "1. 'Words falsely spoken of a person which impute to the party the commission of some criminal offense involving moral turpitude, for which the party, if the charge is true, may be indicted and punished. 2. Words falsely spoken of a person which impute that the party is infected with some contagious disease, where if the charge is true, it would exclude the party from society. 3. Defamatory words falsely spoken of a person which impute to the party unfitness to perform the duties of an office or employment of profit, or want of integrity in the discharge of the duties of such an office or employment. 4. Defamatory words falsely spoken of a party which prejudice such party in his or her profession or trade. 5. Defamatory words falsely spoken which though not in themselves actionable, occasion the party special damage.' *The first four of these classes are slanderous per se*, the other only when special damage results."

*M. Rosenberg & Sons v. Craft*, 29 S.E.2d 375, 378 (Va. 1944) (citations omitted) (italics added).

46.     A statement is defamatory *per se* if, among other circumstances not pertinent here, it "imputes an unfitness to perform the duties of a job or a lack of integrity in the performance of the duties" or "prejudices the party in [his or] her profession or trade." *Yeagle v. Collegiate Times*, 255 Va. 293 (1998) (citing omitted).

47.     Defendant Lynn Briggman and her co-conspirators repeatedly have made slanderous statements against Plaintiff, including statements claiming that Plaintiff had engaged in the commission of crimes involving moral turpitude such as:

➤     accusing Plaintiff of embezzling funds from employee retirement accounts;

12

➢     accusing Plaintiff of embezzling funds from employee health care accounts;

➢     accusing Plaintiff of running a "criminal organization";

➢     accusing Plaintiff and his company of defrauding his clients; and

➢     accusing Plaintiff of "renting" his son.

48.     The false statements of fact made by Defendant Lynn Briggman's and her co-conspirators have harmed Plaintiff's reputation in the community, injured Plaintiff in his profession and deterred other people from associating with Plaintiff, which was the goal that Defendant Lynn Briggman's and her co-conspirators sought to achieve when they uttered the false statements.

49.     The false statements constitute defamation *per se* as they relate to the commission of various crimes involving moral turpitude.  The publications expose Plaintiff to hatred, contempt, ridicule and obloquy, and appear designed to subject Plaintiff to the risk of physical harm by publishing his home address and inciting violence against him.

50.     As a proximate result of the above-described publications, Plaintiff has suffered loss of reputation.

51.     The above-described publications were not privileged as they were motivated by malice, hatred and ill will towards Plaintiff and to desire to injure his personal and professional reputation.

52.     Defendant Lynn Briggman's conduct caused Plaintiff to suffer injury.

53.     Defendant Lynn Briggman and her co-conspirators acted with malice toward Plaintiff or her conduct was so willful or wanton as to show a conscious disregard for the rights of others, entitling Plaintiff to an award of punitive damages.

WHEREFORE, Plaintiff demands judgment against Defendant Lynn Briggman as follows:

    (iv)    Compensatory damages in an amount to be determined at trial, but at least $700,000.00;

    (v)    Punitive damages in the amount of $350,000.00;

    (vi)    Such other relief as the Court deems appropriate.

## JURY DEMAND

A trial by jury of all legal issues is requested.

Respectfully submitted,

MICHEAL DONOVAN

Mark S. Paullin, Esquire (VSB#27893)
Paullin Law Firm, P.C.
575-A Southlake Boulevard
North Chesterfield, VA 23236
Office:  (804) 423-7423//Facsimile: (804) 423-7424
mark.paullin@paullinlaw.com
*Counsel for Plaintiff*

14

# Exhibit

# G

## IN THE CIRCUIT COURT OF THE NINTH JUDICIAL CIRCUIT
## IN AND FOR ORANGE COUNTY, FLORIDA

NEXUS SERVICES, INC.,
A Virginia Corporation; and
MICHAEL DONOVAN;

        Plaintiffs,                          CASE NO:

v.

DAVID B. BRIGGMAN,

        Defendant.

_____/

## COMPLAINT

**COMES NOW**, PLAINTIFFS NEXUS SERVICES, INC., (hereinafter "NEXUS"), and MICHAEL DONOVAN, (hereinafter "DONOVAN"), by and through the undersigned counsel, and hereby sues DEFENDANT DAVID B. BRIGGMAN, (hereinafter "BRIGGMAN" for Defamation for making false damaging statements and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. This is an Action for Defamation (Libel Per Se and Slander Per Se) and for damages in excess of $15,000.00, exclusive of interest, costs, and attorney's fees.

2. PLAINTIFF NEXUS SERVICES, INC., is a Virginia registered corporation with a principle place of business in Augusta County, Virginia.

3. PLAINTIFF MICHAEL DONOVAN is an individual over the age of 18 who is sui generis and a Virginia resident. Donovan is also the CEO of Nexus Services, Inc.

4. DEFENDANT DAVID B. BRIGGMAN is an individual over the age of 18 who is sui generis and Virginia resident.

5. Plaintiffs submit themselves to the jurisdiction of this Court.

6. This Court has personal jurisdiction over Defendant Briggman as he has purposely published defamatory communications by both wire (telephone) and electronic (email) means into the State of Florida.

7. The events which gave rise to this Complaint have occurred in Orange County, Florida and as such Orange County is the proper Venue for this action.

## ALLEGATIONS COMMON TO ALL COUNTS

**A.      Nexus Services, Inc. Holds an Event in Orange County, Florida**

8. Nexus Services, Inc., is the parent company of the Nexus group of companies, comprising a variety of for-profit and not-for-profit companies based in Verona, Virginia and operating nationwide.

9. In addition to its charitable and for-profit companies, Nexus funds our nations' largest pro bono immigrant legal services law firm (Nexus Caridades Attorneys, Inc.), which provides pro bono legal services to immigrants regarding deportation and asylum cases.

10. Nexus Caridades Attorneys, Inc. also provided pro bono legal services to individuals who have suffered a severe depravation of their civil rights throughout the United States.  This need for this assistance is so great, that Nexus has agreed to fund a separate law firm born out of this division of Nexus Caridades Attorneys, Inc., which firm will be fully formed and meeting this need by the end of 2017.

11. In order to inform all members of the Nexus family of companies of the events of the last year and upcoming events for the next year, to promote and build the family environment all members of the Nexus family enjoy, and to provide an opportunity for all members of the Nexus family a chance to reunite, Nexus holds a yearly All Staff event.

12. On October 12, and through October 16, 2017, Nexus held its All Staff event for over 300 people at the Caribe Royale Orlando, located at 8101 World Center Drive, Orlando, Florida 32821 (hereinafter "Caribe").

13. This event included daily meetings, announcements, presentations, meals, and entertainment, including trips to local attractions such as Disney's Not So Scary Halloween Party and Universal Studio's Halloween Horror Nights.

14. At great cost in time, money, and energy, Nexus and Donovan planned this event to provide a unique, carefree, and joyous occasion to the Nexus family of staff.

**B.      Briggman repeatedly and maliciously slanders Nexus and Donovan to Caribe Staff**

15. Briggman is a disgruntled former employee of Nexus.  Briggman has engaged in an extended, malicious, and interminable campaign of defamation and harassment against Nexus and its employees as well as Donovan.

16. Beginning on Thursday, October 12, and continuing through Saturday, October 14, Briggman made repeated calls to Caribe, frequently remaining on hold for 20 to 30 minutes.

17. Upon reaching members of Caribe staff, Briggman accused Nexus and Donovan of illegally wiretapping and defrauding the employees of Nexus.

18. Upon reaching members of Caribe staff, Briggman accused Nexus and Donovan of attempting to defraud Caribe.

19. Upon reaching members of Caribe staff, Briggman accused Nexus and Donovan of failing to pay amounts due to Marriot World Center, where the All Staff event was held in the prior year.

20. These false statements caused significant difficulties and delays to Nexus' and Donovan's management of the All Staff event.

21. Donovan and Nexus were contacted by Caribe and required to meet with Caribe staff during times scheduled for events. Caribe required these meetings between Nexus and Donovan and Caribe's Loss Mitigation Manager, Accounting Manager, and Banquets Manager to discuss the false statements of Briggman.

22. As a result of these required meetings, events planned by Nexus and Donovan at the All Staff event were delayed, shortened, or cancelled.

23. Additionally, Caribe required immediate payment by Nexus of a remaining discretionary fund payment in order to continue the event, which payment was made immediately. Had Nexus not made the payment, Caribe implied that the event would be cancelled.

24. Finally, out of concern for any security issues presented by Briggman and his unrelenting assault of Nexus and Donovan and their reputations, Caribe contacted the local Orlando Police Department to report their concerns, stepped up their hotel security surrounding the All Staff event, and required increased coordination and reporting from Nexus' and Donovan's security with hotel security.

## C.     Briggman repeatedly and maliciously libels Nexus and Donovan to Caribe Staff

25. Briggman is a disgruntled former employee of Nexus. Briggman has engaged in an extended, malicious, and interminable campaign of defamation and harassment against Nexus and its employees as well as Donovan.

26. Beginning on Thursday, October 12, and continuing through Saturday, October 14, Briggman sent multiple emails to Caribe.

27. These emails falsely stated that Nexus and Donovan were illegally wiretapping and defrauding employees of Nexus.

28. These emails falsely stated that Nexus and Donovan were going to defraud Caribe.

29. These emails falsely stated that Nexus and Donovan of failed to pay amounts due to Marriot World Center, where the All Staff event was held in the prior year.

30. These false statements caused significant difficulties and delays to Nexus' and Donovan's management of the All Staff event.

31. Specifically, Donovan and Nexus were contacted by Caribe and required to meet with the staff of Caribe during times scheduled for events. Caribe staff required these meetings between Nexus and Donovan and Caribe's Loss Mitigation Manager, Accounting Manager, and Banquets Manager to discuss the false statements of Briggman.

32. As a result of these required meetings, events planned by Nexus and Donovan at the All Staff event were delayed, shortened, or cancelled.

33. Additionally, Caribe required immediate payment by Nexus of a remaining discretionary fund payment in order to continue the event, which payment was made immediately. Had Nexus not made the payment, Caribe implied that the event would be cancelled.

34. Finally, out of concern for any security issues presented by Briggman and his unrelenting assault of Nexus and Donovan and their reputations, Caribe contacted the local Orlando Police Department to report their concerns, stepped up their hotel security surrounding the All Staff event, and required increased coordination and reporting from Nexus' and Donovan's security with hotel security.

**D.    The truth behind Briggman's False Statements and Misrepresentations**

35. At no point has Nexus or Donovan ever illegally wiretapped or defrauded any of their employees. There has been no evidence of such activity, no indictment or conviction in this or any other jurisdiction for any such activity.

36. Further, neither Nexus or Donovan were intending to defraud Caribe.  In fact, prior to the start of the All Staff event, Nexus had paid the cost of the event in full, as well as made the majority of the payment on the discretionary fund to be used in case of additional expenses arising during the course of the event.

37. Nexus and Donovan fully paid all amounts due and owing to Marriot World Center for services rendered during the All Staff Event the prior year.

38. At no time were these false statements anything other than efforts by a disgruntled former employee to continue a campaign of defamation and harassment of Nexus and Donovan.  These statements were made in an effort to harm or destroy Nexus's and reputation within the State of Florida and with Caribe, with whom they were engaged in a business transaction.

