



# Augusta County Circuit Court

## R. STEVEN LANDES, CLERK
1 East Johnson Street
P.O. Box 689
Staunton, Virginia 24402-0689
Phone: 540-245-5321
Fax: 540-245-5318

**CIVIL DIVISION**
540-245-5319

**CRIMINAL DIVISION**
540-245-5016

**COURT DIVISION**
540-245-5321

**ACCOUNTING DIVISION**
540-245-5081

**LAND RECORD DIVISION**
540-245-5320

**PROBATE DIVISION**
540-245-5317

June 8, 2017

Clerk
United States District Court
Western District of Virginia
Harrisonburg Division
116 North Main Street
Harrisonburg, VA 22802

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

NOV 12 2021

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

**RE:    Zachary Cruz, et al v. Duane Lee Chapman, et al**
**Civil Action No. 5:21cv00072/State Court No. CL21002251-00**

Enclosed please find an additional document in regard to the above referenced file, pursuant to an Order entered on November 5, 2021, by the Honorable Elizabeth K. Dillon. This was electronically sent to you on November 8, 2021.  Please find enclosed a copy of the Notice of Electronic Filing.

Please sign and date the enclosed statement showing that you have received the document in your office.  I have enclosed a self-addressed, envelope for your convenience.

Sincerely,

Jean W. Doyle
Deputy Clerk

/jwd
Enclosures

CM/ECF - U.S. District Court:vawd                                    Page 1 of 1

## State Court Records for sc-99999 cases

### U.S. District Court



### Western District of Virginia

### Notice of Electronic Filing

The following transaction was entered by Augusta County Circuit Court, Clerk on 11/8/2021 at 3:14 PM EST and filed on 11/8/2021

**Case Name:**        State Court Records
**Case Number:**      5:21-sc-99999
**Filer:**
**Document Number:** 6

**Docket Text:**
**State Court Records as to 5-21-cv-00072, received from Augusta County Circuit Court case no. CL21002251-00 . (Attachments: # (1) MANUSCRIPT)(Augusta County Circuit Court, Clerk)**

**5:21-sc-99999 Notice has been electronically mailed to:**

**5:21-sc-99999 Notice has been delivered by other means to:**

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1052918722 [Date=11/8/2021] [FileNumber=3906156-0
] [6221be4dd2cd30f4fb369c37bd8c0cefb42ec280d599918fcc8b387c4a515779002
738c82e841ebd5e68729840d2d864ac26719b02be894e1f39223b52c1636d]]
**Document description:** MANUSCRIPT
**Original filename:**n/a
**Electronic document Stamp:**
[STAMP dcecfStamp_ID=1052918722 [Date=11/8/2021] [FileNumber=3906156-1
] [6bb5886e66bf57b0b9a3fc1459d6d01f666126547772806f6234c5f22016dfccf70
9572de25a53093499418a73e17da0cc4e629cc84d757db71b8fed8d2ae9d0]]

<u>VIRGINIA</u>:

## IN THE CIRCUIT COURT OF AUGUSTA COUNTY

| | | |
|---|---|---|
| ZACHARY CRUZ, | ) | |
| MICHEAL DONOVAN, | ) | |
| and | ) | |
| RICHARD MOORE, | ) | |
| | ) | **RESPONSIVE PLEADINGS** |
| Plaintiffs, | ) | |
| | ) | Case No. CL21002251-00 |
| v. | ) | |
| | ) | |
| DUANE LEE CHAPMAN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

For her pleadings in response to the Complaint filed on behalf of the plaintiffs, Zachary Cruz ("Cruz"), Micheal Donovan ("Donovan"), and Richard Moore ("Moore") (collectively, "the plaintiffs"), Defendant Lindsay Combs ("Combs" or "the defendant") comes by counsel, pursuant to Rule 3:8 of the Supreme Court of Virginia, as amended, and other applicable law, and states as follows:

## I.      **INTRODUCTION**

1.      This civil action arises out of a lawful and proper investigation opened by the Shenandoah Valley Department of Social Services, Adult Protective Services unit ("APS") in early 2021 into a report of potential acts of abuse and financial exploitation of Cruz by Donovan and Moore in Augusta County, Virginia ("the APS investigation"), and it is being used by Donovan and Moore as a "sword" in their effort to thwart same.

2.      At the time that the report was received, the defendant was an investigator in, and the supervisor of, the APS unit, and she also was a social worker.

A True and Correct Copy,

Teste: _Jea n   Doyle_ Dep. Clk.
Circuirt Court
County of Augusta, Virginia

3.      The person who made the report also alleged that Cruz might be mentally incapacitated.

4.      In their Complaint, the plaintiffs attempt to assert against Combs and others (i) a claim of civil conspiracy pursuant to Virginia Code §§ 18.2-499 and 500, (ii) a claim of defamation, (iii) a claim of insulting words, pursuant to Virginia Code § 8.01-45, (iv) a claim of racial and ethnic harassment, pursuant to Virginia Code § 8.01-42.1.

5.      The plaintiffs seek an award of injunctive relief, "actual and punitive damages in an amount to be proved at trial but not less than" various sums, and attorney's fees and costs.

6.      The following general, background information concerning APS investigations and procedures will be helpful to the Court's assessment of the defenses raised by Combs herein.[1]

7.      In Virginia, adult protective services "shall" be provided "for adults who are found to be abused, neglected, or exploited and who meet one of the following criteria: (i) the adult is 60 years of age or older or (ii) the adult is 18 years of age or older and is incapacitated." Va. Code § 63.2-1605(A).

8.      "Adult" is defined as "any person 60 years of age or older, or any person 18 years of age or older who is incapacitated and who resides in the Commonwealth ...." Va. Code § 63.2-1603; 22 VAC 30-100-10.

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

---

[1] Some of the pertinent code sections and administrative regulations referenced herein were recently amended, effective July 2021.  The provisions quoted and cited to herein are those that were in effect in February and March 2021, which is when the APS investigation described in the Complaint took place.

9.      "Incapacitated person" means any adult who is impaired by reason of mental illness, intellectual disability, physical illness or disability, advanced age or other causes to the extent that the adult lacks sufficient understanding or capacity to make, communicate or carry out responsible decisions concerning his or her well-being." *Id.*  For purpose of establishing an adult's eligibility for adult protective services, such adult may or may not have been adjudicated incapacitated by a court." 22 VAC 30-100-10.

10.     "Exploitation" means the illegal, unauthorized, improper, or fraudulent use of an adult … or the adult's funds, property, benefits, resources, or other assets for another's profit, benefit, or advantage … or that deprives the adult of his rightful use of or access to such funds, property, benefits, resources, or other assets." *Id.*

11.     Aside from those classes of persons required by statute to report suspected abuse, neglect, or exploitation of an adult, any other person "who suspects" that such abuse, neglect, or exploitation has occurred "may report the matter" to the local department.  Va. Code § 63.2-1606(D).

12.     Once such a report is made, "the local department *shall determine the validity of such report* and shall initiate an investigation within 24 hours of the time the report is received in the local department."  Va. Code § 63.2-1605(B) (emphasis added).

13.     A report is deemed valid if it meets all of the following criteria:

    i.    The subject, or victim, of the report is an "adult;"

    ii.   The report concerns a specific adult, and there is enough information to locate the adult;

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

3

     iii.    The report describes the circumstances of the alleged abuse, neglect, or exploitation; and

     iv.    The local department receiving the report is the local department of jurisdiction.

*Id.*; 22 VAC 30-100-20(C)(4).