## COUNT ONE
## SLANDER PER SE AGAINST BRIGGMAN

39. Plaintiffs incorporate paragraphs 1 through 37 as if fully set forth herein.

40. On or about October 12 through October 14, 2017, Defendant Briggman published the following false statements about Nexus and Donovan:

  a. That Nexus was illegally wiretapping and defrauding its employees;

  b. That Donovan was illegally wiretapping and defrauding employees of Nexus;

  c. That Nexus was intending and attempting to defraud Caribe in the transaction of their business relating to the All Staff event;

  d. That Donovan was intending and attempting to defraud Caribe in the transaction of their business relating to the All Staff event.

41. These false statements were published by telephone calls into Florida made to Caribe Royale Orlando staff.

42. These false statements were published with actual malice or at least negligence as to the truth or falsity of the statements.

43. Nexus has been damaged by these false statements as its event was disrupted and delayed.

44. Nexus has been damaged by these false statements because the statements subject Nexus to hatred, disgust, ridicule, contempt, and disgrace.

45. Nexus has been damaged by these false statements because the statements attribute conduct, characteristics, and conditions incompatible with the proper exercise of Nexus's lawful business, profession, trade, or office.

46. Nexus has been damaged by these false statements because the statements impute a criminal offense to Nexus amounting to a felony.

47. Donovan has been damaged by these false statements because the statements subject Donovan to hatred, disgust, ridicule, contempt, and disgrace.

48. Donovan has been damaged by these false statements because the statements attribute conduct, characteristics, and conditions incompatible with the proper exercise of Donovan's lawful business, profession, trade, or office.

49. Donovan has been damaged by these false statements because the statements impute a criminal offense to Donovan amounting to a felony.

## COUNT TWO
## LIBEL PER SE AGAINST BRIGGMANM

50. Plaintiffs incorporate paragraphs 1 through 37 as if fully set forth herein.

51. On or about October 12 through October 14, 2017, Defendant Briggman published the following false statements about Nexus and Donovan:

    a.  That Nexus was illegally wiretapping and defrauding its employees;

    b.  That Donovan was illegally wiretapping and defrauding employees of Nexus;

    c.  That Nexus was intending and attempting to defraud Caribe in the transaction of their business relating to the All Staff event;

    d.  That Donovan was intending and attempting to defraud Caribe in the transaction of their business relating to the All Staff event.

52. These false statements were published by email into Florida sent to Caribe Royale Orlando staff.

53. These false statements were published with actual malice or at least negligence as to the truth or falsity of the statements.

54. Nexus has been damaged by these false statements as its event was disrupted and delayed.

55. Nexus has been damaged by these false statements because the statements subject Nexus to hatred, disgust, ridicule, contempt, and disgrace.

56. Nexus has been damaged by these false statements because the statements attribute conduct, characteristics, and conditions incompatible with the proper exercise of Nexus's lawful business, profession, trade, or office.

57. Nexus has been damaged by these false statements because the statements impute a criminal offense to Nexus amounting to a felony.

58. Donovan has been damaged by these false statements because the statements subject Donovan to hatred, disgust, ridicule, contempt, and disgrace.

59. Donovan has been damaged by these false statements because the statements attribute conduct, characteristics, and conditions incompatible with the proper exercise of Donovan's lawful business, profession, trade, or office.

60. Donovan has been damaged by these false statements because the statements impute a criminal offense to Donovan amounting to a felony.

## PRAYER FOR RELIEF

WHEREFORE, NEXUS prays this court enter a judgment in favor of Nexus and against Briggman:

61. Awarding NEXUS all compensatory damages including consequential and incidental damages as a result of Briggman's wrongdoing in an amount to be determined at trial;

62. Awarding Nexus punitive damages in an amount to be determined at trial;

63. Awarding Nexus and Donovan reasonable attorney's fees and costs;

64. Issuing preliminary and permanent injunctive relief preventing Briggman from making any further defamatory remarks against Nexus Services, Inc. or Michael Donovan; and

65. Granting such other and further relief as this Court deems just and proper.

## PRAYER FOR JURY TRIAL

NEXUS and DONOVAN prays for a Jury Trial on all issues so triable.

Respectfully submitted this 7th day of November, 2017.

Attorneys for Plaintiff:
NEXUS CARIDADES ATTORNEYS, INC.
/s/ Dallas S. LePierre
Dallas S. LePierre, Esquire
Florida Bar No. 101126
44 Broad Street, NW, Suite 200
Atlanta, Georgia 30303
(404) 654-0288 Telephone
(404) 592-6225 Facsimile
Primary Address:      dlepierre@nexuscaridades.com
Secondary Email:      mdobbs@nexuscaridades.com

# Exhibit

# H

Inquiry Report                                                                                Page 1 of 2

U.S. Department of Labor

Employee Benefits Security Administration

Generated by: █████████

Report Date: 01/24/2018 10:28:23 AM

| | | | |
|---|---|---|---|
| Inquiry Type: | Telephone | Date Received: | 12/05/2017 |
| Control ID: | 201822-01221 | Due Date: | 12/06/2017 |
| Office: | WAS | Staff: | █████████ |
| Status: | Closed | Special Project: | |
| Closing Date: | 12/06/2017 | EMS Case #: | [] |
| Congress Person: | | | |
| Type of Inquirer: | Participant/Beneficiary | | |
| Source of Inquiry: | IP | | |
| Src. of Inq. Cmts.: | | | |
| Queue Cmts.: | TIME 2:30PM- CHECKING ON A COMPLAINT | | |
| Pub Request Only: | No | | |
| Maintain Record Permanently: | No | Physical Files Present: | No |
| Issue: | | Issue Comments: | |
| Exec Sec ID: | EXEC_SEC_ID_TAG | | |

### Inquirer Information

| | | | | |
|---|---|---|---|---|
| First Name: | DAVID | | | |
| Last Name: | BRIGGMAN | | | |
| MI: | | | | |
| Address 1: | | | | |
| Address 2: | | | | |
| City: | | State: | Zip Code: | 00000 |

| Phone Number | Extension | Type |
|---|---|---|
| (540) 269-4122 | | |

### E-Mail Addresses

### Subjects

| Code | Description | Date | Comments |
|---|---|---|---|
| NBI | Not Benefits Issue | 12/06/2017 | |

### Closure Analysis

| Subj. | Code | Description | Date | Comments | Plan | Description | Comments |
|---|---|---|---|---|---|---|---|
| NBI | RA | Resource Assistance | 12/06/2017 | | NA | Not Applicable | |

### Actions

| Code | Description | Init. Contact | Date | Comments |
|---|---|---|---|---|
| W | Waiting Initial Contact | No | 12/05/2017 | |
| CT | Telephone | Yes | 12/06/2017 | |

### Employer/Other Information

| | | |
|---|---|---|
| Name: | | |
| Type: | | |
| First Name: | Last Name: | MI: |
| Address 1: | | |

000001
116

**Address 2:**
**City:**                          **State:**                          **Zip Code:**
**Comments:**

**Phone Number**        **Extension**                    **Type**

**E-Mail Addresses**

**Plan Information**

**Plan Name:**
**EIN:**                    **Plan**               **PlanType:**      **Plan Types**           **Plan Size:**
                           **Number:**

**Benefit Recovery Information**

No data present

**Recovery Summary**

**Issue/Problem:**

**BA Action:**

**Outcome:**

**Documentation:**

**File Notes**

12/06/2017 02:24:31 PM >> BA contacted P; and explained that no information will be given if regarding any open
matters. BA was able to answer all of P's questions and concerns satisfactorily. BA gave our office contact information if
P had any future questions or concerns.

**Field Office Use Information**

**Code**                             **Comments**
No data present

**Attachments**

**Email Requests**

**General Correspondence**

U.S. Department of Labor

Employee Benefits Security Administration

Generated by: ▮▮▮▮▮▮

Report Date: 01/24/2018 09:54:13 AM

| | | | |
|---|---|---|---|
| Inquiry Type: | Telephone | Date Received: | 08/02/2017 |
| Control ID: | 201720-10062 | Due Date: | 08/03/2017 |
| Office: | PHI | Staff: | ▮▮▮▮▮▮▮▮▮ |
| Status: | Closed | Special Project: | |
| Closing Date: | 12/05/2017 | EMS Case #: | {} |
| Congress Person: | | | |
| Type of Inquirer: | Participant/Beneficiary | | |
| Source of Inquiry: | T | | |
| Src. of Inq. Cmts.: | | | |
| Queue Cmts.: | 112917 closing letter submitted | | |
| Pub Request Only: | No | | |
| Maintain Record Permanently: | No | Physical Files Present: | No |
| Issue: | | Issue Comments: | |
| Exec Sec ID: | EXEC_SEC_ID_TAG | | |

## Inquirer Information

| | |
|---|---|
| First Name: | David |
| Last Name: | Briggman |
| MI: | |
| Address 1: | 7556 Mountain Valley Road |
| Address 2: | |
| City: | KEEZLETOWN     State:   Virginia     Zip Code:   22832 |

| Phone Number | Extension | Type |
|---|---|---|
| (540) 269-4122 | | |

### E-Mail Addresses

briggman@gmail.com

## Subjects

| Code | Description | Date | Comments |
|---|---|---|---|
| ▮ | Participant Contributions | 08/02/2017 | |
| | Paid Premiums/Insurance Cancelled | 09/13/2017 | |
| | Employer Contributions | 10/24/2017 | |

## Closure Analysis

| Subj. | Code | Description | Date | Comments | Plan | Description | Comments |
|---|---|---|---|---|---|---|---|
| ▮ | ▮ | Recovery | 08/02/2017 | | 401K | 401(k)/PS | . |
| | | Not Valid | 09/13/2017 | | H | Health | . |
| | | Recovery | 10/24/2017 | | 401K | 401(k)/PS | . |

## Actions

| Code | Description | Init. Contact | Date | Comments |
|---|---|---|---|---|
| ▮ | Telephone | Yes | 08/02/2017 | |
| | Telephone | No | 08/15/2017 | VM from P |
| | Letter | No | 08/25/2017 | to PA, P cc'd. |
| | E-Mail | No | 08/25/2017 | |

| | | | | |
|---|---|---|---|---|
| Telephone | No | 08/29/2017 | VM from P | |
| E-Mail | No | 08/30/2017 | | |
| Telephone | No | 08/31/2017 | | |
| Telephone | No | 09/13/2017 | VM from P | |
| E-Mail | No | 09/13/2017 | | |
| Telephone | No | 09/22/2017 | | |
| Letter | No | 10/19/2017 | | |
| Telephone | No | 10/19/2017 | VM from P. | |
| E-Mail | No | 10/19/2017 | from PA | |
| Telephone | No | 10/23/2017 | VM from P | |
| E-Mail | No | 10/25/2017 | | |
| E-Mail | No | 10/31/2017 | | |
| E-Mail | No | 11/02/2017 | | |
| Telephone | No | 11/29/2017 | | |
| Letter | No | 12/05/2017 | | |