14.    An investigation shall be initiated within 24 hours of the department's receipt of the report.  Va. Code § 63.2-1605(B); 22 VAC 30-100-20(D).  The purpose of the APS investigation "is to determine whether the adult alleged to be abused, neglected, or exploited or at risk of abuse, neglect, or exploitation is in need of protective services and, if so, to identify those services." 22 VAC 30-100-20(D).

15.    The investigation of the report "shall" be "thorough," "*shall include a visit and private interview with the adult alleged to be abused, neglected, or exploited,*" and "shall include consultation with others who may have knowledge or information about the report." 22 VAC 30-100-20(E)-(G) (emphasis added).

16.    "If a local department is denied access to an adult for whom there is reason to suspect the need for adult protective services, then the local department may petition the circuit court for an order allowing access or entry or both," and the court may enter an order permitting such access or entry a showing of good cause supported by an affidavit. Va. Code § 63.2-1605(E).

17.    Moreover, "[a]ll law-enforcement departments and other state and local departments, agencies, authorities and institutions shall cooperate with each adult

protective services worker of a local department in the detection, investigation and prevention of adult abuse, neglect and exploitation."  Va. Code § 63.2-1606(D).

18.     For the reasons that follow, the plaintiffs' Complaint must dismissed because (i) the form of the Complaint is legally deficient and fails to conform to the requirements of the Rules of the Supreme Court of Virginia; (ii) the Complaint constitutes a misjoinder of parties plaintiff; (iii) the factual allegations contained therein fail, as a matter of law, to state against the defendant a claim upon which any relief can be granted; and (iv) each of the claims the plaintiffs attempt to assert against the defendant is barred by the doctrine of quasi-judicial immunity.

## II.     MOTION TO DISMISS

The defendant comes by counsel, pursuant to Rule 3:2 of the Supreme Court of Virginia, as amended, and other applicable law, and for her motion to dismiss the plaintiffs' Complaint states as follows:

1.     In their Complaint, the three named plaintiffs join together in a single action to assert against the defendant four claims arising out of the APS investigation.

2.     The plaintiffs request various forms of relief, including "actual and punitive damages to be proved at trial but not less than" certain sums.  (Compl., p. 14).

3.     Rule 3:2 of the Supreme Court of Virginia mandates that "[e]very complaint requesting an award of money damages must contain an ad damnum clause stating the amount of damages sought."  Va. Sup. Ct. R. 3:2(c)(ii).

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

4.    Here, the plaintiffs' Complaint is deficient and fails to conform to the requirements of Rule 3:2 because it does not "contain an ad damnum clause stating the amount of damages sought" by the plaintiffs.

5.    Consequently, the Court should grant the defendant's motion and dismiss the Complaint in its entirety with prejudice.

For the foregoing reasons, the defendant respectfully requests that the Court enter an Order (1) granting her motion to dismiss; (2) dismissing with prejudice the Complaint in its entirety; (3) denying any motion for leave to file an Amended Complaint that may be filed by the plaintiffs; (4) awarding to the defendant her costs and expenses incurred in obtaining the entry of the Order, including, where applicable, her reasonable attorneys' fees; and (5) granting the defendant such other and further relief as the Court may deem necessary and appropriate.

### III.    MOTION TO DROP PARTIES PLAINTIFF

Without waiving her aforesaid motion to dismiss, and specifically reserving the right to rely upon the same, the defendant comes by counsel pursuant to Virginia Code § 8.01-5, as amended, and other applicable law, and moves this Court for the entry of an order dropping Donovan and Moore from this action as parties plaintiff.  In support of her motion, the defendant states as follows:

1.    In their Complaint, the three plaintiffs combine to attempt to assert various claims against the defendant and others arising out of the APS investigation.

2.    In Virginia, the trial court has the inherent authority to consolidate separately filed actions for purposes of discovery and/or trial.  *See Clark v. Kimnach*, 198

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

Va. 737, 745 (1957).  However, the authority to consolidate separately filed *actions* does not allow for the consolidation of the *parties*, and thus, the joinder of multiple plaintiffs in a single action is a misjoinder, absent a statute or rule of court authorizing same.  *See Cawlo v. Rose Hill Reserve HOA*, 106 Va. Cir. 235, *8 (Fairfax Co., 11/6/2020) (*citing Juan Ortiz v. Ronald E. Barrett*, 222 Va. 118, 125-126 (1981)).

3.      Under Virginia's Multiple Claimant Litigation Act, Va. Code Ann. § 8.01-267, *et seq.*, "[s]ix or more parties may be joined initially as plaintiffs in a single action if their claims involve common issues of fact and arise out of the same transaction or occurrence or the same series of transactions or occurrences."  Va. Code Ann. § 8.01-267.5.

4.      "While the General Assembly has the authority to create procedures that will allow for the joinder of six or more parties, the court does not have the authority to do the same with the joinder of less than six parties absent a rule of court."  *Cawlo*, 106 Va. Cir. 235 (Fairfax Co., 11/6/2020).

5.      Here, there are only three plaintiffs named in the Complaint—not six or more.  Thus, the three plaintiffs here have improperly joined together in a single action less than six plaintiffs without a statute or rule of court permitting same.

6.      "[W]henever … misjoinder [of parties] shall be made to appear by affidavit or otherwise, … parties misjoined may be dropped by order of the court at any time as the ends of justice may require."  Va. Code Ann. § 8.01-5(A).  Misjoinder of parties should be raised by a motion to drop the parties improperly joined.  *Powers v. Cherin*, 249 Va. 33, 35 (1995).

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

7.      In light of the foregoing, the Court should grant the defendant's motion and drop Donovan and Moore from this action as parties plaintiff.

Wherefore, the defendant respectfully requests that this Court enter an Order (1) granting her motion to drop parties plaintiff; (2) dropping Donovan and Moore from this action as parties plaintiff; (3) granting to the defendant her costs and expenses incurred in obtaining the order, including her attorney's fees, that the Court finds reasonable; and (4) granting to the defendant such other and further relief as the Court may deem necessary and appropriate in furtherance of her motion.

## IV.      MOTION CRAVING OYER

Without waiving her aforesaid motion to dismiss and motion to drop parties plaintiff, and specifically reserving the right to rely upon the same, the defendant comes by counsel, pursuant to applicable law, and craves oyer of the (i) "petition to arrest and detain Cruz, and to search the Plaintiffs' home" referenced in paragraph 11 of the Complaint ("the petition") and (ii) the "local court order" (and, to the extent that it is a separate and distinct document from the aforementioned "local court order," "the 'search' order") referenced in paragraphs 3, 37, and 47 of the Complaint ("the order"). In support of her motion, the defendant states as follows:

1.      In their Complaint, the plaintiffs attempt to assert against the defendants claims arising out of the APS investigation, including claims of conspiracy and defamation.

2.      In furtherance of their claims against Combs, the plaintiffs allege that in the course of the APS investigation, Combs advanced the conspiracy and defamed Cruz

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

8

when she (i) filed in "this Court" a "petition to arrest and detain Cruz, and to search the Plaintiffs' home" and (ii) "achieved a local court order to search the home of the Plaintiffs and to detain, arrest, and interview Plaintiff Cruz."[2] (Compl., ¶ 3 and 11).