## Employer/Other Information

| | | | | | |
|---|---|---|---|---|---|
| Name: | Nexus Services, Inc. | | | | |
| Type: | Employer | | | | |
| First Name: | Richard | Last Name: | Moore | MI: | |
| Address 1: | 113 Mill Place Parkway | | | | |
| Address 2: | Suite 103 | | | | |
| City: | VERONA | State: | Virginia | Zip Code: | 24482 |
| Comments: | | | | | |

| Phone Number | Extension | Type |
|---|---|---|
| (540) 457-8985 | | |

**E-Mail Addresses**

## Plan Information

| Plan Name: | Nexus Services, Inc. 401(K) Plan | | | | | | |
|---|---|---|---|---|---|---|---|
| EIN: | 46-4996933 | Plan Number: | 001 | PlanType: | Plan Types | Plan Size: | |
| Plan Name: | Nexus Services, Inc. HW Plan | | | | | | |
| EIN: | 46-4996933 | Plan Number: | 000 | PlanType: | Plan Types | Plan Size: | |

## Benefit Recovery Information

| | | | | |
|---|---|---|---|---|
| Status: | Approved | Type: Pension Benefits Paid | | Date: 11/03/2017 |
| Amount: | $308,903.00 | | Participants Assisted: 170 | |
| Plan Document Obtained: | | | | |
| Comments: | | | | |

**Benefit Recovery History:**

| Status | Reviewed By | Date |
|---|---|---|
| Submitted | | 11/02/2017 |
| Approved | ███████ | 11/03/2017 |

| | | | | |
|---|---|---|---|---|
| Status: | Approved | Type: Pension Benefits Protected | | Date: 11/03/2017 |
| Amount: | $0.00 | | Participants Assisted: 0 | |
| Plan Document Obtained: | | SPD | | |

Comments:

**Benefit Recovery History:**

| Status | Reviewed By | Date |
|---|---|---|
| Submitted |  | 11/02/2017 |
| Approved | ███████████ | 11/03/2017 |

| Status: | Approved | Type: Pension Benefits Protected | Date: 11/03/2017 |
|---|---|---|---|
| Amount: | $0.00 | | Participants Assisted: 0 |
| Plan Document Obtained: | | Plan Document | |

Comments:

**Benefit Recovery History:**

| Status | Reviewed By | Date |
|---|---|---|
| Submitted |  | 11/02/2017 |
| Approved | ███████████ | 11/03/2017 |

**Benefit Recovery Totals**

| Amounts: | $308,903.00 | Participants Assisted: 170 |
|---|---|---|

**Recovery Summary**

**Issue/Problem:**

P¿s employee contributions were not forwarded in a timely manner. P needs SPD/PD.

**BA Action:**

Contacted plan administrator regarding delinquent contributions. Requested/reviewed one year of contributions records (spread sheets/report from TPA etc). Discussed with employer the need to remit lost earnings (per SOP 17). Reviewed lost earnings calculation spreadsheet from employer. Discussed ERISA disclosure requirements.

**Outcome:**

Plan Administrator agreed that the contributions were late between 6/13/16 to 3/1/17 (26 Pay periods). PA deposited several checks totaling $149,281.86 for contributions and $5,169.73 for lost earnings for 40 participants.

Plan Administrator reported that the Plan failed to invite 130 eligible EE's to participate in the Plan between 1/6/16 to 7/19/17. The Plan Sponsor has corrected this operational failure by making a qualified non-elective contribution (QNEC) to the Plan for each of the one hundred thirty (130) excluded employees, based on IRS guidance. PA deposited several checks totaling $154,451.60 for contributions and lost earnings for 130 participants.

SPD and PD was sent to P.

**Documentation:**

P confirmed in an email on 9/29/2017 that his account has been credited with all late contributions plus interest 9/13/17. Employer provided copies of checks and trust deposits totaling $300,189.19 for contributions and $8,714 for lost earnings for 170 participants. ER made the dollar determination based on IRS guidance on this issue.

P confirmed receipt of SPD and PD via email on 11/2/17.

**File Notes**

08/02/2017 09:11:27 AM Caller is a former EE of Nexus Services Inc. Resigned 4/20/2017. Caller is reporting that the ER is behind on their payment arrangement w their HW carrier Anthem causing a delay in getting claims paid. Premiums are deducted from pay. Premiums are for dependents. No premiums are taken for EE coverage only.

Caller is also reporting a delay in the 401k EEC deposits. Payroll is done through Gusto.com for accounting purposes and then owner would pay EEs from his checkbook once the Gusto program had calculated the figures. Personal/business account?

Caller reports that all HW claims have been paid and he has since w/drawn his 401k money however due to the PA's failure to fulfill their fiduciary duties he felt it necessary to report a complaint w EBSA/DOL.

BA requested P provide a narrative and supporting documentation.

VIRGINIA: IN THE CIRCUIT COURT FOR AUGUSTA COUNTY

ZACHARY CRUZ, ET. AL.,      :
              :
  Plaintiffs         :
              :
v.              :  Case No. CL21002251-00
              :
DUANE LEE CHAPMAN, ET. AL.,    :
              :
  Defendants.       :

## **MOTION CRAVING OYER**

    Comes now the Defendant, David B. Briggman, *Pro Se,* and respectfully craves oyer of

all documents, including all court filings, and documents provided to Plaintiffs by the

Department of Social Services as are referenced in their Complaint. In support of his Motion,

this Defendant states as follows:

    1.   In their Complaint, Plaintiffs make allegations against Defendant Briggman which

consist of a) Civil Conspiracy; b) Defamation; and, c) "Racial and Ethnic Harassment".

    2.   In furtherance of their claim of "Civil Conspiracy" Plaintiffs describe a "petition

to arrest and detain" Plaintiff Cruz and to search the Plaintiff's home. (Complaint at 11).

Plaintiffs describe that "salacious accusations were plead and published in a pleading before this

Court/ (Complaint at 13) Plaintiffs allege that "upon information and belief" Defendant Collins

"had her FBI career cut short after she violated department policies and/or laws in connection

with her rogue investigation(s) of Plaintiffs". (Complaint at 24) Plaintiffs reference a "report"

allegedly made by Defendant Duane Chapman to Defendant Combs. (Complaint at 27) Plaintiffs

allege that "upon information and belief" that "Defendant Chapman falsely asserted he had met

and spoken with Plaintiff Cruz, and likewise falsely asserted that Plaintiff Cruz was mentally

disabled, or as Defendant Chapman described him, "retarded"". (Complaint at 28) Plaintiffs

allege that "upon and belief" that "Defendant Combs is married to a special agent with the

Virginia State Police, who works on a drug task force that has been targeted in the past by

Plaintiff Donovan in his provision of access to pro bono legal services". (Complaint at 30)

Plaintiffs reference "letters" delivered to them. (Complaint at 34) Plaintiffs reference a "lawsuit".

(Complaint at 36) Plaintiffs mention an attempt to "force" a conservatorship upon Plaintiff Cruz

(Complaint at 37) Plaintiffs allege Defendants Collins and Combs "even identified to the Court

that their sources were individuals whose employment had bene terminated by the Plaintiffs…"

(Complaint at 38) Plaintiffs assert "upon information and belief" and cite "evidence" that Collins

and Combs have "obstructed justice". (Complaint at 39). Plaintiffs reference "upon information

and belief" that the Department of Social Services was seeking to place Plaintiff Cruz into a

conservatorship. (Complaint at 40) Plaintiffs allege Defendants Duane and Lyssa Chapman

"continued to pump out innuendo" designed to damage Donovan and Moore's reputation.

(Complaint at 43) Plaintiffs allege that Defendants Duane Chapman, Lyssa Chapman, and

Briggman "strategically placed tweets or other social media messages to be placed on Plaintiff

Donovan and Moore's accounts making outrageous accusations and predicting they would be

proven right soon". (Complaint at 44) Plaintiffs allege that "during their investigation" they

became aware of Defendant Chapman's use of "shell companies" as personal slush funds to avoid

the payment of taxes". And that "[u]pon information and belief Defendant Chapman owes

millions in taxes that were evaded using the scam. (Complaint at 54) Plaintiffs allege that "upon

information and belief" that Defendant Chapman "became hyper concerned that his behavior

might be reported to authorities…" (Complaint at 55).

3.      In furtherance of their "Defamation" allegations against Defendants Briggman, Lyssa Chapman, Collins, Combs, and the eight "John Does", the Plaintiffs allege "various defamatory statements were made by these defendants. (Complaint at 63) Plaintiffs allege "upon information and belief" Defendant Collins "advanced" a complaint to Defendant Combs (Complaint at 65) Plaintiffs reference a "court filing" (Complaint at 66) Plaintiffs allege "statements" contained within a pleading. (Complaint at 68) Plaintiffs reference "statements". (Complaint at 69) Plaintiffs reference "statements". (Complaint at 70) Plaintiffs reference "statements". (Complaint at 71) Plaintiffs reference "statements". (Complaint at 73) Plaintiffs reference "statements" (Complaint at 74) Plaintiffs reference "statements". (Complaint at 75) Plaintiffs reference "statements" (Complaint at 76) Plaintiffs reference "statements" (Complaint at 77) Plaintiffs reference "statements" (Complaint at 78) Plaintiffs reference "statements" (Complaint at 79) Plaintiffs reference "statement" (Complaint at 82) Plaintiffs reference "statements" (Complaint at 83)

4.      Plaintiffs have attached no documents as Exhibits to their Complaint which support their absurd accusations.

5.      "[T]he motion craving oyer has been, since the early days of the common law, a remedy afforded to a litigant who has been sued on a claim based upon a written document mentioned in a claimant's pleading but not made a part of the record. Byrne v. City of Alexandria, 298 Va. 694, 700 (2020). The motion is used to force a party to place documents mentioned in the pleadings, but not attached thereto, within the court record. Smith v. Wolsiefer, 119 Va. 247, 250 (1916). A defendant can crave oyer of all documents that form the basis of the plaintiff's claim, Spiller v. James River Corp., 32 Va. Cir. 300 (1993), because "a litigant has no right to put blinders on the Court and attempt to restrict its vision to only such parts of the record

as the litigant thinks tend to support his view." *Culpeper National Bank v. Morris,* 168 Va. 379, 382-83 (1937). Thus, a motion craving oyer should be granted where the missing document is "essential" to the plaintiff's claim. <u>Byrne,</u> 298 Va. at 700.

      6.     The defendant craves oyer of the "court filing", "Social Services" documents, and other documents such as "internet postings" because they are (i) expressly referenced in the Plaintiffs' Complaint, (ii) relied upon by the Plaintiffs for, is essential to, and forms the basis of the "Civil Conspiracy" and "defamation" claims they attempt to assert against Defendant Briggman in the Complaint, and (iii) are not attached as exhibits to the Complaint.

      7.     For the foregoing reasons, the defendant respectfully requests that this Court enter an Order (1) granting Defendant Briggman's motion craving oyer; (2) requiring the Plaintiffs to produce, and to place into the record by filing with the Court, a true, accurate and complete copy of all documents referenced in their Complaint, including but not limited to court filings, Social Services documents, and internet posts (3) awarding to the Defendant his costs incurred in preparing, filing and arguing his motion; and (4) granting to the defendant such other and further relief as the Court may deem reasonable, necessary and appropriate.

                    Respectfully submitted,

                    _____
                    DAVID B. BRIGGMAN, *Defendant,* Pro Se
                    7556 Mountain Valley Road
                    Keezletown, Virginia 22832
                    (540) 246-5252
                    briggman@gmail.com

## <u>CERTIFICATE OF SERVICE</u>

I, David B. Briggman, do hereby certify that I transmitted to counsel for the Plaintiffs, a true copy of his Motion Craving Oyer by electronic mail on this 1st day of November, 2021.