3.      However, the plaintiffs did not attach the petition or the order as exhibits to the Complaint.

4.      "[T]he motion craving oyer has been, since the early days of the common law, a remedy afforded to a litigant who has been sued on a claim based upon a written document mentioned in a claimant's pleading but not made a part of the record. *Byrne v. City of Alexandria*, 298 Va. 694, 700 (2020). The motion is used to force a party to place documents mentioned in the pleadings, but not attached thereto, within the court record. *Smith v. Wolsiefer*, 119 Va. 247, 250 (1916). A defendant can crave oyer of all documents that form the basis of the plaintiff's claim, *Spiller v. James River Corp.*, 32 Va. Cir. 300 (1993), because "a litigant has no right to put blinders on the Court and attempt to restrict its vision to only such parts of the record as the litigant thinks tend to support his view." *Culpeper National Bank v. Morris*, 168 Va. 379, 382-83 (1937). Thus, a motion

---

[2] The undersigned strongly suspects that the petition is a petition and affidavit authorized by Code § 63.2-1605(E) to be filed in the circuit court when a local department is denied access to an adult for whom there is reason to suspect the need for adult protective services and has, therefore, been unable to fulfill the mandate to interview said adult, imposed by 22 VAC 30-100-20(F). Combs filed such a petition and affidavit in the course of her APS investigation, and the plaintiffs correctly allege in their Complaint that the relief requested by the defendant in the petition was granted. (*See, e.g.,* Compl., ¶ 37) (alleging that the defendants "secure[d] the order"). Thus, the undersigned believes that the order is the order entered by this Court, granting the petition filed by Combs. However, shortly after the order granting the petition was entered, a second order was entered in those proceedings, sealing the Court's file. Thus, at this time, the undersigned is not able to obtain a copy of the order. In the event that the Court grants the defendant's motion craving oyer of the order and, by operation of law, the contents of the petition and affidavit become a part of the plaintiffs' Complaint for purposes of the defendant's demurrer and special plea in bar, *see Ward's Equip. v. New Holland N. Am., infra,* 254 Va. 379 (1997), the defendant would respectfully request the opportunity to supplement or amend her demurrer and special plea in bar to address the information contained in the documents, should she be so inclined.

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

craving oyer should be granted where the missing document is "essential" to the plaintiff's claim. *Byrne*, 298 Va. at 700.

5.      Combs craves oyer of the petition and order because they are (i) expressly mentioned in the plaintiffs' Complaint, (ii) relied upon by the plaintiffs for, are essential to, and form the basis of the claims they attempt to assert against the defendant in the Complaint, and (iii) not attached as exhibits to the Complaint.

For the foregoing reasons, the defendant respectfully requests that this Court enter an Order (1) granting her motion craving oyer; (2) requiring the plaintiffs to produce, and to place into the record by filing with the Court,  true, accurate and complete copies of the petition and the order; (3) awarding to the defendant her costs incurred in preparing, filing and arguing her motion, including, where applicable, her reasonable attorney's fees; and (4) granting to the defendant such other and further relief as the Court may deem reasonable, necessary and appropriate.

## V.      DEMURRER

Without waiving her aforesaid motion to dismiss, motion to drop parties plaintiff and motion craving oyer, and specifically reserving the right to rely upon the same, the defendant comes by counsel, pursuant to Virginia Code § 8.01-273, as amended, and other applicable law, and for her demurrer to each of the four claims the plaintiffs attempt to assert against her in the Complaint states as follows:

1.      "A demurrer tests the legal sufficiency of facts alleged in pleadings, not the strength of proof." *Glazebrook v. Board of Sup'rs of Spotsylvania Co.*, 266 Va. 550, 554 (2003).   Accordingly, the court accepts as true all properly pleaded facts and "all

inferences fairly drawn from those facts." *Collett v. Cordovana*, 290 Va. 139, 144 (2015). But a demurrer does not admit the correctness of a pleader's conclusions of law. *Lewis v. Kei*, 281 Va. 715, 723 (2011). Moreover, the factual allegations in the complaint "must be made with sufficient definiteness to enable the court to find the existence of a legal basis for its judgment." *A.H. by next friends C.H. v. Church of God in Christ, Inc.*, 297 Va. 604, 613 (2019) (citation and internal quotations omitted). Furthermore, the inferences drawn from the facts must be reasonable, *Id*, and not "forced, strained, or contrary to reason." *Sweely Holdings, LLC v. SunTrust Bank*, 296 Va. 367, 371 (2018).

2.     When a demurrant's motion craving oyer has been granted, the court in ruling on the demurrer may properly consider the facts alleged as amplified by any written agreement added to the record on the motion. *Ward's Equip. v. New Holland N. Am.*, 254 Va. 379, 382 (1997) (citing *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 398, 337 (1985)). "Furthermore, … a court considering a demurrer may ignore a party's factual allegations contradicted by the terms of authentic, unambiguous documents that properly are a part of the pleadings." *Id.*, at 382-383 (citing *Fun v. Virginia Military Inst.*, 245 Va. 249, 253 (1993)).

3.     In their Complaint, the plaintiffs attempt to assert against the defendant (i) a claim of civil conspiracy pursuant to Virginia Code §§ 18.2-499 and 500, (ii) a claim of defamation, (iii) a claim of insulting words, pursuant to Virginia Code § 8.01-45, (iv) a claim of racial and ethnic harassment, pursuant to Virginia Code § 8.01-42.1.

4.     The plaintiffs' Complaint is rife with inflammatory, salacious, and conclusory allegations and allegations based solely "upon information and belief,"

neither of which should be considered for purposes of the defendant's demurrer. *Lewis, supra,* 281 Va. at 723 (stating that conclusory allegations not considered for purposes of demurrer); *Early v. HP/Standardsville, Inc.,* 81 Va. Cir. 181, *2 (Greene Co., 9/14/2020) (holding that allegations in a complaint predicated upon "information and belief are not substitutes for pleaded facts"); *see also Lowe's Island v. NVKettler,* 1991 WL 835182, *8 (Loudon Co., 9/23/1991) (noting that allegations based "upon information and belief" always raise a question in the mind of the trial court of the extent of the pleader's knowledge of facts; it "is even more questionable when the allegations … are as much conclusory as factual;" and "it is certainly arguable that [such allegations do] not meet the 'well grounded in fact' requirement of Section 8.01-271.1.")

     5.      When the conclusory and other legally insufficient allegations for purposes of demurrer are excised from the Complaint, the remaining *factual* allegations pertaining to Combs are benign and consist of the following:

- Combs "is a manager with Shenandoah Valley Social Services and supervises the provisions of 'Adult Protective Services' in Augusta County, Virginia," (Compl., ¶ 23);

- Cruz lives with Donovan and Moore at their residence in Fishersville, Virginia, and he "has been cared for and supported by them since leaving Florida after his brother's arrest and mother's death,"[3] (Compl., ¶ 19);

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

---

[3] The plaintiffs do not explicitly allege in their Complaint, here, that Cruz was an adult at the time that APS received the report about Cruz in January 2021, but that fact must be inferred from the caption of the Complaint, inasmuch as there is no indication that Cruz is suing by his next friend, which is how a minor may sue in Virginia. *See* Va. Code Ann. § 8.01-8; *see also Herndon v. St. Mary's Hosp., Inc.,* 266 Va. 472 (2003). Moreover, in a verified Complaint filed in this Court by the same three plaintiffs in a separate

- On January 30, 2021, Defendant Chapman made a report of abuse to Combs about Cruz, including that Chapman had met and spoken with Cruz, Cruz "was mentally disabled, or as Defendant Chapman described him, 'retarded,'" and Cruz "had been kidnapped, drugged, imprisoned, and exploited"[4] (Compl., ¶¶ 7 and 28);

- On February 2, 2021, Combs and an APS co-worker appeared at plaintiffs' residence and business offices and "delivered letters referencing Chapman's abuse accusations ... and demanded to meet with Plaintiffs to investigate the claims," (Compl., ¶ 34); and

- On an undisclosed date, Combs filed "a petition to arrest and detain Cruz, and to search the Plaintiffs' home" and "secure[d] a court order to search Cruz's home, arrest him, and force a conservatorship upon him," (Compl., ¶¶ 11 and 37).