_____
DAVID B. BRIGGMAN, *Defendant,* Pro Se

Filed in the Clerk's Office of the
Circuit Court of Augusta County
Time: 3:34 pm Date: 11-1-21
TESTE: Dianne C. Shifflet Dept. Clk.
Date: November 1, 2021

<u>VIRGINIA</u>:

### IN THE CIRCUIT COURT OF AUGUSTA COUNTY

ZACHARY CRUZ,               )
MICHEAL DONOVAN,            )
and                        )
RICHARD MOORE,             )
                           )        **RESPONSIVE PLEADINGS**
    Plaintiffs,      )
                           )        Case No. CL21002251-00
v.                         )
                           )
DUANE LEE CHAPMAN, et al., )
                           )
    Defendants.      )

For her pleadings in response to the Complaint filed on behalf of the plaintiffs, Zachary Cruz ("Cruz"), Micheal Donovan ("Donovan"), and Richard Moore ("Moore") (collectively, "the plaintiffs"), Defendant Lindsay Combs ("Combs" or "the defendant") comes by counsel, pursuant to Rule 3:8 of the Supreme Court of Virginia, as amended, and other applicable law, and states as follows:

### I.   **INTRODUCTION**

1.     This civil action arises out of a lawful and proper investigation opened by the Shenandoah Valley Department of Social Services, Adult Protective Services unit ("APS") in early 2021 into a report of potential acts of abuse and financial exploitation of Cruz by Donovan and Moore in Augusta County, Virginia ("the APS investigation"), and it is being used by Donovan and Moore as a "sword" in their effort to thwart same.

2.     At the time that the report was received, the defendant was an investigator in, and the supervisor of, the APS unit, and she also was a social worker.

3.     The person who made the report also alleged that Cruz might be mentally incapacitated.

4.     In their Complaint, the plaintiffs attempt to assert against Combs and others (i) a claim of civil conspiracy pursuant to Virginia Code §§ 18.2-499 and 500, (ii) a claim of defamation, (iii) a claim of insulting words, pursuant to Virginia Code § 8.01-45, (iv) a claim of racial and ethnic harassment, pursuant to Virginia Code § 8.01-42.1.

5.     The plaintiffs seek an award of injunctive relief, "actual and punitive damages in an amount to be proved at trial but not less than" various sums, and attorney's fees and costs.

6.     The following general, background information concerning APS investigations and procedures will be helpful to the Court's assessment of the defenses raised by Combs herein.[1]

7.     In Virginia, adult protective services "shall" be provided "for adults who are found to be abused, neglected, or exploited and who meet one of the following criteria: (i) the adult is 60 years of age or older or (ii) the adult is 18 years of age or older and is incapacitated." Va. Code § 63.2-1605(A).

8.     "Adult" is defined as "any person 60 years of age or older, or any person 18 years of age or older who is incapacitated and who resides in the Commonwealth ...." Va. Code § 63.2-1603; 22 VAC 30-100-10.

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

---

[1] Some of the pertinent code sections and administrative regulations referenced herein were recently amended, effective July 2021. The provisions quoted and cited to herein are those that were in effect in February and March 2021, which is when the APS investigation described in the Complaint took place.

9.  "Incapacitated person" means any adult who is impaired by reason of mental illness, intellectual disability, physical illness or disability, advanced age or other causes to the extent that the adult lacks sufficient understanding or capacity to make, communicate or carry out responsible decisions concerning his or her well-being." *Id.* For purpose of establishing an adult's eligibility for adult protective services, such adult may or may not have been adjudicated incapacitated by a court." 22 VAC 30-100-10.

10.  "Exploitation" means the illegal, unauthorized, improper, or fraudulent use of an adult ... or the adult's funds, property, benefits, resources, or other assets for another's profit, benefit, or advantage ... or that deprives the adult of his rightful use of or access to such funds, property, benefits, resources, or other assets." *Id.*

11.  Aside from those classes of persons required by statute to report suspected abuse, neglect, or exploitation of an adult, any other person "who suspects" that such abuse, neglect, or exploitation has occurred "may report the matter" to the local department. Va. Code § 63.2-1606(D).

12.  Once such a report is made, "the local department *shall determine the validity of such report* and shall initiate an investigation within 24 hours of the time the report is received in the local department." Va. Code § 63.2-1605(B) (emphasis added).

13.  A report is deemed valid if it meets all of the following criteria:

   i.    The subject, or victim, of the report is an "adult;"

   ii.   The report concerns a specific adult, and there is enough information to locate the adult;

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

3

   iii. The report describes the circumstances of the alleged abuse, neglect, or exploitation; and

   iv. The local department receiving the report is the local department of jurisdiction.

*Id.*; 22 VAC 30-100-20(C)(4).

  14. An investigation shall be initiated within 24 hours of the department's receipt of the report. Va. Code § 63.2-1605(B); 22 VAC 30-100-20(D). The purpose of the APS investigation "is to determine whether the adult alleged to be abused, neglected, or exploited or at risk of abuse, neglect, or exploitation is in need of protective services and, if so, to identify those services." 22 VAC 30-100-20(D).

  15. The investigation of the report "shall" be "thorough," *"shall include a visit and private interview with the adult alleged to be abused, neglected, or exploited,"* and "shall include consultation with others who may have knowledge or information about the report." 22 VAC 30-100-20(E)-(G) (emphasis added).

  16. "If a local department is denied access to an adult for whom there is reason to suspect the need for adult protective services, then the local department may petition the circuit court for an order allowing access or entry or both," and the court may enter an order permitting such access or entry a showing of good cause supported by an affidavit. Va. Code § 63.2-1605(E).

  17. Moreover, "[a]ll law-enforcement departments and other state and local departments, agencies, authorities and institutions shall cooperate with each adult

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

protective services worker of a local department in the detection, investigation and prevention of adult abuse, neglect and exploitation." Va. Code § 63.2-1606(D).

18.     For the reasons that follow, the plaintiffs' Complaint must dismissed because (i) the form of the Complaint is legally deficient and fails to conform to the requirements of the Rules of the Supreme Court of Virginia; (ii) the Complaint constitutes a misjoinder of parties plaintiff; (iii) the factual allegations contained therein fail, as a matter of law, to state against the defendant a claim upon which any relief can be granted; and (iv) each of the claims the plaintiffs attempt to assert against the defendant is barred by the doctrine of quasi-judicial immunity.

## II.     MOTION TO DISMISS

The defendant comes by counsel, pursuant to Rule 3:2 of the Supreme Court of Virginia, as amended, and other applicable law, and for her motion to dismiss the plaintiffs' Complaint states as follows:

1.     In their Complaint, the three named plaintiffs join together in a single action to assert against the defendant four claims arising out of the APS investigation.

2.     The plaintiffs request various forms of relief, including "actual and punitive damages to be proved at trial but not less than" certain sums. (Compl., p. 14).

3.     Rule 3:2 of the Supreme Court of Virginia mandates that "[e]very complaint requesting an award of money damages must contain an ad damnum clause stating the amount of damages sought." Va. Sup. Ct. R. 3:2(c)(ii).

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

130

4.      Here, the plaintiffs' Complaint is deficient and fails to conform to the requirements of Rule 3:2 because it does not "contain an ad damnum clause stating the amount of damages sought" by the plaintiffs.

5.      Consequently, the Court should grant the defendant's motion and dismiss the Complaint in its entirety with prejudice.

For the foregoing reasons, the defendant respectfully requests that the Court enter an Order (1) granting her motion to dismiss; (2) dismissing with prejudice the Complaint in its entirety; (3) denying any motion for leave to file an Amended Complaint that may be filed by the plaintiffs; (4) awarding to the defendant her costs and expenses incurred in obtaining the entry of the Order, including, where applicable, her reasonable attorneys' fees; and (5) granting the defendant such other and further relief as the Court may deem necessary and appropriate.

### III.      MOTION TO DROP PARTIES PLAINTIFF

Without waiving her aforesaid motion to dismiss, and specifically reserving the right to rely upon the same, the defendant comes by counsel pursuant to Virginia Code § 8.01-5, as amended, and other applicable law, and moves this Court for the entry of an order dropping Donovan and Moore from this action as parties plaintiff.  In support of her motion, the defendant states as follows:

1.      In their Complaint, the three plaintiffs combine to attempt to assert various claims against the defendant and others arising out of the APS investigation.

2.      In Virginia, the trial court has the inherent authority to consolidate separately filed actions for purposes of discovery and/or trial. *See Clark v. Kimnach*, 198

JOHNSON, AYERS
& MATHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

Va. 737, 745 (1957). However, the authority to consolidate separately filed *actions* does

not allow for the consolidation of the *parties*, and thus, the joinder of multiple plaintiffs

in a single action is a misjoinder, absent a statute or rule of court authorizing same. *See*

*Cawlo v. Rose Hill Reserve HOA*, 106 Va. Cir. 235, *8 (Fairfax Co., 11/6/2020) (*citing Juan*

*Ortiz v. Ronald E. Barrett*, 222 Va. 118, 125-126 (1981)).

3.     Under Virginia's Multiple Claimant Litigation Act, Va. Code Ann. § 8.01-

267, *et seq.*, "[s]ix or more parties may be joined initially as plaintiffs in a single action if

their claims involve common issues of fact and arise out of the same transaction or

occurrence or the same series of transactions or occurrences." Va. Code Ann. § 8.01-

267.5.

4.     "While the General Assembly has the authority to create procedures that

will allow for the joinder of six or more parties, the court does not have the authority to

do the same with the joinder of less than six parties absent a rule of court." *Cawlo*, 106

Va. Cir. 235 (Fairfax Co., 11/6/2020).

5.     Here, there are only three plaintiffs named in the Complaint—not six or

more. Thus, the three plaintiffs here have improperly joined together in a single action

less than six plaintiffs without a statute or rule of court permitting same.

6.     "[W]henever … misjoinder [of parties] shall be made to appear by

affidavit or otherwise, … parties misjoined may be dropped by order of the court at any

time as the ends of justice may require." Va. Code Ann. § 8.01-5(A). Misjoinder of

parties should be raised by a motion to drop the parties improperly joined. *Powers v.*

*Cherin*, 249 Va. 33, 35 (1995).

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

7

7.    In light of the foregoing, the Court should grant the defendant's motion and drop Donovan and Moore from this action as parties plaintiff.

Wherefore, the defendant respectfully requests that this Court enter an Order (1) granting her motion to drop parties plaintiff; (2) dropping Donovan and Moore from this action as parties plaintiff; (3) granting to the defendant her costs and expenses incurred in obtaining the order, including her attorney's fees, that the Court finds reasonable; and (4) granting to the defendant such other and further relief as the Court may deem necessary and appropriate in furtherance of her motion.

IV.    **MOTION CRAVING OYER**

Without waiving her aforesaid motion to dismiss and motion to drop parties plaintiff, and specifically reserving the right to rely upon the same, the defendant comes by counsel, pursuant to applicable law, and craves oyer of the (i) "petition to arrest and detain Cruz, and to search the Plaintiffs' home" referenced in paragraph 11 of the Complaint ("the petition") and (ii) the "local court order" (and, to the extent that it is a separate and distinct document from the aforementioned "local court order," "the 'search' order") referenced in paragraphs 3, 37, and 47 of the Complaint ("the order"). In support of her motion, the defendant states as follows:

1.    In their Complaint, the plaintiffs attempt to assert against the defendants claims arising out of the APS investigation, including claims of conspiracy and defamation.