6.      The plaintiffs do not allege that Cruz was ever, in fact, arrested, detained, or questioned, or that their home was ever, in fact, searched, in conjunction with the

---

action styled *Zachary Cruz, Micheal Donovan, Richard Moore and Samuel Orlando v. Lindsay Combs*, case no. CL21002194-00 ("the Verified Complaint"), Cruz, Donovan, and Moore allege that Cruz attained the age of majority in February 2018. (Verified Compl., ¶ 48). Curiously, the Verified Complaint also contains many more factual allegations that the plaintiffs chose not to include in the Complaint filed herein, such as background information about Cruz, his family and legal troubles prior to moving to Virginia, the APS investigation, and the defendant's repeated and unheeded requests to interview Cruz, the alleged victim of the abuse, in the course of that investigation. (Verified Compl., ¶¶ 10, 30, 37, 41-44, 46, 53, 55-56, and 60).

[4] The plaintiffs allege that Defendant Chapman's report to Combs about Cruz on January 30 was "knowingly false." (Compl., ¶ 27). They also allege that Combs "knew, or quickly learned, that Defendant Chapman's information was false, but chose to advance the investigation anyway" and that "when [she] learned that the allegations were completely bogus, she continued to engage in the conspiracy,"(Compl., ¶¶ 8 and 29), but they do not allege any facts to support these conclusory allegations, and the Court should disregard same when considering the defendant's demurrer.

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

APS investigation or the order allegedly "secured" by Combs in the course thereof. In fact, the plaintiffs affirmatively allege that the "'search order' was never executed." (Compl., ¶ 47).

7.      For the reasons that follow, the actual factual allegations contained in the plaintiffs' Complaint are deficient and fail, as a matter of law, to state against the defendant a claim upon which any relief can be granted.

### A. Count I:  Civil Conspiracy.

8.      In Count I of the Complaint, the plaintiffs attempt to assert against the defendants a claim of civil conspiracy, and they rely upon an alleged violation of Virginia Code § 18.2-499 as the basis of their claim.

9.      A violation of Virginia Code § 18.2-499 is a criminal act, punishable as a Class 1 misdemeanor.  That statute states in pertinent part, the following:

> Any two or more persons who combine, associate, agree, mutually undertake or concert together for the purpose of (i) willfully and maliciously injuring another in his reputation, trade, business or profession by any means whatever or (ii) willfully and maliciously compelling another to do or perform any act against his will, or preventing or hindering another from doing or performing any lawful act, shall be jointly and severally guilty of a Class 1 misdemeanor.  Such punishment shall be in addition to any civil relief recoverable under § 18.2-500.

10.      Virginia Code § 18.2-500 provides a civil remedy for the violation of § 18.2-499.  It states in pertinent part, as follows:

> Any person who shall be injured in his reputation, trade, business or profession by reason of a violation of § 18.2-499, may sue therefor and recover three-fold damages by him sustained, and the costs of suit, including a reasonable fee to

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

plaintiff's counsel, and without limiting the generality of the term "damages" shall include loss of profits.

11.     These two code provisions were once codified as part of the antitrust laws of the Commonwealth, evidencing that they are designed to cover only business matters, not personal ones.  In 1964, the General Assembly removed the provisions from the antitrust statutes and placed them in the criminal code, imposing much greater sanctions.  *See Andrews v. Ring*, 266 Va. 311, 319 (2003); *Nationwide Mut. Fire Ins. Co. v. Jones*, 577 F.Supp. 968 (W. D. Va. 1984).

12.     The Virginia Supreme Court has concluded that these statutes do not apply to personal interests, only business interests.  For example, the *Andrews* Court held that these statutes do not apply to claims of injury to personal reputation and employment interests.  266 Va. at 319.

13.     Moreover, federal courts in Virginia applying Virginia law have reached the same conclusion.  In *Nationwide Mut. Fire Ins. Co. v. Jones*, 577 F.Supp. 968, 971 (W. D. Va. 1984), the court found that the conspiracy statutes were "inapplicable to one isolated incident in which a combination of persons defrauded a company for their own personal enrichment."  *See also Warner v. Buck Creek Nursery, Inc.*, 149 F.Supp.2d 246 (W. D. Va. 2001) (noting that employment interests and future business interests do not fall within the scope of the civil conspiracy statutes); *Campbell v. Board of Supervisors*, 553 F. Supp. 644, 645 (E. D. Va. 1982) (holding that Code § 18.2-500, which created the civil remedy, is aimed at conduct which injures a business, not a personal interest).

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

14.     To the extent that the plaintiffs' Complaint attempts to assert a claim against the defendant for injury to the personal reputations or employment interests of the individual plaintiffs, such claims are invalid under Va. Code §§ 18.2-499 and 18.2-500 and must be dismissed with prejudice.

15.     Virginia Code §§ 18.2-499 and 500 require more than mere conclusory allegations in order to state a claim—allegations that merely track the language of the statute are insufficient as a matter of law to state a claim. *Kayes v. Keyser*, 72 Va. Cir. 549, 552 (Charlottesville, 8/8/2007).

16.     Plaintiffs must allege: "(1) concerted action; (2) legal malice; and (3) causally related injury." *See Allen Realty Corp. v. Holbert*, 111 Va. 441, 449 (1984). "Concerted action" requires a plaintiff to sufficiently allege facts to establish that the defendant "combined, associated, agreed, mutually undertook, or concerted together" with someone else in the injurious conduct. Va. Code § 18.2-499; *Simmons v. Miller*, 261 Va. 561, 578 (2001).

17.     Here, the plaintiffs' factual allegations, taken as true, would establish that (i) the defendant received a report from Defendant Chapman on January 30, 2021, stating that Cruz was mentally disabled and had been kidnapped, drugged, imprisoned, and exploited; (ii) two days later, the defendant delivered letters to the plaintiffs' residence and business addresses, referencing the report of abuse and demanding to meet with the plaintiffs to investigate the report; and (iii) the defendant filed a petition and secured a court order, permitting her to enter the plaintiffs' home and to interview Cruz.

18.     Notwithstanding the plaintiffs' numerous conclusory and legally insufficient allegations to the contrary, the foregoing factual allegations cannot be fairly read to assert that the defendant "conspired" with any of the other co-defendants to harm the business interests of the plaintiffs. At best, these allegations, if proved, would merely establish that the defendant took legally permissible, if not mandated, actions in order to comply with her legal duty to determine whether the report she had received from Defendant Chapman about Cruz was "valid."

19.     In addition, in order to state a viable claim for statutory or common law conspiracy, the plaintiffs must allege an unlawful act or an unlawful purpose, because there can be no conspiracy to do an act which the law allows. *Hechler Chevrolet, Inc. v. General Motors Corp.*, 230 Va. 396, 402 (1985).