2.    In furtherance of their claims against Combs, the plaintiffs allege that in the course of the APS investigation, Combs advanced the conspiracy and defamed Cruz

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

133

when she (i) filed in "this Court" a "petition to arrest and detain Cruz, and to search the Plaintiffs' home" and (ii) "achieved a local court order to search the home of the Plaintiffs and to detain, arrest, and interview Plaintiff Cruz."[2] (Compl., ¶ 3 and 11).

3.　　　However, the plaintiffs did not attach the petition or the order as exhibits to the Complaint.

4.　　　"[T]he motion craving oyer has been, since the early days of the common law, a remedy afforded to a litigant who has been sued on a claim based upon a written document mentioned in a claimant's pleading but not made a part of the record. *Byrne v. City of Alexandria*, 298 Va. 694, 700 (2020). The motion is used to force a party to place documents mentioned in the pleadings, but not attached thereto, within the court record. *Smith v. Wolsiefer*, 119 Va. 247, 250 (1916). A defendant can crave oyer of all documents that form the basis of the plaintiff's claim, *Spiller v. James River Corp.*, 32 Va. Cir. 300 (1993), because "a litigant has no right to put blinders on the Court and attempt to restrict its vision to only such parts of the record as the litigant thinks tend to support his view." *Culpeper National Bank v. Morris*, 168 Va. 379, 382-83 (1937). Thus, a motion

---

[2] The undersigned strongly suspects that the petition is a petition and affidavit authorized by Code § 63.2-1605(E) to be filed in the circuit court when a local department is denied access to an adult for whom there is reason to suspect the need for adult protective services and has, therefore, been unable to fulfill the mandate to interview said adult, imposed by 22 VAC 30-100-20(F). Combs filed such a petition and affidavit in the course of her APS investigation, and the plaintiffs correctly allege in their Complaint that the relief requested by the defendant in the petition was granted. (*See, e.g.*, Compl., ¶ 37) (alleging that the defendants "secure[d] the order"). Thus, the undersigned believes that the order is the order entered by this Court, granting the petition filed by Combs. However, shortly after the order granting the petition was entered, a second order was entered in those proceedings, sealing the Court's file. Thus, at this time, the undersigned is not able to obtain a copy of the order. In the event that the Court grants the defendant's motion craving oyer of the order and, by operation of law, the contents of the petition and affidavit become a part of the plaintiffs' Complaint for purposes of the defendant's demurrer and special plea in bar, *see Ward's Equip. v. New Holland N. Am.*, *infra*, 254 Va. 379 (1997), the defendant would respectfully request the opportunity to supplement or amend her demurrer and special plea in bar to address the information contained in the documents, should she be so inclined.

JOHNSON, AYERS
& MATHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

9

134

craving oyer should be granted where the missing document is "essential" to the plaintiff's claim. *Byrne*, 298 Va. at 700.

5.    Combs craves oyer of the petition and order because they are (i) expressly mentioned in the plaintiffs' Complaint, (ii) relied upon by the plaintiffs for, are essential to, and form the basis of the claims they attempt to assert against the defendant in the Complaint, and (iii) not attached as exhibits to the Complaint.

For the foregoing reasons, the defendant respectfully requests that this Court enter an Order (1) granting her motion craving oyer; (2) requiring the plaintiffs to produce, and to place into the record by filing with the Court,  true, accurate and complete copies of the petition and the order; (3) awarding to the defendant her costs incurred in preparing, filing and arguing her motion, including, where applicable, her reasonable attorney's fees; and (4) granting to the defendant such other and further relief as the Court may deem reasonable, necessary and appropriate.

## V.    DEMURRER

Without waiving her aforesaid motion to dismiss, motion to drop parties plaintiff and motion craving oyer, and specifically reserving the right to rely upon the same, the defendant comes by counsel, pursuant to Virginia Code § 8.01-273, as amended, and other applicable law, and for her demurrer to each of the four claims the plaintiffs attempt to assert against her in the Complaint states as follows:

1.    "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Glazebrook v. Board of Sup'rs of Spotsylvania Co.*, 266 Va. 550, 554 (2003).  Accordingly, the court accepts as true all properly pleaded facts and "all

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

inferences fairly drawn from those facts." *Collett v. Cordovana*, 290 Va. 139, 144 (2015). But a demurrer does not admit the correctness of a pleader's conclusions of law. *Lewis v. Kei*, 281 Va. 715, 723 (2011). Moreover, the factual allegations in the complaint "must be made with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment." *A.H. by next friends C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 613 (2019) (citation and internal quotations omitted). Furthermore, the inferences drawn from the facts must be reasonable, *Id*, and not "forced, strained, or contrary to reason." *Sweely Holdings, LLC v. SunTrust Bank*, 296 Va. 367, 371 (2018).

2.      When a demurrant's motion craving oyer has been granted, the court in ruling on the demurrer may properly consider the facts alleged as amplified by any written agreement added to the record on the motion. *Ward's Equip. v. New Holland N. Am.*, 254 Va. 379, 382 (1997) (citing *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 398, 337 (1985)). "Furthermore, ... a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." *Id.*, at 382-383 (citing *Fun v. Virginia Military Inst.*, 245 Va. 249, 253 (1993)).

3.      In their Complaint, the plaintiffs attempt to assert against the defendant (i) a claim of civil conspiracy pursuant to Virginia Code §§ 18.2-499 and 500, (ii) a claim of defamation, (iii) a claim of insulting words, pursuant to Virginia Code § 8.01-45, (iv) a claim of racial and ethnic harassment, pursuant to Virginia Code § 8.01-42.1.

4.      The plaintiffs' Complaint is rife with inflammatory, salacious, and conclusory allegations and allegations based solely "upon information and belief,"

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

neither of which should be considered for purposes of the defendant's demurrer. *Lewis, supra,* 281 Va. at 723 (stating that conclusory allegations not considered for purposes of demurrer); *Early v. HP/Standardsville, Inc.,* 81 Va. Cir. 181, *2 (Greene Co., 9/14/2020) (holding that allegations in a complaint predicated upon "information and belief are not substitutes for pleaded facts"); *see also Lowe's Island v. NVKettler,* 1991 WL 835182, *8 (Loudon Co., 9/23/1991) (noting that allegations based "upon information and belief" always raise a question in the mind of the trial court of the extent of the pleader's knowledge of facts; it "is even more questionable when the allegations ... are as much conclusory as factual;" and "it is certainly arguable that [such allegations do] not meet the 'well grounded in fact' requirement of Section 8.01-271.1.")

     5.    When the conclusory and other legally insufficient allegations for purposes of demurrer are excised from the Complaint, the remaining *factual* allegations pertaining to Combs are benign and consist of the following:

- Combs "is a manager with Shenandoah Valley Social Services and supervises the provisions of 'Adult Protective Services' in Augusta County, Virginia," (Compl., ¶ 23);

- Cruz lives with Donovan and Moore at their residence in Fishersville, Virginia, and he "has been cared for and supported by them since leaving Florida after his brother's arrest and mother's death,"[3] (Compl., ¶ 19);

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

---

[3] The plaintiffs do not explicitly allege in their Complaint, here, that Cruz was an adult at the time that APS received the report about Cruz in January 2021, but that fact must be inferred from the caption of the Complaint, inasmuch as there is no indication that Cruz is suing by his next friend, which is how a minor may sue in Virginia. *See* Va. Code Ann. § 8.01-8; *see also Herndon v. St. Mary's Hosp., Inc.,* 266 Va. 472 (2003). Moreover, in a verified Complaint filed in this Court by the same three plaintiffs in a separate

- On January 30, 2021, Defendant Chapman made a report of abuse to Combs about Cruz, including that Chapman had met and spoken with Cruz, Cruz "was mentally disabled, or as Defendant Chapman described him, 'retarded,'" and Cruz "had been kidnapped, drugged, imprisoned, and exploited"[4] (Compl., ¶¶ 7 and 28);

- On February 2, 2021, Combs and an APS co-worker appeared at plaintiffs' residence and business offices and "delivered letters referencing Chapman's abuse accusations ... and demanded to meet with Plaintiffs to investigate the claims," (Compl., ¶ 34); and

- On an undisclosed date, Combs filed "a petition to arrest and detain Cruz, and to search the Plaintiffs' home" and "secure[d] a court order to search Cruz's home, arrest him, and force a conservatorship upon him," (Compl., ¶¶ 11 and 37).

6.    The plaintiffs do not allege that Cruz was ever, in fact, arrested, detained, or questioned, or that their home was ever, in fact, searched, in conjunction with the

---

action styled *Zachary Cruz, Micheal Donovan, Richard Moore and Samuel Orlando v. Lindsay Combs*, case no. CL21002194-00 ("the Verified Complaint"), Cruz, Donovan, and Moore allege that Cruz attained the age of majority in February 2018. (Verified Compl., ¶ 48). Curiously, the Verified Complaint also contains many more factual allegations that the plaintiffs chose not to include in the Complaint filed herein, such as background information about Cruz, his family and legal troubles prior to moving to Virginia, the APS investigation, and the defendant's repeated and unheeded requests to interview Cruz, the alleged victim of the abuse, in the course of that investigation. (Verified Compl., ¶¶ 10, 30, 37, 41-44, 46, 53, 55-56, and 60).

[4] The plaintiffs allege that Defendant Chapman's report to Combs about Cruz on January 30 was "knowingly false." (Compl., ¶ 27). They also allege that Combs "knew, or quickly learned, that Defendant Chapman's information was false, but chose to advance the investigation anyway" and that "when [she] learned that the allegations were completely bogus, she continued to engage in the conspiracy,"(Compl., ¶¶ 8 and 29), but they do not allege any facts to support these conclusory allegations, and the Court should disregard same when considering the defendant's demurrer.

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

13

APS investigation or the order allegedly "secured" by Combs in the course thereof.  In fact, the plaintiffs affirmatively allege that the "'search order' was never executed." (Compl., ¶ 47).

7.     For the reasons that follow, the actual factual allegations contained in the plaintiffs' Complaint are deficient and fail, as a matter of law, to state against the defendant a claim upon which any relief can be granted.

**A. Count I:  Civil Conspiracy.**

8.     In Count I of the Complaint, the plaintiffs attempt to assert against the defendants a claim of civil conspiracy, and they rely upon an alleged violation of Virginia Code § 18.2-499 as the basis of their claim.

9.     A violation of Virginia Code § 18.2-499 is a criminal act, punishable as a Class 1 misdemeanor.  That statute states in pertinent part, the following:

> Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act, shall be jointly and severally guilty of a Class 1 misdemeanor.  Such punishment shall be in addition to any civil relief recoverable under § 18.2-500.

10.     Virginia Code § 18.2-500 provides a civil remedy for the violation of § 18.2-499.  It states in pertinent part, as follows:

> Any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499, may sue therefor and recover three-fold damages by him sustained, and the costs of suit, including a reasonable fee to

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

plaintiff's counsel, and without limiting the generality of the term "damages" shall include loss of profits.

11.    These two code provisions were once codified as part of the antitrust laws of the Commonwealth, evidencing that they are designed to cover only business matters, not personal ones. In 1964, the General Assembly removed the provisions from the antitrust statutes and placed them in the criminal code, imposing much greater sanctions. *See Andrews v. Ring*, 266 Va. 311, 319 (2003); *Nationwide Mut. Fire Ins. Co. v. Jones*, 577 F.Supp. 968 (W. D. Va. 1984).