20.     Here, when the defendant received the report about Cruz, she was legally required to "determine the validity of such report." Va. Code § 63.2-1605(B).  In order to determine whether the report was "valid," the defendant had to determine whether Cruz was an "adult" for purposes of adult protective services.    Id.; 22 VAC 30-100-20(C)(4).  And because Cruz was over 18 years of age but not yet 60, the defendant had to determine whether Cruz was "incapacitated." Va. Code §§ 63.2-1603 and 1605(A); 22 VAC 30-100-10.  "Incapacitated" means "any adult who is impaired by reason of mental illness, intellectual disability, physical illness or disability, advanced age or other causes to the extent that the adult lacks sufficient understanding or capacity to make, communicate or carry out responsible decisions concerning his or her well-being." Va. Code § 63.2-1603; 22 VAC 30-100-10.  Thus, before the defendant could determine if the

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

report concerning Cruz was "valid," she had to first interview him to determine if Cruz met the definition of "incapacitated."

21.     Moreover, the defendant was authorized by statute to petition the circuit court for an order allowing access to Cruz or entry to his residence, or both, in order to comply with her statutory duty to determine whether the report about him was valid.[5] Va. Code § 63.2-1605(E).

22.     Thus, the actions allegedly taken by the Combs in furtherance of the duties imposed upon her as an APS investigator by applicable law are legally authorized, if not mandated; therefore, as a matter of law, they cannot form the basis of a claim of conspiracy. *Hechler Chevrolet, Inc.,* 230 Va. at 402.

23.     Consequently, this Court should sustain the defendant's demurrer and dismiss Count I as to her with prejudice.

**B. Count II:  Defamation.**

24.     In Count II of the Complaint, the plaintiffs attempt to assert against Combs and others a claim of defamation.

25.     In furtherance of their claim, the plaintiffs rely upon the defendants' alleged reference at various times to Cruz as "retarded." (*See* Compl., ¶¶ 64-67).

26.     As to Combs, specifically, the plaintiffs allege that she (i) "included Defendant's Chapman's accusation, that Cruz was 'retarded', in a Court filing" and (ii)

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

[5] Interviewing Cruz here was necessary to try to validate the report of abuse.  However, once a report of abuse is validated, an interview of the alleged victim is mandated as part of the ensuing investigation. 22 VAC 30-100-20(F).

18

"[u]pon information and belief, [she] repeated the ridiculous assertion that Cruz was 'retarded' to her supervisors with the Commonwealth of Virginia." (Compl., ¶¶ 66-67).

27.     Virginia makes no distinction between actions for libel and slander. *Shupe v. Rose's Stores, Inc.*, 213 Va. 374, 375–76 (1972). In Virginia, when a plaintiff alleges defamation by publication, he or she must plead and prove "1) publication 2) of a false 3) defamatory statement 4) concerning the plaintiff." *Gazette, Inc. v. Harris*, 229 Va. 1, 37 (1985); *accord Tharpe v. Saunders*, 285 Va. 476, 480 (2013)

28.     An "actionable" statement is both false and defamatory. *Id.* at 481.

29.     For a statement to be actionable, it must "have a provably false factual connotation and thus [be] capable of being proven true or false." *Cashion*, 286 Va. 327, 336 (2013) (internal quotation marks omitted); *accord Potomac Valve & Fitting, Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1288 (4th Cir.1987) ("[T]he verifiability of the statement in question [is] a minimum threshold issue. If the defendant's words cannot be described as either true or false, they are not actionable.") Thus, true statements do not support a cause of action for defamation. *American Communications Network, Inc. v. Williams*, 264 Va. 336, 337 (2002), nor do pure expressions of opinion, because such statements cannot be objectively characterized as true or false. *Jordan v. Kollman*, 269 Va. 569, 575-576 (2005.)

30.     "Defamatory" words are those "tending so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him." *Schaecher v. Bouffault*, 290 Va. 83, 91-92 (2105) (citation and internal quotation marks omitted). "Although varying circumstances

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

19

often make it difficult to determine whether particular language is defamatory, it is a general rule that allegedly defamatory words are to be taken in their plain and natural meaning and to be understood by courts and juries as other people would understand them, and according to the sense in which they appear to have been used." *Carwile*, 196 Va. at 7.

31.     As a matter of law, the factual allegations contained in the plaintiffs' Complaint fail to state against Combs a claim of defamation on behalf of Donovan and Moore because the alleged defamatory statements were about Cruz—not either of them. *Gazette, Inc., supra*, 229 Va. at 37; *accord Dean v. Dearing*, 263 Va. 485, 488 (2002) (holding that a pleading for defamation must allege or otherwise make apparent on the face of the pleading that the alleged defamatory statements are "of and concerning" the plaintiff).

32.     Furthermore, Cruz can have no claim of defamation against Defendant Combs for "includ[ing] Defendant's Chapman's accusation, that Cruz was 'retarded', in a Court filing" because as a matter of law, any such statement made by the defendant about Cruz's mental capacity in the alleged "Court filing" is protected by the doctrine of absolute, or judicial, privilege. *Lindeman v. Lesnick*, 268 Va. 532 (2004).

33.     In *Lindeman*, the Court laid out the parameters of the immunity afforded by the rule and the underlying rationale it as follows:

> [T]he maker of an absolutely privileged communication is accorded complete immunity from liability even though the communication is made maliciously and with knowledge that it is false. *Spencer v. Looney*, 116 Va. 767, 774, 82 S.E. 745, 747 (1914). Absolute privilege, sometimes called judicial

privilege, is broad in scope and applies to communications made in proceedings pending in a court or before a quasi-judicial body. *Penick v. Ratcliffe*, 149 Va. 618, 628, 140 S.E. 664, 667 (1927). If the communication is made in such a judicial proceeding, it need only be relevant and pertinent to the case to be protected by the privilege. *Donohoe Construction Co. v. Mount Vernon Assocs.*, 235 Va. 531, 539, 369 S.E.2d 857, 861 (1988). "The reason for the rule of absolute privilege in judicial proceedings is to encourage unrestricted speech in litigation." *Id.* at 537, 369 S.E.2d at 860. In addition, absolute privilege is extended to statements made in the course of judicial proceedings because of the safeguards that exist in such proceedings, including liability for perjury and the applicability of the rules of evidence. *Lockheed Information Management Systems Co. v. Maximus, Inc.*, 259 Va. 92, 101, 524 S.E.2d 420, 424–25 (2000).

268 Va. at 537.

34.    Here, the plaintiffs' own factual allegations, if proved, would establish that any statement made by Combs about Cruz's mental capacity in the "Court filing" was "relevant and pertinent" to her APS investigation, and therefore, absolutely privileged as a matter of law because that investigation necessarily involved a determination as to whether Cruz was "incapacitated." Indeed, under the facts alleged, any such statement would be absolutely privileged, even if it were false and maliciously made. *Id.* (citing *Spencer v. Looney*, 116 Va. 767, 774 (1914)).

35.    The plaintiffs' allegation predicated "upon information and belief" that Combs "repeated the ridiculous assertion that Cruz was 'retarded' to her supervisors with the Commonwealth of Virginia,"(Compl., ¶¶ 66) is improper, lacks any actual factual support, and should not be considered for purposes of the defendant's demurrer. *Lewis, supra,* 281 Va. at 723; *Early, supra,* 81 Va. Cir. 181, *2.

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

36.    However, even if this legally deficient allegation were considered, the plaintiffs still would fail to state a claim because as a matter of law any such statements by the defendant to her supervisors and co-workers would be protected by the doctrine of qualified privilege, which "protects a communication from allegations of defamation if made in good faith, to and by persons who have corresponding duties or interests in the subject of the communication." *Government Micro Resources, Inc. v. Jackson*, 271 Va. 29, 43 (2006) (citation omitted).