12.    The Virginia Supreme Court has concluded that these statutes do not apply to personal interests, only business interests. For example, the *Andrews* Court held that these statutes do not apply to claims of injury to personal reputation and employment interests. 266 Va. at 319.

13.    Moreover, federal courts in Virginia applying Virginia law have reached the same conclusion. In *Nationwide Mut. Fire Ins. Co. v. Jones*, 577 F.Supp. 968, 971 (W. D. Va. 1984), the court found that the conspiracy statutes were "inapplicable to one isolated incident in which a combination of persons defrauded a company for their own personal enrichment." *See also Warner v. Buck Creek Nursery, Inc.*, 149 F.Supp.2d 246 (W. D. Va. 2001) (noting that employment interests and future business interests do not fall within the scope of the civil conspiracy statutes); *Campbell v. Board of Supervisors*, 553 F. Supp. 644, 645 (E. D. Va. 1982) (holding that Code § 18.2-500, which created the civil remedy, is aimed at conduct which injures a business, not a personal interest).

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

140

14.     To the extent that the plaintiffs' Complaint attempts to assert a claim against the defendant for injury to the personal reputations or employment interests of the individual plaintiffs, such claims are invalid under Va. Code §§ 18.2-499 and 18.2-500 and must be dismissed with prejudice.

15.     Virginia Code §§ 18.2-499 and 500 require more than mere conclusory allegations in order to state a claim—allegations that merely track the language of the statute are insufficient as a matter of law to state a claim. *Kayes v. Keyser*, 72 Va. Cir. 549, 552 (Charlottesville, 8/8/2007).

16.     Plaintiffs must allege: "(1) concerted action; (2) legal malice; and (3) causally related injury." *See Allen Realty Corp. v. Holbert*, 111 Va. 441, 449 (1984). "Concerted action" requires a plaintiff to sufficiently allege facts to establish that the defendant "combined, associated, agreed, mutually undertook, or concerted together" with someone else in the injurious conduct. Va. Code § 18.2-499; *Simmons v. Miller*, 261 Va. 561, 578 (2001).

17.     Here, the plaintiffs' factual allegations, taken as true, would establish that (i) the defendant received a report from Defendant Chapman on January 30, 2021, stating that Cruz was mentally disabled and had been kidnapped, drugged, imprisoned, and exploited; (ii) two days later, the defendant delivered letters to the plaintiffs' residence and business addresses, referencing the report of abuse and demanding to meet with the plaintiffs to investigate the report; and (iii) the defendant filed a petition and secured a court order, permitting her to enter the plaintiffs' home and to interview Cruz.

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

141

18.     Notwithstanding the plaintiffs' numerous conclusory and legally insufficient allegations to the contrary, the foregoing factual allegations cannot be fairly read to assert that the defendant "conspired" with any of the other co-defendants to harm the business interests of the plaintiffs. At best, these allegations, if proved, would merely establish that the defendant took legally permissible, if not mandated, actions in order to comply with her legal duty to determine whether the report she had received from Defendant Chapman about Cruz was "valid."

19.     In addition, in order to state a viable claim for statutory or common law conspiracy, the plaintiffs must allege an unlawful act or an unlawful purpose, because there can be no conspiracy to do an act which the law allows. *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402 (1985).

20.     Here, when the defendant received the report about Cruz, she was legally required to "determine the validity of such report." Va. Code § 63.2-1605(B).  In order to determine whether the report was "valid," the defendant had to determine whether Cruz was an "adult" for purposes of adult protective services.   Id.; 22 VAC 30-100-20(C)(4). And because Cruz was over 18 years of age but not yet 60, the defendant had to determine whether Cruz was "incapacitated." Va. Code §§ 63.2-1603 and 1605(A); 22 VAC 30-100-10. "Incapacitated" means "any adult who is impaired by reason of mental illness, intellectual disability, physical illness or disability, advanced age or other causes to the extent that the adult lacks sufficient understanding or capacity to make, communicate or carry out responsible decisions concerning his or her well-being." Va. Code § 63.2-1603; 22 VAC 30-100-10.  Thus, before the defendant could determine if the

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

17

report concerning Cruz was "valid," she had to first interview him to determine if Cruz met the definition of "incapacitated."

21.     Moreover, the defendant was authorized by statute to petition the circuit court for an order allowing access to Cruz or entry to his residence, or both, in order to comply with her statutory duty to determine whether the report about him was valid.[5] Va. Code § 63.2-1605(E).

22.     Thus, the actions allegedly taken by the Combs in furtherance of the duties imposed upon her as an APS investigator by applicable law are legally authorized, if not mandated; therefore, as a matter of law, they cannot form the basis of a claim of conspiracy. *Hechler Chevrolet, Inc.*, 230 Va. at 402.

23.     Consequently, this Court should sustain the defendant's demurrer and dismiss Count I as to her with prejudice.

**B. Count II: Defamation.**

24.     In Count II of the Complaint, the plaintiffs attempt to assert against Combs and others a claim of defamation.

25.     In furtherance of their claim, the plaintiffs rely upon the defendants' alleged reference at various times to Cruz as "retarded." (*See* Compl., ¶¶ 64-67).

26.     As to Combs, specifically, the plaintiffs allege that she (i) "included Defendant's Chapman's accusation, that Cruz was 'retarded', in a Court filing" and (ii)

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

---

[5] Interviewing Cruz here was necessary to try to validate the report of abuse.  However, once a report of abuse is validated, an interview of the alleged victim is mandated as part of the ensuing investigation. 22 VAC 30-100-20(F).

"[u]pon information and belief, [she] repeated the ridiculous assertion that Cruz was 'retarded' to her supervisors with the Commonwealth of Virginia." (Compl., ¶¶ 66-67).

27.    Virginia makes no distinction between actions for libel and slander. *Shupe v. Rose's Stores, Inc.*, 213 Va. 374, 375–76 (1972). In Virginia, when a plaintiff alleges defamation by publication, he or she must plead and prove "1) publication 2) of a false 3) defamatory statement 4) concerning the plaintiff." *Gazette, Inc. v. Harris*, 229 Va. 1, 37 (1985); *accord Tharpe v. Saunders*, 285 Va. 476, 480 (2013)

28.    An "actionable" statement is both false and defamatory. *Id.* at 481.

29.    For a statement to be actionable, it must "have a provably false factual connotation and thus [be] capable of being proven true or false." *Cashion*, 286 Va. 327, 336 (2013) (internal quotation marks omitted); *accord Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1288 (4th Cir.1987) ("[T]he verifiability of the statement in question [is] a minimum threshold issue. If the defendant's words cannot be described as either true or false, they are not actionable.")  Thus, true statements do not support a cause of action for defamation. *American Communications Network, Inc. v. Williams*, 264 Va. 336, 337 (2002), nor do pure expressions of opinion, because such statements cannot be objectively characterized as true or false. *Jordan v. Kollman*, 269 Va. 569, 575-576 (2005.)

30.    "Defamatory" words are those "tending so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."  *Schaecher v. Bouffault*, 290 Va. 83, 91-92 (2105) (citation and internal quotation marks omitted).  "Although varying circumstances

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

144

often make it difficult to determine whether particular language is defamatory, it is a general rule that allegedly defamatory words are to be taken in their plain and natural meaning and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used." *Carwile,* 196 Va. at 7.

31.     As a matter of law, the factual allegations contained in the plaintiffs' Complaint fail to state against Combs a claim of defamation on behalf of Donovan and Moore because the alleged defamatory statements were about Cruz—not either of them. *Gazette, Inc., supra,* 229 Va. at 37; *accord Dean v. Dearing,* 263 Va. 485, 488 (2002) (holding that a pleading for defamation must allege or otherwise make apparent on the face of the pleading that the alleged defamatory statements are "of and concerning" the plaintiff).

32.     Furthermore, Cruz can have no claim of defamation against Defendant Combs for "includ[ing] Defendant's Chapman's accusation, that Cruz was 'retarded', in a Court filing" because as a matter of law, any such statement made by the defendant about Cruz's mental capacity in the alleged "Court filing" is protected by the doctrine of absolute, or judicial, privilege. *Lindeman v. Lesnick,* 268 Va. 532 (2004).

33.     In *Lindeman,* the Court laid out the parameters of the immunity afforded by the rule and the underlying rationale it as follows:

> [T]he maker of an absolutely privileged communication is accorded complete immunity from liability even though the communication is made maliciously and with knowledge that it is false. *Spencer v. Looney,* 116 Va. 767, 774, 82 S.E. 745, 747 (1914). Absolute privilege, sometimes called judicial

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

20

145

privilege, is broad in scope and applies to communications made in proceedings pending in a court or before a quasi-judicial body. *Penick v. Ratcliffe*, 149 Va. 618, 628, 140 S.E. 664, 667 (1927). If the communication is made in such a judicial proceeding, it need only be relevant and pertinent to the case to be protected by the privilege. *Donohoe Construction Co. v. Mount Vernon Assocs.*, 235 Va. 531, 539, 369 S.E.2d 857, 861 (1988). "The reason for the rule of absolute privilege in judicial proceedings is to encourage unrestricted speech in litigation." *Id.* at 537, 369 S.E.2d at 860. In addition, absolute privilege is extended to statements made in the course of judicial proceedings because of the safeguards that exist in such proceedings, including liability for perjury and the applicability of the rules of evidence. *Lockheed Information Management Systems Co. v. Maximus*, Inc., 259 Va. 92, 101, 524 S.E.2d 420, 424–25 (2000).

268 Va. at 537.

34.     Here, the plaintiffs' own factual allegations, if proved, would establish that any statement made by Combs about Cruz's mental capacity in the "Court filing" was "relevant and pertinent" to her APS investigation, and therefore, absolutely privileged as a matter of law because that investigation necessarily involved a determination as to whether Cruz was "incapacitated." Indeed, under the facts alleged, any such statement would be absolutely privileged, even if it were false and maliciously made. *Id.* (citing *Spencer v. Looney,* 116 Va. 767, 774 (1914)).

35.     The plaintiffs' allegation predicated "upon information and belief" that Combs "repeated the ridiculous assertion that Cruz was 'retarded' to her supervisors with the Commonwealth of Virginia,"(Compl., ¶¶ 66) is improper, lacks any actual factual support, and should not be considered for purposes of the defendant's demurrer. *Lewis, supra,* 281 Va. at 723; *Early, supra,* 81 Va. Cir. 181, *2.

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

36.     However, even if this legally deficient allegation were considered, the plaintiffs still would fail to state a claim because as a matter of law any such statements by the defendant to her supervisors and co-workers would be protected by the doctrine of qualified privilege, which "protects a communication from allegations of defamation if made in good faith, to and by persons who have corresponding duties or interests in the subject of the communication." *Government Micro Resources, Inc. v. Jackson*, 271 Va. 29, 43 (2006) (citation omitted).

37.     Finally, even if the alleged statements were not privileged, the plaintiffs' factual allegations nevertheless fail to state against Combs a claim of defamation because (i) any statement that Cruz was "retarded" made in the context of a report of abuse to, and received by, APS is a matter of professional opinion as opposed to fact, and thus, not actionable as a matter of law, and/or (ii) any recitation by Combs, in a court filing or to her supervisors, of the statements allegedly made to her by Defendant Chapman during his alleged report of abuse of Cruz to APS was a true and accurate recitation, and thus, is not defamatory as a matter of law.