37.    Finally, even if the alleged statements were not privileged, the plaintiffs' factual allegations nevertheless fail to state against Combs a claim of defamation because (i) any statement that Cruz was "retarded" made in the context of a report of abuse to, and received by, APS is a matter of professional opinion as opposed to fact, and thus, not actionable as a matter of law, and/or (ii) any recitation by Combs, in a court filing or to her supervisors, of the statements allegedly made to her by Defendant Chapman during his alleged report of abuse of Cruz to APS was a true and accurate recitation, and thus, is not defamatory as a matter of law.

38.    Consequently, this Court should sustain the defendant's demurrer and dismiss Count II as to her with prejudice.

C. **Count III:  Insulting Words (Va. Code § 8.01-45).**

39.    In Count III of the Complaint, the plaintiffs attempt to assert against Combs and others a claim for a violation of Virginia Code § 8.01-45, commonly referred to as "the insulting words statute."

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

40.     That code section provides that "[a]ll words shall be actionable which from their usual construction and common acceptance are construed as insults and tend to violence and breach of the peace." Va. Code Ann. § 8.01-45.

41.     The statute was originally enacted as an anti-dueling statute. *W.T. Grant Co. v. Owens*, 149 Va. 906 (1928).   Although the statute's original purpose is obsolete, it continues today to "prevent breaches of the peace, to discourage offensive and excessive freedom in the use of that unruly member, the tongue, to inflict punishment … by subjecting those who are so hasty of temper and inconsiderate of the feelings of others as to insult them to such actual and punitive damages as may be awarded by a jury." *Hines v. Gravins*, 136 Va. 313 (1922), *cert. denied*, 265 U.S. 583 (1924).

42.     The statutory cause of action for insulting words essentially has been assimilated by the common law of defamation, with two exceptions:  (i) no publication is necessary to sustain an action under the statute, and (ii) the plaintiff must show that the words used were such as to "provoke violence or breach of the peace."  *See Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 6 (1954) (holding "[a]n action for insulting words under [the predecessor statute] is treated precisely as an action for slander or libel … with one exception, namely, no publication [to a third party] is necessary"); *see also Allen & Rocks, Inc. v. Dowell*, 252 Va. 439, 443 (1996) (holding that "[g]iven the plain language of Code § 8.01–45, … the plaintiff was required to prove, and failed to prove, that the words [the defendant] used … tended to violence or breach of the peace"); *see also Jarrett v. Goldman*, 67 Va. Cir. 361, *12 (Portsmouth, 5/31/2005) (noting that the claim "under the insulting words statute has always been implemented as an action for defamation,

JOHNSON, AYERS
& MATTHEWS, P.L.C.,
P.O. BOX 2200
ROANOKE, VA 24009

but there are two exceptions to the normal defamation requirements: no proof of publication is necessary, and the words used must be provocative").

43.     Thus, the Fourth Circuit applying Virginia law has held as a matter of law that even though words might be insulting in nature, when they are made in the context of an investigation and are not delivered in a manner that would "tend to violence and breach of the peace," they are not actionable under the statute. *Dwyer v. Smith*, 867 F.2d 184, 196 (4th Cir. 1989) (affirming district court's directed verdict for defendant police officers where defendants' written statements that plaintiff, a fellow officer, was untruthful and one defendant called her a liar on a public street were not actionable).

44.     As with their claim of defamation, in furtherance of their statutory claim against Combs the plaintiffs rely on their allegations that she included Defendant's Chapman's accusation that Cruz was "retarded" in a Court filing and "upon information and belief" she repeated Chapman's statement to her supervisors. (Compl., ¶¶ 66-67, and 84-85).

45.     As a matter of law, the factual allegations contained in the plaintiff fail to state a claim under the statute on behalf of Donovan and Moore because the alleged "insult" was directed only at Cruz—not either of them. *Gazette, Inc.*, *supra*, 229 Va. at 37.

46.     Likewise, as a matter of law Cruz has no claim against Combs under the statute because the plaintiffs' own factual allegations, taken as true, establish that Combs merely repeated the report of abuse made to her by Defendant Chapman in the course of an APS investigation. *Dwyer, supra*, 867 F.2d at 196.

47.     Furthermore, as a matter of law, any statement made by the defendant about Cruz's mental capacity in the alleged "Court filing" is protected by the doctrine of absolute, or judicial, privilege. *Lindeman, supra*, 268 Va. at 537.

48.     And, again, even if this Court were to consider the plaintiffs' allegation, predicated "upon information and belief," that Combs "repeated" Defendant Chapman's report to her supervisors, (Compl., ¶¶ 66, 84-85), the plaintiffs still would fail to state a claim because as a matter of law any conduct would be protected by the doctrine of qualified privilege. *Government Micro Resources, Inc., supra*, 271 Va. at 43.

49.     Finally, even if the alleged statements were not privileged, the plaintiffs fail to state a claim against Combs under the statute because (i) any statement that Cruz was "retarded" made in the context of a report of abuse to, and received by, APS is a matter of professional opinion as opposed to fact, and thus, is not actionable as a matter of law, and/or (ii) any recitation by Combs, in a court filing or to her supervisors, of the statements allegedly made to her by Defendant Chapman during his alleged report of abuse of Cruz to APS was a true and accurate recitation, and thus, is not defamatory as a matter of law.

50.     Consequently, this Court should sustain the defendant's demurrer and dismiss Count III as to her with prejudice.

### D.   Count IV:  Racial and Ethnic Harassment (Va. Code § 8.01-42.1).

51.     In Count IV of the Complaint, the plaintiffs attempt to assert against the defendant a claim for a violation of Virginia Code § 8.01-42.1.

52.    That code section authorizes an "action  for injunctive relief or civil damages, or both, … for any person who is subjected to acts of (i) intimidation or harassment, (ii) violence directed against his person, or (iii) vandalism directed against his real or personal property, where such acts are motivated by racial, religious, gender, disability, gender identity, sexual orientation, or ethnic animosity."  Va. Code § 8.01-42.1(A).

53.    In their Complaint, the plaintiffs allege that Donovan and Moore are married and that the defendants have referred to Cruz as "retarded," which arguably would implicate the statute on the basis of "sexual orientation" and "disability," respectively.

54.    But, the plaintiffs do not allege that any of the acts allegedly taken by the defendants were motivated by animosity (i) toward Donovan and Moore because of their homosexual orientation or (ii) toward Cruz because of any perceived mental disability.

55.    Instead, the plaintiffs merely allege, in a conclusory fashion, that the defendants' "acts were motivated by racial, religious, or ethnic animosity."  (Compl., ¶ 91).  Moreover, the plaintiffs fail to allege their respective racial, religious, or ethnic backgrounds, and they fail to allege facts to establish that the defendants, including Combs, knew of, or were motivated by, any of those factors.

56.    In fact, the only underlying motivating factor actually ascribed to the defendants in the Complaint was "to exact revenge against Plaintiffs for assorted

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

perceived wrongs, and for [the plaintiffs'] efforts to rid Augusta County law enforcement and social services of corruption." (Compl., ¶ 57).

57.     Thus, the factual allegations contained the Complaint fail, as a matter of law, to state against Combs a claim under the statute for racial, ethic, or religious harassment, or any other harassment prohibited by the statute.

58.     Consequently, this Court should sustain the defendant's demurrer and dismiss Count IV as to her with prejudice.

59.     The plaintiffs' Complaint otherwise is insufficient and fails, as a matter of law, to state against the defendant any claim or cause of action, cognizable under federal law, Virginia law, or under any other applicable law, upon which any relief can be granted against her, and therefore, each of the four claims asserted against her in the plaintiffs' Complaint should be dismissed with prejudice.