38.     Consequently, this Court should sustain the defendant's demurrer and dismiss Count II as to her with prejudice.

C. <u>Count III:  Insulting Words (Va. Code § 8.01-45).</u>

39.     In Count III of the Complaint, the plaintiffs attempt to assert against Combs and others a claim for a violation of Virginia Code § 8.01-45, commonly referred to as "the insulting words statute."

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

22

40.     That code section provides that "[a]ll words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." Va. Code Ann. § 8.01-45.

41.     The statute was originally enacted as an anti-dueling statute. *W.T. Grant Co. v. Owens*, 149 Va. 906 (1928).  Although the statute's original purpose is obsolete, it continues today to "prevent breaches of the peace, to discourage offensive and excessive freedom in the use of that unruly member, the tongue, to inflict punishment … by subjecting those who are so hasty of temper and inconsiderate of the feelings of others as to insult them to such actual and punitive damages as may be awarded by a jury." *Hines v. Gravins*, 136 Va. 313 (1922), *cert. denied*, 265 U.S. 583 (1924).

42.     The statutory cause of action for insulting words essentially has been assimilated by the common law of defamation, with two exceptions:  (i) no publication is necessary to sustain an action under the statute, and (ii) the plaintiff must show that the words used were such as to "provoke violence or breach of the peace."  *See Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 6 (1954) (holding "[a]n action for insulting words under [the predecessor statute] is treated precisely as an action for slander or libel … with one exception, namely, no publication [to a third party] is necessary"); *see also Allen & Rocks, Inc. v. Dowell*, 252 Va. 439, 443 (1996) (holding that "[g]iven the plain language of Code § 8.01–45, … the plaintiff was required to prove, and failed to prove, that the words [the defendant] used … tended to violence or breach of the peace"); *see also Jarrett v. Goldman*, 67 Va. Cir. 361, *12 (Portsmouth, 5/31/2005) (noting that the claim "under the insulting words statute has always been implemented as an action for defamation,

but there are two exceptions to the normal defamation requirements: no proof of publication is necessary, and the words used must be provocative").

43. Thus, the Fourth Circuit applying Virginia law has held as a matter of law that even though words might be insulting in nature, when they are made in the context of an investigation and are not delivered in a manner that would "tend to violence and breach of the peace," they are not actionable under the statute. *Dwyer v. Smith*, 867 F.2d 184, 196 (4th Cir. 1989) (affirming district court's directed verdict for defendant police officers where defendants' written statements that plaintiff, a fellow officer, was untruthful and one defendant called her a liar on a public street were not actionable).

44. As with their claim of defamation, in furtherance of their statutory claim against Combs the plaintiffs rely on their allegations that she included Defendant's Chapman's accusation that Cruz was "retarded" in a Court filing and "upon information and belief" she repeated Chapman's statement to her supervisors. (Compl., ¶¶ 66-67, and 84-85).

45. As a matter of law, the factual allegations contained in the plaintiff fail to state a claim under the statute on behalf of Donovan and Moore because the alleged "insult" was directed only at Cruz—not either of them. *Gazette, Inc., supra*, 229 Va. at 37.

46. Likewise, as a matter of law Cruz has no claim against Combs under the statute because the plaintiffs' own factual allegations, taken as true, establish that Combs merely repeated the report of abuse made to her by Defendant Chapman in the course of an APS investigation. *Dwyer, supra*, 867 F.2d at 196.

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

24

47.     Furthermore, as a matter of law, any statement made by the defendant about Cruz's mental capacity in the alleged "Court filing" is protected by the doctrine of absolute, or judicial, privilege. *Lindeman, supra,* 268 Va. at 537.

48.     And, again, even if this Court were to consider the plaintiffs' allegation, predicated "upon information and belief," that Combs "repeated" Defendant Chapman's report to her supervisors, (Compl., ¶¶ 66, 84-85), the plaintiffs still would fail to state a claim because as a matter of law any conduct would be protected by the doctrine of qualified privilege. *Government Micro Resources, Inc., supra,* 271 Va. at 43.

49.     Finally, even if the alleged statements were not privileged, the plaintiffs fail to state a claim against Combs under the statute because (i) any statement that Cruz was "retarded" made in the context of a report of abuse to, and received by, APS is a matter of professional opinion as opposed to fact, and thus, is not actionable as a matter of law, and/or (ii) any recitation by Combs, in a court filing or to her supervisors, of the statements allegedly made to her by Defendant Chapman during his alleged report of abuse of Cruz to APS was a true and accurate recitation, and thus, is not defamatory as a matter of law.

50.     Consequently, this Court should sustain the defendant's demurrer and dismiss Count III as to her with prejudice.

**D.  Count IV:  Racial and Ethnic Harassment (Va. Code § 8.01-42.1).**

51.     In Count IV of the Complaint, the plaintiffs attempt to assert against the defendant a claim for a violation of Virginia Code § 8.01-42.1.

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

52.     That code section authorizes an "action  for injunctive relief or civil damages, or both, … for any person who is subjected to acts of (i) intimidation or harassment, (ii) violence directed against his person, or (iii) vandalism directed against his real or personal property, where such acts are motivated by racial, religious, gender, disability, gender identity, sexual orientation, or ethnic animosity."  Va. Code § 8.01-42.1(A).

53.     In their Complaint, the plaintiffs allege that Donovan and Moore are married and that the defendants have referred to Cruz as "retarded," which arguably would implicate the statute on the basis of "sexual orientation" and "disability," respectively.

54.     But, the plaintiffs do not allege that any of the acts allegedly taken by the defendants were motivated by animosity (i) toward Donovan and Moore because of their homosexual orientation or (ii) toward Cruz because of any perceived mental disability.

55.     Instead, the plaintiffs merely allege, in a conclusory fashion, that the defendants' "acts were motivated by racial, religious, or ethnic animosity." (Compl., ¶ 91).  Moreover, the plaintiffs fail to allege their respective racial, religious, or ethnic backgrounds, and they fail to allege facts to establish that the defendants, including Combs, knew of, or were motivated by, any of those factors.

56.     In fact, the only underlying motivating factor actually ascribed to the defendants in the Complaint was "to exact revenge against Plaintiffs for assorted

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

151

perceived wrongs, and for [the plaintiffs'] efforts to rid Augusta County law enforcement and social services of corruption." (Compl., ¶ 57).

57.     Thus, the factual allegations contained the Complaint fail, as a matter of law, to state against Combs a claim under the statute for racial, ethic, or religious harassment, or any other harassment prohibited by the statute.

58.     Consequently, this Court should sustain the defendant's demurrer and dismiss Count IV as to her with prejudice.

59.     The plaintiffs' Complaint otherwise is insufficient and fails, as a matter of law, to state against the defendant any claim or cause of action, cognizable under federal law, Virginia law, or under any other applicable law, upon which any relief can be granted against her, and therefore, each of the four claims asserted against her in the plaintiffs' Complaint should be dismissed with prejudice.

60.     Consequently, this Court should sustain the defendant's demurrer and dismiss the plaintiffs' Complaint in its entirety with prejudice as against this defendant.

Wherefore the defendant respectfully requests that this Court enter an Order (1) sustaining her demurrer; (2) dismissing with prejudice each of the claims asserted against the defendant in the plaintiffs' Complaint; (3) dismissing, with prejudice, the defendant from this action as a party defendant; (4)  awarding to the defendant her costs incurred in the defense herein, including, where appropriate, her reasonable attorney's fees; and (5) granting to the defendant such other and further relief as the Court may deem appropriate.

JOHNSON, AYERS
& MATHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

VI.     SPECIAL PLEA IN BAR: Quasi-Judicial Immunity

27

Without waiving her aforesaid motion to dismiss, motion to drop parties plaintiff, motion craving oyer, and demurrer, and specifically reserving the right to rely upon the same, the defendant comes by counsel, pursuant to applicable law, and for her special plea in bar to the four claims asserted against her in the plaintiffs' Complaint states as follows:

1.     In Virginia, a "plea in bar shortens the litigation by reducing it to a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery." *Tomlin v. McKenzie*, 251 Va. 478, 480 (1996). The moving party carries the burden of proof on that issue of fact. *Id.* (citing *Campbell v. Johnson*, 203 Va. 43, 47 (1961)). "Where no evidence is taken in support of the plea, the trial court, and the appellate court upon review, must rely solely upon the pleadings in resolving the issue presented." *Id.* (citing *Weichert Company of Va., Inc. v. First Commercial Bank*, 246 Va. 108, 109 (1993)).

2.     "When considering the pleadings, 'the facts stated in the plaintiffs' motion for judgment [are] deemed true.'" *Id.* (citing *Glascock v. Laserna*, 247 Va. 108, 109 (1994)). However, as with a demurrer, a court considering a special plea need not accept as true conclusions of law in the complaint, as this is for determination by the Court. *See St. Martin v. McCracken*, 101 Va. Cir. 257, * (Chesapeake, 3/7/2019) (citing *Lyles v. Town of Purcellville*, 49 Va. Cir. 59, 62 (Loudoun Co. 1999) ("A defensive pleading such as a plea in bar ... does not admit the correctness of conclusions of law."))

3.     In their Complaint, the plaintiffs attempt to assert against the defendant (i) a claim of civil conspiracy pursuant to Va. Code §§ 18.2-499 and 500, (ii) a claim of defamation, (iii) a claim of insulting words, pursuant to Va. Code § 8.01-45, (iv) a claim

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

153

of racial and ethnic harassment, pursuant to Va. Code § 8.01-42.1 arising out of the APS investigation.

4.      For the reasons stated in the defendant's demurrer, *supra*, the *factual* allegations contained in the Complaint fail, as a matter of law, to state any claim against the defendant.   However, even if the allegations in the Complaint were sufficient for one or more of the plaintiffs' claims to survive the defendant's demurrer, any such claim nevertheless would be barred by the doctrine of quasi-judicial immunity, for the reasons that follow.

5.      In Virginia, "judges enjoy absolute immunity from civil liability, even when they act maliciously or corruptly or in excess of their jurisdiction." *Harlow v. Clatterbuck*, 230 Va. 490, 493 (1986).  In fact, "[j]udges can be held liable only when they act in 'clear absence of all jurisdiction.'" *Id.* (citing *Johnston v. Moorman*, 80 Va. 131, 142 (1885)).

6.      "Although judicial immunity, in its strictest sense, is limited to judges, quasi-judicial immunity may extend to other public officials acting within their jurisdiction, in good faith and while performing judicial functions."   *Id.* (citations omitted).  The Supreme Court of Virginia has held that this species of immunity applied to a notary public, a city mayor, and a department of corrections aftercare supervisor, a rehabilitative counselor, and a learning center supervisor.  *Yates v. Ley*, 121 Va. 265, 270 (1917) (notary public); *Johnston, supra,* 80 Va. at 139 (mayor); *Harlow, supra,* 230 Va. at 494-496 (department of corrections aftercare supervisor, rehabilitative counselor, and learning center supervisor).

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

29

7.      In *Harlow*, the plaintiff, who had been robbed and whose throat had been cut by a juvenile offender who had been released from indefinite term of commitment by members of the Department of Corrections, brought an action against those employees involved in the decision to release the juvenile. The defendants asserted that they were shielded from civil liability by judicial immunity. The trial court disagreed, and the case was tried to a jury, which returned a verdict for the plaintiff, and the defendants appealed.