60.     Consequently, this Court should sustain the defendant's demurrer and dismiss the plaintiffs' Complaint in its entirety with prejudice as against this defendant.

Wherefore the defendant respectfully requests that this Court enter an Order (1) sustaining her demurrer; (2) dismissing with prejudice each of the claims asserted against the defendant in the plaintiffs' Complaint; (3) dismissing, with prejudice, the defendant from this action as a party defendant; (4)  awarding to the defendant her costs incurred in the defense herein, including, where appropriate, her reasonable attorney's fees; and (5) granting to the defendant such other and further relief as the Court may deem appropriate.

## VI.     SPECIAL PLEA IN BAR:  Quasi-Judicial Immunity

JOHNSON, AYERS
& MATHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

Without waiving her aforesaid motion to dismiss, motion to drop parties plaintiff, motion craving oyer, and demurrer, and specifically reserving the right to rely upon the same, the defendant comes by counsel, pursuant to applicable law, and for her special plea in bar to the four claims asserted against her in the plaintiffs' Complaint states as follows:

1.      In Virginia, a "plea in bar shortens the litigation by reducing it to a distinct issue of fact which, if proven, creates a bar to the plaintiff's right of recovery." *Tomlin v. McKenzie*, 251 Va. 478, 480 (1996).  The moving party carries the burden of proof on that issue of fact. *Id.* (citing *Campbell v. Johnson*, 203 Va. 43, 47 (1961)).  "Where no evidence is taken in support of the plea, the trial court, and the appellate court upon review, must rely solely upon the pleadings in resolving the issue presented."  *Id.* (citing *Weichert Company of Va., Inc. v. First Commercial Bank*, 246 Va. 108, 109 (1993)).

2.      "When considering the pleadings, 'the facts stated in the plaintiffs' motion for judgment [are] deemed true.'" *Id.* (citing *Glascock v. Laserna*, 247 Va. 108, 109 (1994)).  However, as with a demurrer, a court considering a special plea need not accept as true conclusions of law in the complaint, as this is for determination by the Court.  *See St. Martin v. McCracken*, 101 Va. Cir. 257, * (Chesapeake, 3/7/2019) (citing *Lyles v. Town of Purcellville*, 49 Va. Cir. 59, 62 (Loudoun Co. 1999) ("A defensive pleading such as a plea in bar ... does not admit the correctness of conclusions of law."))

3.      In their Complaint, the plaintiffs attempt to assert against the defendant (i) a claim of civil conspiracy pursuant to Va. Code §§ 18.2-499 and 500, (ii) a claim of defamation, (iii) a claim of insulting words, pursuant to Va. Code § 8.01-45, (iv) a claim

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

28

of racial and ethnic harassment, pursuant to Va. Code § 8.01-42.1 arising out of the APS investigation.

4.    For the reasons stated in the defendant's demurrer, *supra*, the *factual* allegations contained in the Complaint fail, as a matter of law, to state any claim against the defendant. However, even if the allegations in the Complaint were sufficient for one or more of the plaintiffs' claims to survive the defendant's demurrer, any such claim nevertheless would be barred by the doctrine of quasi-judicial immunity, for the reasons that follow.

5.    In Virginia, "judges enjoy absolute immunity from civil liability, even when they act maliciously or corruptly or in excess of their jurisdiction." *Harlow v. Clatterbuck*, 230 Va. 490, 493 (1986). In fact, "[j]udges can be held liable only when they act in 'clear absence of all jurisdiction.'" *Id.* (citing *Johnston v. Moorman*, 80 Va. 131, 142 (1885)).

6.    "Although judicial immunity, in its strictest sense, is limited to judges, quasi-judicial immunity may extend to other public officials acting within their jurisdiction, in good faith and while performing judicial functions." *Id.* (citations omitted). The Supreme Court of Virginia has held that this species of immunity applied to a notary public, a city mayor, and a department of corrections aftercare supervisor, a rehabilitative counselor, and a learning center supervisor. *Yates v. Ley*, 121 Va. 265, 270 (1917) (notary public); *Johnston, supra*, 80 Va. at 139 (mayor); *Harlow, supra*, 230 Va. at 494-496 (department of corrections aftercare supervisor, rehabilitative counselor, and learning center supervisor).

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

7.    In *Harlow*, the plaintiff, who had been robbed and whose throat had been cut by a juvenile offender who had been released from indefinite term of commitment by members of the Department of Corrections, brought an action against those employees involved in the decision to release the juvenile. The defendants asserted that they were shielded from civil liability by judicial immunity. The trial court disagreed, and the case was tried to a jury, which returned a verdict for the plaintiff, and the defendants appealed.

8.    The Supreme Court of Virginia reversed the trial court and entered final judgment for the three defendants, finding that the defendants—a department of corrections aftercare supervisor, a rehabilitative counselor, and a learning center supervisor--were entitled to absolute quasi-judicial immunity. 230 Va. at 496. In so doing, the Court stated the following when discussing the important public policy considerations underpinning its decision:

> It is in the interest of the public and of the committed child that the defendants, and other public officials who perform similar functions, be immune from suits for damages. The threat of such suits against these officials would have a chilling effect on their ability to perform their official duties. These officials must be free to discharge their duties fairly and impartially without fear of personal liability. If they were not shielded with quasi-judicial immunity, it is probable that their judgments would be always against a child's release. Indeed, the threat of civil suits would "dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties."

*Id.*, at 495 (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2nd Cir. 1949).

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

9.     When determining whether a defendant is entitled to absolute quasi-judicial immunity, the relevant inquiry for the court is whether the defendant was "(1) performing judicial functions, (2) acting within [his or her] jurisdiction, and (3) acting in good faith." *Id.*, at 494.

10.    The Supreme Court of Virginia has adopted the "functional comparability" test established by the United States Supreme Court in *Butz v. Economou*, 438 U.S. 478, 98 S.Ct. 2894, 57 L.Ed.2d 895 (1978) to make the determination of whether a defendant was "performing a judicial function" for purposes of quasi-judicial immunity. *Id.*, at 494. Under that test, the court must "ascertain whether the procedure in question shares enough of the characteristics of the judicial process that those who participate in such adjudication should also be immune from suits for damages." *Id.* When the defendant's duties are more akin to those of a police officer in the enforcement, then it is less likely he or she will satisfy the test. *See Andrews v. Ring*, *supra*, 266 Va. at 325 (holding that defendant building inspector not entitled to quasi-judicial immunity because his duties were "more akin to those of a police officer in the enforcement of laws, rules and regulations, than a prosecutor in the judicial process.")

11.    In *Harlow*, the Court found that because the three department of corrections employee defendants were vested with discretion when determining whether and under what conditions that juvenile offender should be released, they were performing judicial functions similar to courts, probation officers and parole board members, and thus, they satisfied the first prong of the test for quasi-judicial immunity. *Id.*, at 494-495.

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

12.     Admittedly, an APS investigator such as the defendant performs investigative duties akin to a police officer, *once a report has been validated and an investigation has been opened.*

13.     However, before an investigation can be opened, the investigator must determine, as a threshold matter, whether the report of abuse is "valid." Va. Code § 63.2-1605(B).   In other words, she must determine whether she has jurisdiction to investigate the report.   Making this initial, threshold determination is akin to the judicial function of a court or tribunal in determining whether it has subject matter jurisdiction over a complaint or claim before it.