8.      The Supreme Court of Virginia reversed the trial court and entered final judgment for the three defendants, finding that the defendants—a department of corrections aftercare supervisor, a rehabilitative counselor, and a learning center supervisor--were entitled to absolute quasi-judicial immunity. 230 Va. at 496.  In so doing, the Court stated the following when discussing the important public policy considerations underpinning its decision:

> It is in the interest of the public and of the committed child that the defendants, and other public officials who perform similar functions, be immune from suits for damages. The threat of such suits against these officials would have a chilling effect on their ability to perform their official duties. These officials must be free to discharge their duties fairly and impartially without fear of personal liability. If they were not shielded with quasi-judicial immunity, it is probable that their judgments would be always against a child's release. Indeed, the threat of civil suits would "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties."

*Id.*, at 495 (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2nd Cir. 1949).

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

30

9.      When determining whether a defendant is entitled to absolute quasi-judicial immunity, the relevant inquiry for the court is whether the defendant was "(1) performing judicial functions, (2) acting within [his or her] jurisdiction, and (3) acting in good faith." *Id.*, at 494.

10.     The Supreme Court of Virginia has adopted the "functional comparability" test established by the United States Supreme Court in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) to make the determination of whether a defendant was "performing a judicial function" for purposes of quasi-judicial immunity. *Id.*, at 494.  Under that test, the court must "ascertain whether the procedure in question shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages." *Id.* When the defendant's duties are more akin to those of a police officer in the enforcement, then it is less likely he or she will satisfy the test. *See Andrews v. Ring*, *supra*, 266 Va. at 325 (holding that defendant building inspector not entitled to quasi-judicial immunity because his duties were "more akin to those of a police officer in the enforcement of laws, rules and regulations, than a prosecutor in the judicial process.")

11.     In *Harlow*, the Court found that because the three department of corrections employee defendants were vested with discretion when determining whether and under what conditions that juvenile offender should be released, they were performing judicial functions similar to courts, probation officers and parole board members, and thus, they satisfied the first prong of the test for quasi-judicial immunity. *Id.*, at 494-495.

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

31

12.     Admittedly, an APS investigator such as the defendant performs investigative duties akin to a police officer, *once a report has been validated and an investigation has been opened.*

13.     However, before an investigation can be opened, the investigator must determine, as a threshold matter, whether the report of abuse is "valid." Va. Code § 63.2-1605(B).   In other words, she must determine whether she has jurisdiction to investigate the report.   Making this initial, threshold determination is akin to the judicial function of a court or tribunal in determining whether it has subject matter jurisdiction over a complaint or claim before it.

14.     Furthermore, where, as here, the alleged victim of the abuse is an adult between 18 and 60 years of age, making this jurisdictional determination is not simply a matter of establishing basic factual information (e.g., the victim's age, circumstances of the alleged abuse, the victim's residence, etc.), but it also involves an assessment of the victim's mental capacity—whether the victim "lacks sufficient understanding or capacity to make, communicate or carry out responsible decisions concerning his or her well-being." Va. Code § 63.2-1603; 22 VAC 30-100-10.   And making that determination requires the exercise of the APS investigator's independent discretion and judgment—much like the determination of the *Harlow* defendants as to whether and under what conditions to release the juvenile offender.  230 Va. at 494.

15.     Thus, the defendant here satisfies the first prong of the test for quasi-judicial immunity.

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

157

16.     The defendant also satisfies the second prong of the test—she was acting within her jurisdiction as an APS investigator.

17.     APS has authority to investigate valid reports of abuse, neglect, or exploitation of an adult. Va. Code § 63.2-1605(B). "Adult" is defined as "any person 60 years of age or older, or any person 18 years of age or older who is incapacitated and who resides in the Commonwealth …." Va. Code § 63.2-1603; 22 VAC 30-100-10.

18.     A report is deemed valid the victim of the report is an "adult;" the report concerns a specific adult, and there is enough information to locate the adult; the report describes the circumstances of the alleged abuse, neglect, or exploitation; and the local department receiving the report is the local department of jurisdiction. 22 VAC 30-100-20(C)(4).

19.     The form of the plaintiffs' Complaint and their own factual allegations, taken as true, establish that when the defendant received the report about Cruz from Defendant Chapman in January 2021, Cruz was eighteen years of age or older and living with Donovan and Moore at their home in Virginia. (*See* Compl., ¶¶ 37, 43, 46 and 48; *see also* FN 3, *supra*).

20.     Moreover, the plaintiffs' factual allegations, taken as true, establish that Defendant Chapman, the individual who allegedly made the report, also claimed that Cruz was "mentally disabled" or "retarded." (Compl., ¶¶ 7 and 28).

21.     Again, in order to establish whether the report about Cruz was valid, the defendant had to determine whether Cruz was "incapacitated" within the meaning of Virginia Code § 63.2-1603 and 22 VAC 30-100-10. Furthermore, the defendant had to

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

33

make her own determination of whether Cruz, the alleged victim, was "incapacitated," regardless of whether he already had or had not been adjudicated incapacitated by a court. *See* 22 VAC 30-100-10.

22.    In other words, "[APS] alone determines [whether a victim is 'incapacitated']" just like the Department of Corrections in *Harlow*, which "alone determine[d] the length of a child's commitment and, if released, the conditions thereof." 230 Va. at 496 (holding as a matter of law that the department of corrections employee defendants were acting within their statutory jurisdiction for purposes of quasi-judicial immunity.)

23.    Thus, here, as in *Harlow*, the defendant was acting within her jurisdiction as an APS investigator as a matter of law

24.    Finally, and notwithstanding the plaintiffs' conclusory allegations to the contrary, the defendant at all times acted in good faith in trying to determine whether she had jurisdiction to investigate the report.

25.    The plaintiffs' own factual allegations, taken as true, establish that the defendant received a complaint of abuse about Cruz on January 30, 2021, and thereafter, she tried to determine whether that report was valid by first delivering letters to the plaintiffs requesting to interview Cruz voluntarily, and then by resorting to a permissible statutory procedure to obtain a lawful court order granting her access to Cruz to interview him.

26.    Consequently, this Court should sustain the defendant's special plea in bar and dismiss the plaintiffs' Complaint in its entirety with prejudice as to her.

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

Wherefore the defendant respectfully requests that this Court enter an Order (1) sustaining her special plea in bar; (2) dismissing with prejudice each of the claims asserted against the defendant in the plaintiffs' Complaint; (3) dismissing, with prejudice, the defendant from this action as a party defendant; (4)  awarding to the defendant her costs incurred in the defense herein, including, where appropriate, her reasonable attorney's fees; and (5) granting to the defendant such other and further relief as the Court may deem appropriate.

<div style="margin-left:40%">

Respectfully,

LINDSAY COMBS

By: _____
Of Counsel

</div>

Brian J. Brydges, Esquire
Virginia State Bar No. 43883
JOHNSON, AYERS & MATTHEWS, P.L.C.
P. O. Box 2200
Roanoke, Virginia 24009
Telephone:   540-767-2042
Facsimile:   540-982-1552
Email:       bbrydges@jamlaw.net
    *Counsel for Defendant*
    *Lindsay Combs*

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing Responsive

Pleadings was mailed or delivered to the following, this 4th day of November 2021:

Amina Matheny-Willard, Esquire
Amina Matheny-Willard, PLLC
999 Waterside Drive, Suite 2525
Norfolk, VA 23510
    *Counsel for Plaintiffs*

Bradley Pollack, Esquire
753 S Main Street
Woodstock, Virginia 22664
    *Counsel for Defendants*
    *Duane Lee Chapman and*
    *Alyssa Chapman*
and

David B. Briggman
7556 Mountain Valley Road
Keezletown, Virginia 22832
    *Defendant, Pro Se*

_____
Brian J. Brydges, Esquire

Filed in the Clerk's Office of the
Circuit Court of Augusta County
Time: 3:00 Date: 11|4|21
TESTE:
_____ Dep. Clk.
Date: _____ 4, 2021

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

36

161

310 First St SW Suite 700
Roanoke VA  24011

Post Office Box 2200
Roanoke VA  24009

www.jamlaw.net
P 540.767.2000
F 540.982.1552

# JOHNSON AYERS & MATTHEWS

## COUNSELORS AT LAW

November 4, 2021

**Via Email and Regular Mail**
*rlandes@vacourts.gov*

Hon. R. Steven Landes
Augusta County Circuit Court
Augusta County Courthouse
1 East Johnson Street
Staunton, VA 24402-0689

RE:   Zachary Cruz, Micheal Donovan, and Richard Moore v. Duane Lee Chapman, Lyssa
      Chapman, David Bayre Briggman, Lindsay Combs, Jane Collins, and John Does 1-8
      Augusta County Circuit Court
      Case No. CL21002251-00

Dear Mr. Landes:

This law firm has been retained to represent Defendant Lindsay Combs in the above civil action pending in the Circuit Court of Augusta County.  Attached to this letter via email are Responsive Pleadings that we are this day filing on behalf of our client. Please stamp the attached copy "filed," and place it among the other papers in your office pertaining to this action.

An original and one copy of the Responsive Pleadings are being placed in the mail to your office today, along with a self-addressed stamped envelope. When the original and copy arrive in your office, I would be much obliged if you could stamp the copy indicating the date on which your office received, and marked "filed," the emailed version, and return the date-stamped copy to me in the self-addressed stamped envelope.

By copy of this letter to counsel of record and to any parties who have appeared *pro se*, I am providing to each of them a true and accurate copy of the enclosed Responsive Pleadings.

Thank you very much for your assistance.

Very truly yours,

JOHNSON, AYERS & MATTHEWS P.L.C.

Brian J. Brydges

BJB/jpt
Enclosure

Brian J. Brydges        540.767.2042        bbrydges@jamlaw.net

162

cc:     Amina Matheny-Willard, Esquire (via email with enclosure)
         Bradley Pollack, Esquire (via email with enclosure)
         David Briggman (via email with enclosure)
         Lindsay Combs (via email and regular mail with enclosure)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## HARRISONBURG DIVISION

| | | |
|---|---|---|
| **Zachary Cruz et al**, | ) | |
| | ) | |
| Plaintiff(s), | ) | Case No. 5:21-cv-00072 |
| | ) | State Court No. CL21002251-00 |
| v. | ) | |
| | ) | **O R D E R** |
| **Duane Lee Chapman et al**, | ) | |
| | ) | |
| Defendant(s). | ) | |

This case was recently removed from the Circuit Court for Augusta County to the United States District Court for the Western District of Virginia at Harrisonburg. This court, finding it necessary and proper to do so, hereby REQUESTS that the original case file in your Court be forwarded to the Clerk of this court at 116 N. Main Street, Room 314, Harrisonburg, Virginia 22802, or submitted through this court's Case Management and Electronic Case Filing system (CM/ECF).

The Clerk is directed to send a copy of this Order to the Clerk of the Circuit Court for Augusta County at P.O. Box 689, Staunton, Virginia 24402-0689.

ENTERED:   November 5, 2021

/s/ *Elizabeth K. Dillon*

United States District Judge

Filed in the Clerk's Office of the
Circuit Court of Augusta County
Time: 2:05 PM   Date: 11/8/21
TESTE:
_____ Dep. Clk.
Date: Nov 8 2021

164