14.     Furthermore, where, as here, the alleged victim of the abuse is an adult between 18 and 60 years of age, making this jurisdictional determination is not simply a matter of establishing basic factual information (e.g., the victim's age, circumstances of the alleged abuse, the victim's residence, etc.), but it also involves an assessment of the victim's mental capacity—whether the victim "lacks sufficient understanding or capacity to make, communicate or carry out responsible decisions concerning his or her well-being." Va. Code § 63.2-1603; 22 VAC 30-100-10.   And making that determination requires the exercise of the APS investigator's independent discretion and judgment— much like the determination of the *Harlow* defendants as to whether and under what conditions to release the juvenile offender.  230 Va. at 494.

15.     Thus, the defendant here satisfies the first prong of the test for quasi-judicial immunity.

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

16.     The defendant also satisfies the second prong of the test—she was acting within her jurisdiction as an APS investigator.

17.     APS has authority to investigate valid reports of abuse, neglect, or exploitation of an adult. Va. Code § 63.2-1605(B).  "Adult" is defined as "any person 60 years of age or older, or any person 18 years of age or older who is incapacitated and who resides in the Commonwealth …."  Va. Code § 63.2-1603; 22 VAC 30-100-10.

18.     A report is deemed valid the victim of the report is an "adult;" the report concerns a specific adult, and there is enough information to locate the adult; the report describes the circumstances of the alleged abuse, neglect, or exploitation; and the local department receiving the report is the local department of jurisdiction.  22 VAC 30-100-20(C)(4).

19.     The form of the plaintiffs' Complaint and their own factual allegations, taken as true, establish that when the defendant received the report about Cruz from Defendant Chapman in January 2021, Cruz was eighteen years of age or older and living with Donovan and Moore at their home in Virginia.  (*See* Compl., ¶¶ 37, 43, 46 and 48; *see also* FN 3, *supra*).

20.     Moreover, the plaintiffs' factual allegations, taken as true, establish that Defendant Chapman, the individual who allegedly made the report, also claimed that Cruz was "mentally disabled" or "retarded."  (Compl., ¶¶ 7 and 28).

21.     Again, in order to establish whether the report about Cruz was valid, the defendant had to determine whether Cruz was "incapacitated" within the meaning of Virginia Code § 63.2-1603 and 22 VAC 30-100-10. Furthermore, the defendant had to

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

33

make her own determination of whether Cruz, the alleged victim, was "incapacitated," regardless of whether he already had or had not been adjudicated incapacitated by a court. *See* 22 VAC 30-100-10.

22.     In other words, "[APS] alone determines [whether a victim is 'incapacitated']" just like the Department of Corrections in *Harlow,* which "alone determine[d] the length of a child's commitment and, if released, the conditions thereof." 230 Va. at 496 (holding as a matter of law that the department of corrections employee defendants were acting within their statutory jurisdiction for purposes of quasi-judicial immunity.)

23.     Thus, here, as in *Harlow*, the defendant was acting within her jurisdiction as an APS investigator as a matter of law

24.     Finally, and notwithstanding the plaintiffs' conclusory allegations to the contrary, the defendant at all times acted in good faith in trying to determine whether she had jurisdiction to investigate the report.

25.     The plaintiffs' own factual allegations, taken as true, establish that the defendant received a complaint of abuse about Cruz on January 30, 2021, and thereafter, she tried to determine whether that report was valid by first delivering letters to the plaintiffs requesting to interview Cruz voluntarily, and then by resorting to a permissible statutory procedure to obtain a lawful court order granting her access to Cruz to interview him.

26.     Consequently, this Court should sustain the defendant's special plea in bar and dismiss the plaintiffs' Complaint in its entirety with prejudice as to her.

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

Wherefore the defendant respectfully requests that this Court enter an Order (1) sustaining her special plea in bar; (2) dismissing with prejudice each of the claims asserted against the defendant in the plaintiffs' Complaint; (3) dismissing, with prejudice, the defendant from this action as a party defendant; (4) awarding to the defendant her costs incurred in the defense herein, including, where appropriate, her reasonable attorney's fees; and (5) granting to the defendant such other and further relief as the Court may deem appropriate.

Respectfully,

LINDSAY COMBS

By: _____
Of Counsel

Brian J. Brydges, Esquire
Virginia State Bar No. 43883
JOHNSON, AYERS & MATTHEWS, P.L.C.
P. O. Box 2200
Roanoke, Virginia 24009
Telephone:   540-767-2042
Facsimile:   540-982-1552
Email:       bbrydges@jamlaw.net
      *Counsel for Defendant*
      *Lindsay Combs*

JOHNSON, AYERS
& MATTHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true copy of the foregoing Responsive Pleadings was mailed or delivered to the following, this 4th day of November 2021:

> Amina Matheny-Willard, Esquire
> Amina Matheny-Willard, PLLC
> 999 Waterside Drive, Suite 2525
> Norfolk, VA 23510
> > *Counsel for Plaintiffs*

> Bradley Pollack, Esquire
> 753 S Main Street
> Woodstock, Virginia 22664
> > *Counsel for Defendants*
> > *Duane Lee Chapman and*
> > *Alyssa Chapman*

and

> David B. Briggman
> 7556 Mountain Valley Road
> Keezletown, Virginia 22832
> > *Defendant, Pro Se*

Brian J. Brydges, Esquire

Filed in the Clerk's Office of the
Circuit Court of Augusta County
Time 4:40 pm Date: 11/8/21
TESTE:
_____ Dep. Clk.
Date: Nov 8 2021

JOHNSON, AYERS
& MATHEWS, P.L.C.
P.O. BOX 2200
ROANOKE, VA 24009

310 First St SW Suite 700
Roanoke VA 24011

Post Office Box 2200
Roanoke VA 24009

www.jamlaw.net
P 540.767.2000
F 540.982.1552

# JOHNSON AYERS & MATTHEWS

C O U N S E L O R S   A T   L A W

November 4, 2021

**Via Email and Regular Mail**
*rlandes@vacourts.gov*

Hon. R. Steven Landes
Augusta County Circuit Court
Augusta County Courthouse
1 East Johnson Street
Staunton, VA 24402-0689

RE:   Zachary Cruz, Micheal Donovan, and Richard Moore v. Duane Lee Chapman, Lyssa
Chapman, David Bayre Briggman, Lindsay Combs, Jane Collins, and John Does 1-8
Augusta County Circuit Court
Case No. CL21002251-00

Dear Mr. Landes:

This law firm has been retained to represent Defendant Lindsay Combs in the above civil action pending in the Circuit Court of Augusta County. Attached to this letter via email are Responsive Pleadings that we are this day filing on behalf of our client. Please stamp the attached copy "filed," and place it among the other papers in your office pertaining to this action.

An original and one copy of the Responsive Pleadings are being placed in the mail to your office today, along with a self-addressed stamped envelope. When the original and copy arrive in your office, I would be much obliged if you could stamp the copy indicating the date on which your office received, and marked "filed," the emailed version, and return the date-stamped copy to me in the self-addressed stamped envelope.

By copy of this letter to counsel of record and to any parties who have appeared *pro se*, I am providing to each of them a true and accurate copy of the enclosed Responsive Pleadings.

Thank you very much for your assistance.

Very truly yours,

JOHNSON, AYERS & MATTHEWS P.L.C.

*Lori L. Bentley* for

Brian J. Brydges

BJB/jpt
Enclosure

Brian J. Brydges        540.767.2042        bbrydges@jamlaw.net

11/9/21 — mailed    back    file - stamped    copy.

cc:    Amina Matheny-Willard, Esquire (via email with enclosure)
       Bradley Pollack, Esquire (via email with enclosure)
       David Briggman (via email with enclosure)
       Lindsay Combs (via email and regular mail with enclosure)